# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRIDENT HOLDINGS, INC., )
                                    Plaintiff, )
                    v. ) C.A. No. 21-401-CFC
HUBSPOT, INC., )
                                    Defendant. )

## MEMORANDUM OPINION

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, Delaware.

Trevor Q. Coddington, INSIGNE PC, Carlsbad, California.

    Attorneys for Plaintiff.


Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Brett M. Schuman, Rachel M. Walsh, GOODWIN PROCTER LLP, San Francisco, California.

    Attorneys for Defendant.

March 18, 2022
Wilmington, Delaware

**JENNIFER L. HALL, U.S. MAGISTRATE JUDGE**

This is the Court's ruling on Defendant HubSpot, Inc.'s ("HubSpot's") Motion to Dismiss for Failure to State a Claim and Lack of Standing. (D.I. 7.) I held a hearing on the motion on February 8, 2022. (Tr. __.) As announced from the bench on February 9, 2022, HubSpot's motion is DENIED without prejudice to HubSpot's ability to raise its 35 U.S.C. § 101 and standing arguments at the summary judgment stage.

## I.  LEGAL STANDARDS

### A.  Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint, I must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

B.      **Patent Eligibility Under 35 U.S.C. § 101**

Section 101 defines the categories of subject matter that are patent eligible. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized three exceptions to the broad statutory categories of patent-eligible subject matter: "laws of nature, natural phenomena, and abstract ideas" are not patent-eligible. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). "Whether a claim recites patent-eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

The Supreme Court has established a two-step test for determining whether patent claims are invalid under 35 U.S.C. § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). In step one, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218. This first step requires the court to "examine the 'focus' of the claim, i.e., its 'character as a whole,' in order to determine whether the claim is directed to" an ineligible concept. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 736 (D. Del. 2018) (Bryson, J.) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)).

Because "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 71 (2012), "courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims." *McRO v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft*

3

*Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at [too] high [a] level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016). If the claims are not directed to a patent-ineligible concept, then the claims are patent-eligible under § 101 and the analysis is over. If, however, the claims are directed to a patent-ineligible concept, then the analysis proceeds to step two.

At step two, the court "consider[s] the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (internal quotations and citations omitted). "It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI Commc'ns*, 823 F.3d at 613. Thus, "[m]erely reciting the use of a generic computer or adding the words 'apply it with a computer'" does not transform a patent-ineligible concept into patent eligible subject matter. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 223). Nor is there an inventive concept when the claims "[s]imply append[] conventional steps, specified at a high level of generality" to a patent-ineligible concept. *Alice*, 573 U.S. at 222.

Conversely, claims pass muster at step two when they "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367 (citation and internal marks omitted). "The mere fact that something

is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional." *Id.* at 1369. Moreover, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether an activity was well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

### C.     Motion to Dismiss for Lack of Standing

Article III of the Constitution limits the federal judicial power to deciding "Cases" and "Controversies." To possess Article III standing, a plaintiff must have (1) suffered an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and actual or imminent rather than conjectural or hypothetical, (2) that is fairly traceable to the challenged action of the defendant, and (3) is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Caraco Pharm. Labs., Ltd. v. Forest Labs.*, Inc., 527 F.3d 1278, 1291 (Fed. Cir. 2008); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). "The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 134 (3d Cir. 2015). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to defeat a motion to dismiss for lack of subject matter jurisdiction. *Lujan*, 504 U.S. at 561; *Warth*, 422 U.S. at 501 ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."); *Lone Star*, 925 F.3d at 1234–35.

