IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUTONOMOUS DEVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1466 (MN) |
| | ) | |
| TESLA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS UNDER RULE 12(b)(6)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

OF COUNSEL:

Anish Desai
Ian Moore
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
(212) 310-8000

*Attorneys for Defendant Tesla, Inc.*

Christopher Pepe
Matthew D. Sieger
Eric C. Westerhold
Allison Herzig
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000

Adrian C. Percer
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1175
(650) 802-3000

February 13, 2023

TABLE OF CONTENTS

Page

I.      Introduction.............................................................................................................1

II.     Argument ................................................................................................................2

        A.      Only the Ten Asserted Claims Are at Issue at the Pleading Stage .........................2

        B.      Plaintiff Has Not Shown that Claim Construction or Discovery Is Necessary
                to Resolve Tesla's Motion ......................................................................................3

        C.      The Ten Asserted Claims Fail Steps One and Two of the *Alice* Test......................6

                1.      The Two Claims Selected by Tesla Are Representative of the Ten
                        Asserted Claims ...........................................................................................6

                2.      Plaintiff's Counterarguments for *Alice* Step One Are Unavailing..............7

                3.      Plaintiff's Counterarguments for *Alice* Step Two Are Unavailing.............9

III.    Conclusion ...........................................................................................................10

TABLE OF AUTHORITIES

Page(s)

**Cases**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
    No. CV 21-1458-RGA, 2022 WL 2643530 (D. Del. July 8, 2022)...................................... 2

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016).................................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................... 3

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020).................................................................................... 9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017).................................................................................... 3

*Consumer 2.0, Inc. v. Tenant Turner, Inc.*,
    343 F. Supp. 3d 581 (E.D. Va. 2018) .......................................................................... 2

*Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014).................................................................................... 7

*Diamond v. Diehr*,
    450 U.S. 175 (1981)................................................................................................... 8

*DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.*,
    346 F. Supp. 3d (D. Del. 2018).................................................................................... 2

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020).................................................................................... 4

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016).................................................................................... 3

*Hyper Search, LLC v. Facebook, Inc.*,
    No. CV 17-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018) ......................... 7

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019).................................................................................... 8

*Move, Inc. v. Real Est. All. Ltd.*,
    721 F. App'x 950 (Fed. Cir. 2018) ............................................................................ 10

*Simio, LLC v. FlexSim Software Prod., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)........................................................................................ 4

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020)........................................................................................ 6

*TrackTime, LLC v. Amazon.com, Inc.*,
    No. CV 18-1518 (MN), 2019 WL 2524779 (D. Del. June 19, 2019)................................ 2

*Trading Techs. Int'l, Inc. v. IBM LLC*,
    921 F.3d 1084 (Fed. Cir. 2019)...................................................................................... 10

*Wireless Discovery LLC v. Eharmony, Inc.*,
    No. CV 22-480-GBW, 2023 WL 1778656 (D. Del. Feb. 6, 2023)................................... 10

## I.    INTRODUCTION

Tesla moves to dismiss the complaint based on the ineligibility of the ten claims asserted in the complaint, which merely cover the abstract idea of learning to perform a task by matching a current circumstance with a previous circumstance. If the Court agrees that claim 1 of the '449 and '585 patents are representative of these ***asserted*** claims, then this motion is straightforward, as Plaintiff—after listing the patents' purported improvements over existing technology—has conceded by its own admission that "None of these inventive elements are found in Tesla's 'representative' claims." Opp. 6.

Despite this admission, Plaintiff argues that it is inappropriate to dismiss the complaint because there are *unasserted* claims reciting several purported "improvements over existing technology" such as "fleet learning" and "neural networks," which their expert argues are "an important leap over 'pre-coded' responses." Opp. 6, 9, 11, 14-17. Plaintiff suggests that it will assert these claims "at the appropriate time." Opp. 2. But if this Court finds that the asserted claims are patent ineligible, the operative complaint lacks merit and the case must be dismissed.

Plaintiff further argues that the motion is inappropriate because Tesla uses "an extremely high level of abstraction" to "conflate[e] one hundred thirty-four claims." Opp. 1. Tesla appropriately, however, addressed only the ten asserted claims at issue in the complaint, and Tesla and Plaintiff have nearly identical descriptions of those asserted claims.