In contrast to constitutional standing, the question of so-called "statutory standing"—that is, whether a party may sue under a particular federal statute—does not implicate a court's subject matter jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4; *Lone Star*, 925 F.3d at 1234–36 (holding that a plaintiff had Article III standing to sue for patent infringement even though it did not possess all substantial rights in the patent). Of course, to state a claim for the violation of a substantive statute, a plaintiff must allege sufficient facts to give rise to a plausible inference that the statute confers a right of action on them. But a plaintiff's failure to do so is not an issue of standing or subject matter jurisdiction and, thus, it is more appropriately challenged under Rule 12(b)(6), applying the standards outlined above. *Lexmark*, 572 U.S. at 125–28, 137–40 (affirming denial of motion to dismiss where the complaint's allegations, taken as true, put the plaintiff within the class of plaintiffs whom Congress authorized to sue under a substantive statute); *Lone Star*, 925 F.3d at 1235–1236 ("[F]ollowing *Lexmark*, several courts have concluded that motions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional. . . . We therefore firmly bring ourselves into accord with *Lexmark* and our sister circuits by concluding that whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction.").

## II.    DISCUSSION

The decision of the Court was announced from the bench on February 9, 2022, as follows:

> This is the Court's ruling on HubSpot's motion to dismiss for failure to state a claim and lack of standing. I will summarize the reasons for the Court's ruling in a moment. But before I do, I want to be clear that my failure to address a particular argument advanced by a party does not mean that I did not consider it. We have carefully considered the Complaint and attached exhibits, the parties' briefs and exhibits, and the arguments made at yesterday's

hearing.[1] We will not be issuing a separate opinion, but we will issue a written document incorporating the ruling that I am about to make.

For the following reasons, HubSpot's motion is DENIED without prejudice to its ability to reraise the issues of § 101 eligibility and standing at a later stage in the case.

[U.S. Patent No. 6,236,977] was issued on May 22, 2001, and it is now expired. It claims systems for "computer-implemented self-optimizing marketing" using organized data storage and optimization software.

On March 19, 2021, Trident Holdings, Inc., filed a Complaint against HubSpot, Inc. alleging infringement of the '977 patent.[2] The Complaint alleges that "Trident owns all rights to the '977 patent via an Assignment to Real Living, Inc.," which later "changed its name to Trident Holdings, Inc."[3] The Complaint alleges that HubSpot infringed "at least claims 1, 4, 27, and 30" through commercial use of its Sales Hub software.[4]

On June 14, 2021, HubSpot filed a motion to dismiss under Rules 12(b)(6) and 12(b)(1).[5] HubSpot argues that the '977 patent is invalid under § 101 because its claims are directed to ineligible subject matter. HubSpot also argues that Trident hasn't shown that it has an ownership interest in the '977 patent sufficient to confer standing. The parties have consented to have the motion decided by a Magistrate Judge.[6] The Court heard oral argument yesterday, February 8, 2022. . . . .

The '977 patent has 53 claims. The Complaint alleges that HubSpot infringes "at least" claims 1, 4, 27, and 30. The briefing suggested a threshold dispute about whether it is appropriate to treat

---

[1] (D.I. 1, 7, 8, 9, 11, 13, 14, 15.)

[2] (D.I. 1.)

[3] (*Id.* ¶ 7.)

[4] (*Id.* ¶¶ 9, 11–13.)

[5] (D.I. 7.)

[6] (D.I. 17.)

7

claims 1 and 4 as representative of all 53 claims. Because HubSpot contends that independent claim 1 and [dependent claim] 4 are unpatentable, and because I reject HubSpot's arguments at least as to claim 1, HubSpot's motion should be denied, and the Court need not consider the remaining claims at this stage.

The Court will now proceed to dance the *Alice* two step. The Court is directed at step 1 to examine the focus of the claim to determine whether the claim is directed to a patent-ineligible concept. [Claim 1 reads as follows:

> 1. A computer-implemented self-optimizing marketing system comprising:
> [a] a campaign engine for selectively generating and storing a campaign population, said campaign population having members comprising stored first data representing a plurality of marketing campaigns each campaign characterized by a plurality of campaign attributes including a plurality of campaign activities;
> [b] said campaign engine having processing functionality to assemble campaign population members from said campaign activities;
> [c] a customer population data store for storing a customer population, said customer population having members comprising stored second data representing a plurality of customers and potential customers, characterized by a plurality of customer attributes; and
> [d] an optimization engine for accessing said first and second data to optimize at least one of said campaign population and said customer population,
> [e] said optimization engine including a scoring system for ordering the members of at least one of said campaign population and said customer population, said scoring system employing adaptive scoring process that alters said scoring process based upon relations among at least some of said campaign attributes and said customer attributes.