Tesla's motion is also not premature because eligibility is routinely resolved at the pleading stage, and Plaintiff fails to explain how either claim construction or discovery could impact the § 101 analysis of the claims at issue.

II.     ARGUMENT

    A.      Only the Ten Asserted Claims Are at Issue at the Pleading Stage

Plaintiff's opposition substantially relies on the premise that Tesla is "conflating *one hundred thirty-four* claims across the six Asserted Patents into *two* representative claims." Opp. 1 (emphasis in original). That premise is flawed. Tesla's motion only addresses the *ten* claims *asserted in the complaint*: '449 Patent, claims 1 and 17; '974 Patent, claims 1, 14, and 18; '344 Patent, claims 1 and 3; '583 Patent, claim 4; '134 Patent, claim 1; and '585 Patent, claim 1. Tesla clearly listed the claims subject to this motion in its brief and included a reproduction of the asserted claims in Exhibit 1 for comparison with the representative claims. Br. 5; D.I. 12, Ex. 1.

Neither Tesla nor the Court needs to address the unasserted claims. *See, e.g.*, *DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.*, 346 F. Supp. 3d 616, 619 n. 1 (D. Del. 2018) ("[T]he unasserted claims are not a part of this action and thus, the Court's analysis is limited to the asserted claims."); *Consumer 2.0, Inc. v. Tenant Turner, Inc.*, 343 F. Supp. 3d 581, 586 n.1 (E.D. Va. 2018) ("The Court limits the scope of this ruling to the claims asserted and set forth in Plaintiff's Complaint."). And indeed, this Court has previously granted motions to dismiss without addressing unasserted claims. *See, e.g.*, *TrackTime, LLC v. Amazon.com, Inc.*, No. CV 18-1518 (MN), 2019 WL 2524779, at *6 (D. Del. June 19, 2019) ("I am granting the motion to dismiss. I understand that there are additional claims of one of the patents that have not been asserted, and I am not addressing . . . those claims as they are not before me."); *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, No. CV 21-1458-RGA, 2022 WL 2643530 (D. Del. July 8, 2022) (dismissing complaint based on determination that the thirty-five asserted claims were ineligible under § 101 without addressing unasserted claims).

Nonetheless, Plaintiff alleges in Opposition that "Tesla's infringement encompasses many other claims, which Autonomous Devices will identify through infringement contentions at the

appropriate time." Opp. 2. But Plaintiff did not plead infringement of these other claims in its complaint. These unidentified patent claims are not relevant to the motion because Plaintiff must show *the complaint* is sufficient to maintain this cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a *complaint* must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (emphasis added)).

Plaintiff also states that "this Court has correctly observed that it is not an efficient use of judicial resources to determine eligibility of numerous claims across several patents at the motion to dismiss stage absent an agreement on representativeness." Opp. 7. The cases cited by Plaintiff are inapposite, as each one involved the defendant seeking disposition of more than 100 patent claims. Opp., Ex. 2 (more than 100 claims); Opp., Ex. 3 (145 claims); Opp., Ex. 4 (more than 170 claims). This motion, in contrast, involves a mere ten asserted claims. Plaintiff cites no authority for the proposition that the Court should delay resolution of the patent eligibility question for the ten asserted claims because the asserted patents contain additional unasserted claims.

> **B.      Plaintiff Has Not Shown that Claim Construction or Discovery Is Necessary to Resolve Tesla's Motion**

Plaintiff asserts that "the resolution of Section 101 eligibility of the patent claims would be inappropriate at this early stage of the proceedings without the benefit of claim construction and other discovery." Opp. 1. But courts routinely resolve patent eligibility at the pleading stage. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (noting that the court has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced"); *see also Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016). Although formal claim construction may be necessary in some cases, Plaintiff has not explained why that would be the case here. Nor has Plaintiff explained why discovery is necessary to evaluate the eligibility of the asserted claims.

Plaintiff argues that "without claim construction . . . it is not clear that claim elements like the 'artificial intelligence unit,' 'knowledgebase,' 'knowledge cell,' 'circumstance representation,' 'object representations,' 'learning process that includes operating the first device at least partially by the user,' 'learning process that includes operating the first device at least partially by another user,' 'learning process that includes operating the third device at least partially by: the user, or another user,' etc. are indeed generic, well-known components." Opp. 13-14. There are three holes in this argument.