8

Claim 4 reads as follows:

> 4. The system of claim 1 wherein said campaign engine includes prediction engine and optimization engine.]

HubSpot's opening brief did not set forth a definitive articulation as to what it contends is the abstract idea: it said that the claims "are directed at an abstract idea related to identifying, analyzing, and displaying data" and that the claims "could be broken down into . . . [t]he steps of collecting, storing, and retrieving data."[7] HubSpot's reply brief stated that the claims "are directed to the abstract idea of identifying, analyzing and displaying information."[8] I cannot disagree with HubSpot that the first three limitations—[a], [b], and [c]—appear to be nothing more than storing and organizing information in conventional ways. However, the last two limitations—[d] and [e]—incorporate the concept of optimization based on an adaptive scoring system.

Trident suggested for the first time at oral argument that the "optimization engine" and "adaptive scoring" limitations required construction before the Court decides eligibility.[9] That claim construction wasn't expressly raised until the oral argument suggests that [Trident] may not have actually thought there was a claim construction issue that had to be addressed before resolving the § 101 motion. That said, although Trident did not frame this as an issue of claim construction in its brief, Trident did argue that an understanding of the scope of the claims is a factual issue that should be resolved first. I'm not sure that the off-the-cuff proposed constructions that Trident provided at the hearing[10] accurately capture the claims—or incorporate concrete rules that might make the claims patent eligible—but, as Trident points out, the specification discloses potentially concrete or unconventional methods of adaptive scoring.[11]

---

[7] (D.I. 8 at 1, 8.)

[8] (D.I. 15 at 3.)

[9] (Tr. 21:17–22:24, 24:2–10.)

[10] (Tr. 24:13–16, 24:25–25:1.)

[11] *E.g.*, '977 patent, cols. 3–4, 6, 7–8, 13–14.

9

Trident correctly points out that on this posture—a motion to dismiss under Rule 12—I must draw all inferences in Trident's favor. And, unless the Court construes the claims, the Court must also draw inferences related to claim construction in Trident's favor.[12] I'm not prepared to construe the claims at this stage of the case and on this record. The record is insufficient here to [adopt even] a preliminary claim construction that would decide this issue, and I draw the reasonable inference that the "optimization engine" and "adaptive scoring" limitations might capture a specific genus of algorithms or types of rules.[13]

At this stage of the case, and without the benefit of claim construction, I am not persuaded that HubSpot's articulation of the abstract idea satisfactorily takes into account the optimization and adaptive scoring elements. Rather, I fear that HubSpot may have done what the Federal Circuit has cautioned against: its proposed description of the claims is at too high a level of abstraction and untethered from the language of the claims.[14] Under these circumstances, it is appropriate to deny HubSpot's motion to dismiss.[15]

---

[12] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."); *see also Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332 (2015) (claim construction may depend on underlying issues of fact).

[13] *See McRO*, 837 F.3d at 1313 (claimed software patent eligible when construction demonstrated claimed rules limited to a particular "genus" or type of unconventional rules).

[14] *Id.* at 1313.