*First*, three of these terms do not appear in the asserted claims: "knowledge cell," "learning process that includes operating the first device at least partially by another user," and "learning process that includes operating the third device at least partially by: the user, or another user." They are therefore irrelevant.

*Second*, for the remaining terms, Plaintiff cannot avoid a motion to dismiss based on the suggestion that a future claim construction *might* impact the *Alice* 101 analysis. The Federal Circuit has rejected this argument, particularly where, as here, the plaintiff does not propose constructions or explain how those constructions may impact eligibility. *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("Simio has not explained how it might benefit from any particular term's construction under an *Alice* § 101 analysis . . . . We therefore see no error in the district court's determining ineligibility without first conducting claim construction."); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183-84 (Fed. Cir. 2020) ("ECT has not identified a single claim term that it believes requires construction before the eligibility of claim 11 can be decided, *much less how this construction could affect the analysis*. Under such circumstances . . . we conclude that the district court properly resolved patent eligibility at the pleadings stage of the proceedings." (emphasis added)).

Plaintiff cites three cases for the notion that "claim construction issues preclude a finding of invalidity at the motion to dismiss stage." Opp. 14. These cases are inapposite, as in each case, the plaintiff proposed constructions and explained how those constructions would impact patent eligibility. *See* Opp., Ex. 5 at 9-10 (noting that plaintiff provided constructions and that construction of the terms "'optimization engine' and 'adaptive scoring' might capture a specific genus of algorithms or types of rules"); Opp., Ex. 6 at 14 ("Plaintiff argued in its briefing and here today that claim 27 of the '438 Patent has the same remote storage requirement as in the '559 Patent. Gryphon disputes that there is any such requirement in the '438 Patent claims."). Opp., Ex. 7 at 3 n.1 (citing plaintiff's brief, attached hereto as Exhibit 2, which proposed constructions).

*Third*, regardless, Plaintiff has not shown that the recited "artificial intelligence unit," "knowledgebase," and "learning process" are anything other than generic. Indeed, the asserted patents describe the artificial intelligence unit as "any hardware, programs, or a combination thereof" that "compris[es] the functionality for learning one or more digital pictures correlated with any instruction sets." Br. 4. The asserted patents also explain that the "disclosed systems, devices, and methods are independent of the artificial intelligence model and/or technique used and any model and/or technique can be utilized," and describe the "knowledgebase" as comprising "any data structure or arrangement capable of storing the knowledge of a device's operation." *Id*. at 4-5. In addition, the patents describe "circumstance representation" and "object representation" as merely a representation of a circumstance or an object collected by a sensor (e.g., a digital picture captured by a digital camera). '344 Patent, 169:60-63; '974 Patent, 1:46-51. Plaintiff offers no countervailing evidence or argument that these claim elements are unconventional or otherwise have a narrower meaning that is relevant to the § 101 analysis.

Accordingly, Plaintiff has not shown that claim construction or discovery is necessary to resolve Tesla's motion to dismiss.

> **C.      The Ten Asserted Claims Fail Steps One and Two of the *Alice* Test**
>
> > **1.      The Two Claims Selected by Tesla Are Representative of the Ten Asserted Claims**

Tesla contends that Claim 1 of the '449 and Claim 1 of the '585 patents are representative of the ten asserted claims. Br. 5-8. Plaintiff disputes that these claims are representative, alleging that three claim elements are missing from the representative claims but present in other claims. Opp. 5-6. Plaintiff's argument fails because the elements it relies on are either not required by the asserted claims or do not impact the eligibility analysis.

*First*, Plaintiff states that "certain claims ***require*** a 'second device to autonomously perform' operations using 'instruction sets for operating the first device' that are 'learned' by 'operating the first device at least partially by a user.'" Opp. 5-6 (emphasis added). Plaintiff is wrong—none of the asserted claims ***requires*** a second device. The asserted claims identified by Plaintiff—'344 Patent claim 1 and '974 Patent claims 1, 18— recite a second device as optional. '344 Patent, claim 1 ("detected at least in part by: the one or more sensors of the first device ***or*** one or more sensors of a second device…the first device ***or*** the second device autonomously performs one or more operations"); *see also* '974 Patent, 169:57-170:4, 174:1-10. The § 101 inquiry focuses on what the claims require, and the claims do not require a second device. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294 (Fed. Cir. 2020) ("The Step 1 'directed to' analysis called for by our cases depends on an accurate characterization of what the claims ***require*** . . . ." (emphasis added)).