[15] Courts in this district regularly deny motions to dismiss based on patent ineligibility under § 101 when the defendant's proffered abstract idea fails to satisfactorily capture the substance of the claims. *See APS Tech., Inc. v. Vertex Downhole, Inc.*, No. 19-1166, 2020 WL 4346700, at *6 (D. Del. July 29, 2020); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390, 2019 WL 4466766, at *10 (D. Del. Sept. 18, 2019), *adopted*, 2020 WL 1527321 (Mar. 31, 2020); *Wildcat Licensing WI LLC v. Faurecia S.A.*, No. 19-839, 2019 WL 7067090, at *5 (D. Del. Dec. 23, 2019), *adopted*, 2020 WL 95481 (Jan. 8, 2020); *Mod Stack LLC v. Aculab, Inc.*, No. 18-332, 2019 WL 3532185, at *4 (D. Del. Aug. 2, 2019); *3G Licensing, S.A. v. HTC Corp.*, No. 17-83, 2019 WL 2904670, at *2 (D. Del. July 5, 2019) ("While it may be possible that claim 1 could be accurately characterized as directed to some abstract idea, all I need to decide [on a motion to dismiss] is that the claim is not directed to the abstract idea articulated by defendant."); *Groove Digital, Inc. v. Jam City, Inc.*, No. 18-1331, 2019 WL 351254, at *3 (D. Del. Jan. 29, 2019).

That said, I make a couple of observations. Even though the claims describe themselves as "systems," I don't think that anyone here disputes that both the claims and the specification of the '977 patent describe software packages that could run on any generic computer (and perhaps a generic telecommunication infrastructure).[16] Assessing whether software is an abstract idea or a concrete invention is always a particular challenge because, by its nature, software is designed to be executed on a generic computer.

The case law acknowledges that computers can inherently execute numerical tasks faster, with fewer errors, and without continuous human control, but those benefits alone do not make broadly-claimed software ideas patentable. Indeed, it is now clear that claims directed to performing well-known economic practices on a generic computer are not patent eligible.[17] While claims directed to improving the functionality of a computer may not be abstract,[18] I agree with HubSpot that these claims don't concern improving the functionality of a computer.

But that is not the end of the *Alice* inquiry, because software can be patent eligible because of what it does and how. The *McRO* case, for example, teaches us that software that automates identified tasks that could be performed manually is patent-eligible if the claim improves the process beyond the generic benefits obtained using a computer.[19] Here, Trident argues that their claimed software does exactly that: it improves its efficiency over time without human trial and error.

HubSpot points out that the *McRO* case is distinguishable because the claims at issue there involved specific rules. I take its point, and I agree that, to the extent that the claims here are directed to the broad concept of self-improvement or self-optimization of marketing campaigns without any specific rules, they may very well be directed to an abstract idea. Indeed, I don't think anyone here would seriously dispute that, as long as they've been around, marketers have always tried to conserve their efforts and improve their own campaigns. Taking that process out of human hands,

---

[16] '977 patent, 12:18–67.

[17] *Alice*, 573 U.S. at 219 (citing *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).

[18] *Enfish*, 822 F.3d at 1335.

[19] 837 F.3d at 1312–14.

without more, would not make the idea of self-improvement concrete. Nor would restricting the concept of self-optimization to the field of digital marketing be enough to render abstract claims non-abstract.[20]

Here, however, the limitations directed to optimization may claim something more narrow than the abstract idea of self-improvement. I think there are three-prongs to the thrust of Trident's argument. The claims require (1) an "optimization engine," (2) the "adaptive scoring" of campaigns or customers, and (3) a "prediction engine" for scoring. The eligibility of the claims may depend on whether the claimed use of each term is a particular genus of rules or a generic description of automated self-improvement. The answer to that question depends on claim construction, and the Court is not prepared to do that at this stage of the case on this briefing.

In short, I cannot say on this record that the claims of the '977 patent are directed to an abstract idea. HubSpot's motion is therefore denied. HubSpot may reraise its § 101 arguments at a later stage in the case.

Because the Court cannot conclude that the claims of the challenged patent are directed to an abstract idea, the Court does not proceed to *Alice* step two. I do note, however, that the question of whether the claims involve "more than performance of 'well-understood, routine, [and] conventional activities'"[21] cannot be answered without understanding what the claims cover. And answering the question may also involve assessing disputed issues of fact.[22]

Trident disputes that the claims involve nothing more than conventional activities. And the record does not conclusively demonstrate that the claims involve only conventional activities. So even if I were to conclude that all of the claims at issue were directed to an abstract idea, I cannot say on this record that the claims fail at

---

[20] *Alice*, 573 U.S. at 222–23 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." (quoting *Bilski*, 561 U.S. at 610–11)).