*Second*, Plaintiff states that "Tesla's faulty abstraction overlooks the claimed concepts of a 'neural network.'" Opp. 6. None of the asserted claims recites a "neural network," which

6

according to the specification, is nothing more than a generic component that is "similar to that of a brain." '449 Patent, 95:48-57. Moreover, courts have found the claim term "neural network" to recite no more than an abstract idea. *E.g.*, *Hyper Search, LLC v. Facebook, Inc.*, No. CV 17-1387-CFC-SRF, 2018 WL 6617143, at *10 (D. Del. Dec. 17, 2018).

*Third*, Plaintiff states that Tesla has overlooked the claimed concept of "a 'knowledgebase' or 'knowledge structure' that includes 'knowledge cells.'" Opp. 6. But none of the asserted claims recites a "knowledge cell." While some of the asserted claims do recite a "knowledgebase" ('974 Patent at claims 1, 18; '334 Patent at claim 1; '134 Patent at claim 1), this is of no consequence. Representative claim 1 of '449 Patent and claim 1 of the '585 Patent recite "a memory that stores . . . digital pictures correlated with . . . instruction sets . . . [that] are learned in a learning process." The other asserted claims require the same, but recite "a memory that stores at least a knowledgebase that includes" circumstance representations correlated with instruction sets that are learned in a learning process. There is no meaningful difference between these claims because, as explained in Tesla's opening brief and uncontested in Plaintiff's Opposition, a "knowledgebase" is described in the specification as "any data structure or arrangement capable of storing the knowledge of a device's operation." Br. 18 (quoting '449 Patent, 95:4-6). The presence of a generic data structure stored in memory has no impact on the § 101 analysis. Thus, the claims remain "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

### 2.    Plaintiff's Counterarguments for *Alice* Step One Are Unavailing

Tesla contends that the asserted claims are directed to the abstract idea of performing a task by matching a current circumstance with a previously learned circumstance. Br. 1. Plaintiff contends that "[t]he claims of the Asserted Patents are directed to specific improvements in artificial intelligence (AI), autonomous operations, and/or simulation technology." Opp. 8.

Plaintiff's argument is unavailing because it does not (and cannot) identify any technological improvements described in the specification or recited in the asserted claims.

First, Plaintiff states that the claims recite a second device learning from a first device, which Plaintiff calls "fleet learning." Opp. 9-10. But none of the asserted claims *requires* a second device. At most, some of the asserted claims *permit* a second device. For example, claim 1 of the '344 patent, cited by Plaintiff, recites "the one or more sensors of the first device, *or* one or more sensors of a second device" and "wherein the first device *or* the second device autonomously performs one or more operations" (emphasis added). The "directed to" inquiry of *Alice* step one depends on what the claims *require*, not what they encompass. *See* Br. 13 (citing cases).

Second, Plaintiff relies on purported improvements in "autonomous vehicles" detecting "driving conditions" (e.g., Opp. 12), but none of the asserted claims requires a vehicle. Indeed, Plaintiff does not dispute that the asserted claims extend to any device automating any task. Br. 14.

Third, Plaintiff cites to notices of allowance for the notion that the asserted claims are an improvement over the prior art. Opp. 8, 10, 12. This argument is misguided. Plaintiff is citing examiner statements regarding novelty over §§ 102/103 prior art, which is irrelevant to eligibility under § 101. *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."). Plaintiff also cites *Koninklijke* for the proposition that the "claimed advance over the prior art" is an essential inquiry at *Alice* step one. Opp. 10 (citing *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019)). But Plaintiff misunderstands the quotation from *Koninklijke*. How a patent *claims* an improvement is relevant to the step one analysis, but "the novelty or non-obviousness of the invention has little to no bearing on the question of what the

claims are 'directed to.'" *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). Here, while the background of the patents contends that existing systems "lack a way to learn operation of a device or system and enable autonomous operation of a device or system" ('344 Patent at 1:44-48), the asserted *claims* do not recite any technological improvement to the way in which learning is performed. Br. 12. Rather, the claims are "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).