[21] *Id.* at 225 (quoting *Mayo*, 566 U.S. at 80).

[22] *Berkheimer*, 881 F.3d at 1368 (what "is well-understood, routine, and conventional to a skilled artisan" within the meaning of *Alice* "is a question of fact").

step two. Should this be a situation where HubSpot thinks that early claim construction and summary judgment proceedings on the issues of § 101 might be appropriate, it may raise that with the presiding judge.

HubSpot alternatively argues that this case should be dismissed under Rule 12(b)(1) for lack of standing. I disagree. An assignee of the '977 patent would have standing to bring this action.[23] Moreover, for the purpose of assessing standing at this stage, the Court must accept as true the allegations set forth in the Complaint. Here the Complaint alleges that Trident is the assignee of the '977 patent. The Court must accept that as true at this stage.[24]

The Abstract of Title does raise some questions, but I do not decide whether the facts show that the '977 patent is assigned to Trident. Now is not the time to answer factual questions. Although Trident ultimately bears the burden of demonstrating that it has standing to assert the patent, it does not need to prove any facts on this motion to dismiss.

HubSpot argues that, even accepting Trident is the assignee, it may lack standing because the Abstract of Title shows a grant of a security interest, and HubSpot hypothesizes that the security interest might have interrupted Trident's standing. Even if that were correct in theory, there is only circumstantial evidence that the parties who granted the interest ever had any rights to the '977

---

[23] Unlike the judicially-recognized right of an exclusive patent licensee to sue for infringement, an assignee's right to sue for infringement is created by statute. *Rite-Hite Corp v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). Section 281 of Title 35 gives "patentees" the right to sue for infringement, and § 100(d) defines "patentee" to include the original patentee and its successors in title. Sections 154(a)(1) and 261 allow patents to be assigned and make an assignee the successor "patentee" within the meaning of § 281. *See, e.g., Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) ("[A] patentee or successor in title to the patentee may bring an action for patent infringement.").

[24] *See Warth*, 422 U.S. at 501; *Storino* 322 F.3d at 296; *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032–33 (Fed. Cir. 1995). There is a conspicuous typographical error in the Complaint, which erroneously identifies the document recorded with the U.S. Patent and Trademark Office at Reel/Frame 044346/0080 on February 4, 2015 as the instrument that grants sole title to Trident. (D.I. 1 ¶ 7.) It appears undisputed that the recorded assignment to Real Living, Inc. (which later changed its name to Trident) is at Reel/Frame 021561/0946 on September 17, 2008. (D.I. 9, Ex. 2; Tr. 18:15–22.) Trident's counsel indicated during oral argument that it would be "happy" to amend the complaint to correct the error. (Tr. 29:14–17.)
The Court is nevertheless obliged at this stage of the proceedings to accept as true Trident's allegation that it is the assignee of the '977 patent.

13

patent, the interest does not appear to grant substantial rights in the patent, and the same public records HubSpot relies on indicate that the security interest was released unexercised.[25]

The cases HubSpot cites, *Ortho Pharmaceutical*[26] and *Abbott Point of Care*,[27] do not support dismissal here. HubSpot has cited no case holding that the mere grant of a security interest can deprive an assignee of standing, and, as mentioned, the court at this stage must accept as true that Trident is the assignee of the '977 patent.

Accordingly, HubSpot's motion to dismiss for lack of standing is denied.

### III.  CONCLUSION

For the reasons stated above, Defendant HubSpot's motion to dismiss is denied. The Court's decision is without prejudice to HubSpot's ability to reraise its standing and § 101 arguments at a later stage of the case.

---

[25] (D.I. 9, Ex. 2; Tr. 29:18–20.)

[26] 52 F.3d at 1032–33.

[27] 666 F.3d at 1302.