Finally, Plaintiff contends that *Personal Web* and *S.I.SV.EL.* are distinguishable because they involved "patent claims that collected, observed, and learned without describing *how* this was done in a manner that improved upon the prior art." Opp. 11. To distinguish the asserted patents, Plaintiff cites the '344 Patent at column 1, lines 39-47. But as discussed above, these lines describe a *problem* in the prior art, not a solution. The asserted claims cover any data structure for storing and correlating pictures, objects, or circumstances with instructions, and any AI technique for learning those correlations. *E.g.*, '449 Patent, 95:3-47. As shown below, Plaintiff's description of the claimed invention matches Tesla's description of what the claims are "directed to."

| Plaintiff (Opp. 11) | Tesla (Br. 1) |
|---|---|
| "The invention of the claims of the Object Representation Patents achieves this autonomous operation 'based on (i) representations of that device's circumstances [] and (ii) representations of circumstances [] and instructions learned from that device or another device'" | "The asserted patents are directed to the abstract idea of performing a task based on matching a current circumstance with a previously learned circumstance." |

**3.      Plaintiff's Counterarguments for *Alice* Step Two Are Unavailing**

Tesla contends that the asserted claims merely recite conventional computer components performing their routine functions and lack an inventive concept. Br. 16. Plaintiff does not dispute that the claims recite conventional computer components performing their routine functions, arguing instead that this fact does not foreclose an inventive concept. Opp. 13.

Specifically, Plaintiff contends that "the claimed inventions were decidedly unconventional as compared to prior art systems, which contained no notion of 'autonomous performed operations [] based on a correlation learned in a learning process that includes operating a device at least partially by a user.'" Opp. 13; *see also* Opp. 14-17. But Plaintiff's "alleged inventive concepts are merely rephrasing the abstract idea and saying it is an inventive concept, which is improper." *Wireless Discovery LLC v. Eharmony, Inc.*, No. CV 22-480-GBW, 2023 WL 1778656, at *11 (D. Del. Feb. 6, 2023) (citing *Trading Techs. Int'l, Inc. v. IBM LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) ("The abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance." (internal citations and quotation marks omitted))).

Plaintiff claims that the complaint and accompanying declaration of Dr. Saber "provide pages of examples regarding how these patents were not well-understood, routine, or conventional improvements to the prior art." Opp. 17; *see also* Opp. 15, 16 (making similar claims). Tesla's opening brief addressed these "examples," which amount to a recitation of claim language followed by the conclusory assertion that the claimed features "were not well-understood, routine, or conventional." Br. 19. Plaintiff disputes this characterization (Opp. 15) but offers no counterexamples. The Court need not accept these bald assertions as true. *Move, Inc. v. Real Est. All. Ltd.*, 721 F. App'x 950, 957 (Fed. Cir. 2018).

Finally, for *Alice* step two, Plaintiff describes and relies on purported improvements in "training a fleet of autonomous vehicles," i.e., fleet learning. Opp. 14-16. Again, however, the asserted claims require neither fleet learning nor vehicles.

## III.    CONCLUSION

For the foregoing reasons, Tesla requests that the Court grant its motion to dismiss.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Anish Desai
Ian Moore
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
(212) 310-8000

Christopher Pepe
Matthew D. Sieger
Eric C. Westerhold
Allison Herzig
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7000

Adrian C. Percer
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065-1175
(650) 802-3000


February 13, 2023

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant Tesla, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 13, 2023, upon the following in the manner indicated:

Karen E. Keller, Esquire                                              *VIA ELECTRONIC MAIL*
Emily S. DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Blair Jacobs, Esquire                                                 *VIA ELECTRONIC MAIL*
Christina A. Ondrick, Esquire
John S. Holley, Esquire
MCKOOL SMITH, P.C.
1999 K Street, NW Suite 600
Washington, D.C.  20006
*Attorneys for Plaintiff*

George T. Fishback, Jr., Esquire                                      *VIA ELECTRONIC MAIL*
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX  78701
*Attorneys for Plaintiff*


                                              */s/ Brian P. Egan*
                                              _____
                                              Brian P. Egan (#6227)