EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AUTONOMOUS DEVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1466-MN |
| | ) | |
| TESLA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[PROPOSED] PROTECTIVE ORDER GOVERNING THE DESIGNATION AND**
**HANDLING OF CONFIDENTIAL MATERIALS**

Plaintiff Autonomous Devices LLC ("Plaintiff") and Defendant Tesla, Inc. ("Defendant")

anticipate that documents, testimony, or information containing or reflecting confidential,

proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or

produced during the course of discovery, initial disclosures, and supplemental disclosures in this

case and request that the Court enter this Order setting forth the conditions for treating, obtaining,

and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause

for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery

Materials ("Order" or "Protective Order").

      1.    **PURPOSES AND LIMITATIONS**

          (a)    Protected Material designated under the terms of this Protective Order shall

be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for

any other purpose whatsoever.

(b)     The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

(c)     Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to this order shall promptly notify that party of the motion so that the party has a reasonable opportunity to appear and be heard on whether that information should be disclosed prior to disclosure.

2.     **DEFINITIONS**

(a)     "CONFIDENTIAL" means information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

(b)     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" means sensitive "CONFIDENTIAL" information (regardless of how it is generated, stored or maintained) or tangible things, disclosure of which to another would create a substantial risk of serious harm that could not be avoided by less restrictive means.

(c)     **[DISPUTED PROVISION-DEFENDANT'S PROPOSAL:** "Source Code" means computer code, associated comments, and/or revision histories for computer code, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs.**]**

**[PLAINTIFF'S PROPOSAL:** "HIGHLY CONFIDENTIAL – SOURCE CODE MATERIAL" means sensitive "CONFIDENTIAL" information (regardless of how it is generated, stored or maintained) or tangible things representing computer code (i.e., computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler or other translator) and associated comments and revision histories, disclosure of which to another would create a substantial risk of serious harm that could not be avoided by less restrictive means.**]**

(d)     "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(e)     "Expert" means a person with specialized knowledge or experience in a matter pertinent to the respective litigations who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in the above-captioned action, (2) is not a current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

(f)     "Outside Counsel" means (i) attorneys who are not employees of a Party to the above-captioned action but are retained to represent or advise a Party to that action and have appeared on the pleadings as counsel for a Party and (ii) partners, associates, and staff of such counsel to whom it is reasonably necessary to disclose the information for this litigation.

(g)     "Patents-in-suit" means U.S. Patent Nos. 10,102,449; 11,055,583; 10,452,974; 11,238,344; 10,607,134; and 11,113,585, and any other patent asserted in this action.

(h)     "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel and their support staffs.

(i)     "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in this case.

(j)     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE," as provided for in this Order. Protected Material shall not include: (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(k)     "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

3.     **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

4.     **SCOPE**

(a)     The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b)      Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

(c)      Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with the consent of the Producing Party or by order of the Court.

(d)      This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

(e)      The protections conferred by this Order do not cover the following information: (a) any information that the Receiving Party can show is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information that the Receiving Party can clearly show was known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Party that designated the Discovery Material.

5.      **DURATION**

Even after the termination of this case, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)     <u>Basic Principles</u>. All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(b)     <u>Patent Prosecution Bar</u>. Absent the written consent of the Producing Party, any person on behalf of the Plaintiff who personally reviews any technical HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE are prohibited from participating in an administrative proceeding for the examination and reexamination of a patent or patent application insofar as the participation involves input into the drafting, revising or amending of a patent claim relating to the functionality, operation, and design of autonomous systems, machine learning, or artificial intelligence (generally or as described in any patent in suit), if such administrative proceeding (e.g., patent application filing) was commenced less than two years following the final termination of this action (including any appeals). This prosecution bar does not prevent an individual from participating in a reexamination, *inter partes* review, or other post-grant review proceedings involving the patents-at-issue or patents related thereto, except that the individual is prohibited from participating in, or otherwise providing input into, the drafting of any claim or amendment to any claim.

(c)     <u>Secure Storage, No Export</u>. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order. To ensure compliance with applicable United States Export Administration Regulations, Protected Material may not be

exported outside the United States or released to any foreign national (even if within the United States).

(d)     <u>Legal Advice Based on Protected Material</u>. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

(e)     <u>Limitations</u>. Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material. Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to order of the Court.

7.     **DESIGNATING PROTECTED MATERIAL**

(a)     <u>Available Designations</u>. Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein: "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

(b)     <u>Written Discovery and Documents and Tangible Things</u>. Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by placing the appropriate designation

on every page of the written material prior to production. For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained. In the event that original documents are produced for inspection, the original documents shall be presumed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection and re-designated, as appropriate during the copying process.

        (c)     <u>Native Files</u>. Where electronic files and documents are produced in native electronic format, such electronic files and documents shall be designated for protection under this Order by appending to the file names or designators information indicating whether the file contains "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE," material, or shall use any other reasonable method for so designating Protected Materials produced in electronic format. When electronic files or documents are printed for use at deposition, in a court proceeding, or for provision in printed form to an Expert or consultant pre-approved pursuant to paragraph 12, the party printing the electronic files or documents shall affix a legend to the printed document corresponding to the designation of the Designating Party and including the production number and designation associated with the native file.

        (d)     <u>Depositions and Testimony</u>. Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty (30) days of receipt of the transcript of the testimony. If no indication on the record is made, all information disclosed during a deposition shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the time within

which it may be appropriately designated as provided for herein has passed. Any Party that wishes to disclose the transcript, or information contained therein, may provide written notice of its intent to treat the transcript as non-confidential, after which time, any Party that wants to maintain any portion of the transcript as confidential must designate the confidential portions within fourteen (14) days, or else the transcript may be treated as non-confidential. Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material. In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order. In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties." Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

## 8. **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a) A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)     The Receiving Party's Outside Counsel, such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)    Any outside Expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such Expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such Expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such Expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 0 below; Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iii)   The Court, jury, and court personnel;

(iv)    Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(v)     Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material, not to use the Protected Material in any way other than as a mock juror, and to keep any information concerning Protected Material confidential;

(vi)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vii)     Any other person with the prior written consent of the Producing Party.

9.     **DISCOVERY MATERIAL DESIGNATED AS "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

(a)     A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party. The Parties agree that the following information, if non-public, shall be presumed to at least merit the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation: trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

(i)     The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Any outside Expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such Expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such Expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party; (c) such Expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; (d) such Expert or consultant accesses the materials in the United States only, and does not transport them to or access them from any foreign jurisdiction; and (e) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 0 below;

(iii)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)    The Court, jury, and court personnel;

(v)     Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vi)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vii)   Any other person with the prior written consent of the Producing Party.

(c)     In addition, a Party may disclose arguments and materials derived from Discovery Material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential. A Party may not disclose to mock jurors any original, as-produced materials or information (including, for example, documents, deposition testimony, or interrogatory responses) produced by another Party designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

10.    **DISCOVERY MATERIAL DESIGNATED AS "HIGHLY CONFIDENTIAL – SOURCE CODE"**

(a)     To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "HIGHLY CONFIDENTIAL – SOURCE CODE."

(b)     Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(c)     Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

(i)     The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)     Any outside Expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such Expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such Expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such Expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 0 below;

(iii)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)     The Court, jury, and court personnel;

(v)     Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(vi)     Any other person with the prior written consent of the Producing Party.

11.     **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a)     Any Source Code that is produced in discovery shall be made available for inspection, in electronic (e.g., native) format.  The Producing Party shall produce Source Code for inspection in electronic (e.g., native) format at the office of its counsel in California or at another location agreed on by the parties, such as Washington D.C. or New York where Outside Counsel

for each party has offices.  Any single reviewing session (conducted during one business day or during consecutive business days of review) shall be conducted during regular business hours (8:00 A.M. to 6:00 P.M. local time) on four (4) business days' written (including email) notice, although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times and on shorter notice

(b)     Prior to the first inspection of Source Code, the Receiving Party shall provide fourteen (14) days' notice for its Source Code inspection request.

(c)     Source Code that is designated "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

i.     All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or Experts in a secure room on at least two (2) secured computers without Internet access or network access to other computers and on which all access ports have been disabled (except for one printer port), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or Experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computers,

provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party approves such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with the software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer. The Receiving Party shall not copy, remove, or otherwise transfer any portion of the Source Code onto any recordable media or recordable device absent prior agreement of the Producing Party.

ii. No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind shall be permitted into the Source Code Review Room. Upon request, the Producing Party shall provide personnel to keep such devices (include cellular telephones) secure while a member of the Receiving Party is in the Source Code Review Room, and shall promptly notify the member if any calls or notifications are received.

iii. The Source Code shall be produced as it is kept in the normal course of business, or as it would be collected in the normal course of business. The Receiving Party's outside counsel and/or Experts shall be entitled to take handwritten notes relating to the Source Code. Such notes shall be labeled "HIGHLY CONFIDENTIAL – SOURCE CODE." Such notes may include excerpts of the Source Code when reasonably necessary to guide the note taker's

use of later-requested paper copies of the Source Code. Such handwritten notes shall be subject to the same limitations and protections as printed Source Code, as set forth paragraph 12, including without limitation total page limits, consecutive line number limits, copy limits, and logging requirements. The Receiving Party shall be under no obligation to produce handwritten notes but shall disclose how many pages of handwritten notes contain Source Code upon request. Otherwise, no copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided in this Protective Order. The Receiving Party's outside counsel and/or Experts shall also be entitled to take notes relating to the Source Code, but may not copy the Source Code into the notes. The Producing Party shall make available software on the Source Code Computers for note-taking and shall permit printing of such notes. No other computer is permitted in the Source Code Review Room. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided in this Protective Order.

iv.     The Source Code provider shall provide a manifest of the contents of the computer to include a list of Source Code files available for review. This manifest, which will be supplied in both printed and electronic form, will list the name, location, and MD5 checksum of every Source Code file on the Source Code Computer.

v.     The Source Code Computer shall include software utilities which will allow counsel and experts to view and search the Source Code. At a minimum, these utilities must provide the ability to (a) view, search, and line-number any source file, and (b) search for a given pattern of text through a number of files, (c)

compare two files and display their differences, and (d) compute the MD5 checksum of a file.

vi.       The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way.

vii.      The Receiving Party may request copies of reasonable portions of the Source Code identified in a reasonable manner. The Receiving Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere. In the event that the Receiving Party requests more than **[DISPUTED PROVISION-DEFENDANT'S PROPOSAL:** 5 consecutive pages, or an aggregate of more than 200 pages**] [PLAINTIFF'S PROPOSAL:** 50 consecutive pages, or an aggregate of more than 2500 pages**]**, of print outs of Source Code, the parties shall have a meet and confer in good faith. A text editor will be provided on the Source Code Computer so that the list of files to be printed may be saved directly to the Source Code Computer. If the Producing Party objects that identified files are not reasonably necessary, the Producing Party shall make such objection known to the Receiving Party within three (3) business days of the identification of any files by the Receiving party. If, after meeting and conferring,

the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek a judicial resolution of whether or not the identified Source Code in question is reasonably necessary to any case preparation activity. At the request of the Receiving Party, in the absence of any objection the Producing Party shall provide within five (5) days of such request, paper copies of the Source Code identified at the time of inspection by the Receiving Party. The Producing Party shall print, label such files with the file's complete path name, and append production numbers and the designation "HIGHLY CONFIDENTIAL – SOURCE CODE." The paper copies must be kept in a secured location at the offices of the Receiving Party's Outside Counsel at all times. The Receiving Party may make no more than five (5) additional paper copies of any portions of the Source Code files, not including copies attached to court filings or trial and hearing demonstrative exhibits. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), or (2) necessary for deposition. The Receiving Party shall request printing of only such portions as are relevant to the claims and defenses in the case and are reasonably necessary for such purpose. Such printouts are to be of minimum 10-point, fixed-width font, and shall not exceed sixty-five (65) lines of text per page. The Producing Party may challenge the amount of Source Code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth herein whereby the Producing Party is the "Challenging Party," and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

viii.       The Receiving Party's Outside Counsel shall maintain a log of all paper copies of the Source Code. The log shall include the number of paper copies, names of the recipients of paper copies, and locations where the paper copies are stored. Upon one (1) day's advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

ix.       The Receiving Party's Outside Counsel and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.

x.       Except as provided in this Protective Order, no electronic copies of the Source Code shall be made.

xi.       Unless otherwise agreed in advance by the parties in writing, the Receiving Party's Outside Counsel and/or Experts shall remove all notes, documents, and all other materials from the Source Code Review Room that may contain work product and/or attorney-client privileged information at the end of each day. Materials inadvertently left in the Source Code Review Room do not operate as a waiver of the attorney work product doctrine or any other applicable privilege and shall be returned to the owner promptly. The Producing Party shall not be responsible for any items left in the Source Code Review Room. Proper identification of all authorized persons shall be provided prior to any access to the secure room or the computer containing Source Code. Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government

of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the secure room or the Source Code Computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

xii. [**DISPUTED PROVISION-DEFENDANT'S PROPOSAL:** For depositions, the Receiving Party shall not bring copies of any printed Source Code. Rather, at least ten (10) days before the date of the deposition, the Receiving Party shall notify the Producing Party about the specific portions of Source Code it wishes to use at the deposition, and the Producing Party shall bring printed copies of those portions to the deposition for use by the Receiving Party. Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall remain with the Producing Counsel's outside counsel for secure destruction in a timely manner following the deposition.**]**

[**PLAINTIFF'S PROPOSAL:** Copies of source code that are marked as deposition exhibits shall not be provided to the court reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers and the Party that brought the source code to the deposition will keep possession of the marked deposition source code exhibit. If the deposition exhibit has been marked up or altered in any way by the deponent, the Receiving Party shall store the exhibit in its marked form and provide one copy to outside counsel for the other Party**]**

xiii.        Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party and any persons receiving Source Code from Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party and any persons receiving Source Code from Receiving Party may not scan the Source Code to a PDF or photograph the code). A party may make and use snippets and images of the Source Code if necessary for court filings, expert reports, discovery responses and other similar documents. All such documents shall be clearly marked "HIGHLY CONFIDENTIAL – SOURCE CODE" and, if filed, shall be filed under seal. Unless agreed by the parties, images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead). Unless agreed by the parties, images or copies of Source Code shall be omitted from pleadings and other papers whenever possible and reasonably minimized when not. **[DISPUTED PROVISION-DEFENDANT'S PROPOSAL**: Source Code shall not be electronically filed as an exhibit to any pleadings or papers.**]**

xiv.        All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code Computer. All persons viewing Source Code Computer shall sign on each day they view Source Code Computer a log that will include the names of persons who enter the locked

room to view the Source Code Computer and when they enter and depart. The Producing Party shall be entitled to a copy of the log upon one (1) day's advance notice to the Receiving Party.

xv.     At least five (5) days before the date of a deposition, a Receiving Party may request that the witness have access to a Source Code Computer. The Producing Party shall provide a Source Code Computer that the witness can access and an external monitor that allows the questioning attorney to see the files being discussed during the deposition on the condition that the deposition take place at a location of the Producing Party's choosing. The deposition record will identify the file names and file paths being discussed.

## NOTICE OF DISCLOSURE

(d)     Prior to disclosing any Protected Material to any person described in Paragraphs 8(b)(ii), 9(b)(ii), or 10(c)(ii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

(i) the name of the Person;

(ii) an up-to-date curriculum vitae of the Person;

(iii) the present employer and title of the Person;

(iv) an identification of all of the Person's past and current employment and consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person, including but not limited to an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of autonomous systems, machine learning, or artificial intelligence, or

relating to the acquisition of intellectual property assets relating to autonomous systems, machine learning, or artificial intelligence;

(v) an identification of all pending patent applications on which the Person is named as an inventor, in which the Person has any ownership interest, or as to which the Person has had or anticipates in the future any involvement in advising on, consulting on, preparing, prosecuting, drafting, editing, amending, or otherwise affecting the scope of the claims; and

(vi) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside Expert or consultant. During the pendency of and for a period of one (1) year after the final resolution of this action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of autonomous systems, machine learning, or artificial intelligence, or the acquisition of intellectual property assets relating to autonomous systems, machine learning, or artificial intelligence.

(e)     Within seven (7) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the seven (7) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this seven (7) day period. If the Producing Party objects to disclosure to the Person

within such seven (7) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(f)     For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

(g)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(h)     An initial failure to object to a Person under this Paragraph 0 shall not preclude the non-objecting Party from later objecting to continued access by that Person for good cause. If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection. If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection. Notwithstanding the

foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

12.    **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)    A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)    Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection. Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)    The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute. The Producing Party shall have the burden of justifying the disputed designation;

(ii)    Failing agreement, the Receiving Party may bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation. The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)    Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the

following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

13.     **SUBPOENAS OR COURT ORDERS**

(a)     If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

14.     **FILING PROTECTED MATERIAL**

(a)     Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file or disclose in the public record any Protected Material.

(b)     Any Party is authorized under Del. L.R. 5.1.3 to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order. However, nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

15.     **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)     The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for return of such

inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)    Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)    Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

16.    **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)    The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties. Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b)    A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material

is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 16(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Notwithstanding     the     above,     a     subsequent     designation     of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL — SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(b).

17.    **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)     In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)     Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

(c)     The Receiving Party shall promptly notify the Producing Party within 5 days if it becomes aware of any unauthorized access of the Receiving Party or any unauthorized access of a Party having access to the Producing party's materials.

18.     **FINAL DISPOSITION**

(a)     Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

(b)     All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed. Notwithstanding the provisions for return of Discovery Material, outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but must return any pleadings, correspondence, and consultant work product that contain Source Code.

(c)     **[DISPUTED         PROVISION-DEFENDANT'S         PROPOSAL**: Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, correspondence, deposition and trial exhibits, expert reports, even if such materials contain Protected Material. However, any such archival copies that contain or constitute Source Code must be redacted by the Party wishing to maintain such archival copies, and the unredacted versions of such documents must be destroyed. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.**]**

**[PLAINTIFF'S PROPOSAL**: Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.**]**

      19.    **<u>DISCOVERY FROM EXPERTS OR CONSULTANTS</u>**

      (a)    Absent good cause, drafts of reports of testifying Experts, and reports and other written materials, including drafts, of consulting Experts, shall not be discoverable.

      (b)    Reports and materials exempt from discovery under the foregoing Paragraph shall be treated as attorney work product for the purposes of this case and Protective Order.

      (c)    Testifying Experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case. Draft reports, notes, or outlines for draft reports developed and drafted by the testifying Expert and/or his or her staff are also exempt from discovery.

      (d)    Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters reviewed (regardless of whether such information was relied upon) or relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case. For clarity, this provision is not intended to abrogate the protections for draft reports or disclosures under Fed. R. Civ. P. 26. No discovery can be taken from any non-testifying Expert except to the extent that such non-testifying Expert has provided information, opinions, or other materials to a testifying Expert

relied upon by that testifying Expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

(e)     No conversations or communications between counsel and any testifying or consulting Expert will be subject to discovery unless the conversations or communications are relied upon by such Experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

(f)     Materials, communications, and other information exempt from discovery under the foregoing Paragraphs 20(a)–(c) shall be treated as attorney-work product for the purposes of this litigation and Order.

(g)     Nothing in Protective Order, including Paragraphs 20(a)–(c), shall alter or change in any way the requirements in Paragraph 11 regarding Source Code, and Paragraph 11 shall control in the event of any conflict.

20.    **MISCELLANEOUS**

(a)     <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future. The Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)     <u>Termination of Matter and Retention of Jurisdiction</u>. The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Determination of the above-captioned matter. The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

(c)     <u>Successors</u>. This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal

representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and Experts, and any persons or organizations over which they have direct control.

(d)      Right to Assert Other Objections. No Party waives any right it otherwise would have to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order. This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e)      Burdens of Proof. Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)      Modification by Court. This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Order. All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the District of Delaware.

(g)      Discovery Rules Remain Unchanged. Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Delaware, or the Court's own orders. Identification of any individual pursuant to this Protective Order does not make that individual

available for deposition or any other form of discovery outside of the restrictions and procedures

of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for

the District of Delaware, or the Court's own orders.

**SO ORDERED.**

## **EXHIBIT A**

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Autonomous Devices LLC v. Tesla, Inc.*, United States District Court, District of Delaware, Civil Action No. 22-1466-MN. Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____

Dated: _____

_____
[Signature]

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AUTONOMOUS DEVICES LLC,     )
                             )
            Plaintiff,     )
                             )
              v.       )     C.A. No. 22-1466-MN
                             )
TESLA, INC.,           )
                             )
            Defendant.     )

**DECLARATION OF PHIL DUAN IN SUPPORT OF
TESLA'S LETTER BRIEF REGARDING THE PROTECTIVE ORDER DISPUTE**

I, Phil Duan,[1] hereby declare, affirm, and state the following:

1.     I am currently employed by Tesla, Inc. ("Tesla"), where I am a Senior Staff Software Engineer for Autopilot. I have worked at Tesla from 2017 to September 2019 and from July 2020 to present.

2.     I am submitting this declaration to provide information regarding Tesla's autopilot (AP) software. This Declaration is based on my personal knowledge and/or information provided to me by Tesla employees at my request.

3.     Tesla has invested tens of thousands of engineering man-hours and over a billion dollars in developing the software used to train and implement AP in its vehicles. Tesla considers this software to be its most valuable technology and the future of the company.

4.     Documentation for this software is maintained at the highest levels of internal security. Even as an engineer working directly on the software, with direct reports who are also working directly on the software, I am not permitted to take printouts of computer code or related documentation for Tesla's AP software off Tesla's facilities.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 15th day of May, 2023, in _Palo Alto_ , California.

_____
Phil Duan
Senior Staff Software Engineer, Autopilot
Tesla, Inc.

_____

[1] My legal name is Pengfei Duan.

EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AUTONOMOUS DEVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1466-MN |
| | ) | |
| TESLA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DECLARATION OF JAKE NOCON IN SUPPORT OF
TESLA'S LETTER BRIEF REGARDING THE PROTECTIVE ORDER DISPUTE**

I, Jake Nocon, hereby declare, affirm, and state the following:

1.      I am currently employed by Tesla, Inc. ("Tesla"), where I am Director of Security Intelligence. I have worked for Tesla since 2018.

2.      I am submitting this declaration to provide information regarding Tesla's IT security practices. This Declaration is based on my personal knowledge and/or information provided to me by Tesla employees at my request.

3.      The AP group at Tesla and its work product is maintained under Tesla's highest level of confidentiality, more-so than any other group. This is true both for computer code and for technical documentation produced by the AP group. Exemplary measures that have been put in place to protect the confidentiality of the AP group and its work product include the following:

- Tesla employees must sign NDAs before being given access to confidential material.

- Employees cannot access digital confidential documents without a valid Tesla account having a sufficient access level for the documents in question. Non-AP employees cannot access the AP group's documents or computer code.

- Access to areas of Tesla's facilities are limited based on employee keycards and associated access levels. Non-AP employees cannot access the AP physical work space with their keycards.

- Tesla employs a team whose job is to monitor for the exfiltration of confidential data by its employees, including through the use of electronic monitoring tools.

- Information on members of the AP group within Tesla's intranet is less available than information for non-AP employees.

- Tesla has developed in-house a custom software platform—specifically for its AP group—to improve data security.

4.     Tesla has experienced multiple attempts by third parties to steal confidential information, from inside and outside the company. For example, Tesla repels thousands of external attempts to access its network on a daily basis. As further example, Tesla has previously caught employees attempting to steal confidential data, including AP data, for personal gain or to take to a competitor.

5.     Tesla is also aware of well-funded nation-state actors who have identified AP technology as a target for development. From a security intelligence perspective, Tesla is particularly concerned with attacks from such entities.

6.     Tesla has not made its AP documents or computer code available in response to a law suit, with the exception of the case of *Tesla, Inc. v. Cao*. Tesla accused a former employee, Mr. Cao, of having stolen information from the AP group. In connection with that case, Tesla made a portion of its AP computer code available for inspection on a review computer. Only a neutral, third party reviewer was permitted to access the review computer (a "Neutral"). The Neutral was not permitted to print or transport the computer code.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 15th day of May, 2023, in  San Diego, CA .

*Jake Nocon*
Jake Nocon (May 15, 2023 11:39 PDT)
Jake Nocon
Director of Security Intelligence Tesla,
Inc.

EXHIBIT 4

1
2
3
4                          UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7                                              | Case No.  C
8                    Plaintiff,                |
                                               | STIPULATED PROTECTIVE ORDER FOR
9            v.                                | LITIGATION INVOLVING PATENTS,
                                               | HIGHLY SENSITIVE CONFIDENTIAL
10                                             | INFORMATION AND/OR TRADE SECRETS
11                   Defendant.                |
12

1.     PURPOSES AND LIMITATIONS

        Disclosure and discovery activity in this action are likely to involve production of
confidential, proprietary, or private information for which special protection from public
disclosure and from use for any purpose other than prosecuting this litigation may be warranted.
Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated
Protective Order. The parties acknowledge that this Order does not confer blanket protections on
all disclosures or responses to discovery and that the protection it affords from public disclosure
and use extends only to the limited information or items that are entitled to confidential treatment
under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.4,
below, that this Stipulated Protective Order does not entitle them to file confidential information
under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards
that will be applied when a party seeks permission from the court to file material under seal.

2.     DEFINITIONS

        2.1     Challenging Party: a Party or Non-Party that challenges the designation of information or
items under this Order.

        2.2     "CONFIDENTIAL" Information or Items: information (regardless of how it is generated,

1   stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure

2   26(c).

3        2.3     <u>Counsel (without qualifier)</u>: Outside Counsel of Record and House Counsel (as well as

4   their support staff).

5        2.4     [*Optional*: <u>Designated House Counsel</u>: House Counsel who seek access to "HIGHLY

6   CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter.]

7        2.5     <u>Designating Party</u>: a Party or Non-Party that designates information or items that it

8   produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY

9   CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL –

10  SOURCE CODE"].

11       2.6     <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or

12  manner in which it is generated, stored, or maintained (including, among other things, testimony,

13  transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in

14  this matter.

15       2.7     <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the

16  litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant

17  in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time

18  of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

19       2.8     <u>"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"</u> Information or Items:

20  extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party

21  would create a substantial risk of serious harm that could not be avoided by less restrictive means.

22       2.9     [*Optional*: "<u>HIGHLY CONFIDENTIAL – SOURCE CODE</u>" Information or Items:

23  extremely sensitive "Confidential Information or Items" representing computer code and associated

24  comments and revision histories, formulas, engineering specifications, or schematics that define or

25  otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of

26  which to another Party or Non-Party would create a substantial risk of serious harm that could not be

27  avoided by less restrictive means.]

28       2.10     <u>House Counsel</u>: attorneys who are employees of a party to this action. House Counsel does

1    not include Outside Counsel of Record or any other outside counsel.

2        2.11    Non-Party: any natural person, partnership, corporation, association, or other legal entity

3    not named as a Party to this action.

4        2.12    Outside Counsel of Record: attorneys who are not employees of a party to this action but

5    are retained to represent or advise a party to this action and have appeared in this action on behalf of that

6    party or are affiliated with a law firm which has appeared on behalf of that party.

7        2.13    Party: any party to this action, including all of its officers, directors, employees,

8    consultants, retained experts, and Outside Counsel of Record (and their support staffs).

9        2.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in

10   this action.

11       2.15    Professional Vendors: persons or entities that provide litigation support services (e.g.,

12   photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or

13   retrieving data in any form or medium) and their employees and subcontractors.

14       2.16    Protected Material: any Disclosure or Discovery Material that is designated as

15   "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." [*Optional*: or as

16   "HIGHLY CONFIDENTIAL – SOURCE CODE."]

17       2.17    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing

18   Party.

19   3.    SCOPE

20       The protections conferred by this Stipulation and Order cover not only Protected Material (as

21   defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies,

22   excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or

23   presentations by Parties or their Counsel that might reveal Protected Material. However, the protections

24   conferred by this Stipulation and Order do not cover the following information: (a) any information that is

25   in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain

26   after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order,

27   including becoming part of the public record through trial or otherwise; and (b) any information known to

28   the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a

United States District Court
Northern District of California

3

source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4. DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2 Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the

4

material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional:* or "HIGHLY CONFIDENTIAL – SOURCE CODE]) to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being

United States District Court
Northern District of California

asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Parties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"]. If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this

1    Order.

2    6.       CHALLENGING CONFIDENTIALITY DESIGNATIONS

3           6.1       Timing of Challenges. Any Party or Non-Party may challenge a designation of

4    confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation

5    is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant

6    disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality

7    designation by electing not to mount a challenge promptly after the original designation is disclosed.

8           6.2       Meet and Confer. The Challenging Party shall initiate the dispute resolution process by

9    providing written notice of each designation it is challenging and describing the basis for each challenge.

10   To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the

11   challenge to confidentiality is being made in accordance with this specific paragraph of the Protective

12   Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by

13   conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14

14   days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its

15   belief that the confidentiality designation was not proper and must give the Designating Party an

16   opportunity to review the designated material, to reconsider the circumstances, and, if no change in

17   designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to

18   the next stage of the challenge process only if it has engaged in this meet and confer process first or

19   establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely

20   manner.

21          6.3       Judicial Intervention. If the Parties cannot resolve a challenge without court intervention,

22   the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in

23   compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or

24   within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute,

25   whichever is earlier.[1] Each such motion must be accompanied by a competent declaration affirming that the

26

27   ─────────────────────

28   [1] Alternative: It may be appropriate in certain circumstances for the parties to agree to shift the burden to move on the
     Challenging Party after a certain number of challenges are made to avoid an abuse of the process. The burden of
     persuasion would remain on the Designating Party.

United States District Court
Northern District of California

7

movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner[2] that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or

---

[2] It may be appropriate under certain circumstances to require the Receiving Party to store any electronic Protected Material in password-protected form.

United States District Court
Northern District of California

item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), **unless otherwise agreed by the Designating Party or ordered by the court**. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: and "HIGHLY CONFIDENTIAL – SOURCE CODE"] Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said

United States District Court
Northern District of California

1   Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation

2   and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit

3   A;

4        [(b) *Optional as deemed appropriate in case-specific circumstances:* Designated House Counsel of

5   the Receiving Party[3] (1) who has no involvement in competitive decision-making, (2) to whom disclosure

6   is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be

7   Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been

8   followed];[4]

9        (c) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this

10  litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as

11  to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed];

12       (d) the court and its personnel;

13       (e) court reporters and their staff, professional jury or trial consultants,[5] and Professional Vendors

14  to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment

15  and Agreement to Be Bound" (Exhibit A); and

16       (f) the author or recipient of a document containing the information or a custodian or other person

17  who otherwise possessed or knew the information.

---

[3] It may be appropriate under certain circumstances to limit the number of Designated House Counsel who may access "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information under this provision.

[4] This Order contemplates that Designated House Counsel shall not have access to any information or items designated "HIGHLY CONFIDENTIAL – SOURCE CODE." It may also be appropriate under certain circumstances to limit how Designated House Counsel may access "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information. For example, Designated House Counsel may be limited to viewing "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information only if it is filed with the court under seal, or in the presence of Outside Counsel of Record at their offices.

[5] *Alternative:* The parties may wish to allow disclosure of information not only to professional jury or trial consultants, but also to mock jurors, to further trial preparation. In that situation, the parties may wish to draft a simplified, precisely tailored Undertaking for mock jurors to sign.

United States District Court
Northern District of California

1       7.4 <u>Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL –</u>

2   <u>ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"]</u>

3   <u>Information or Items to Designated House Counsel[6] or Experts.[7]</u>

4       (a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a

5   Party that seeks to disclose to Designated House Counsel any information or item that has been designated

6   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must

7   make a written request to the Designating Party that (1) sets forth the full name of the Designated House

8   Counsel and the city and state of his or her residence, and (2) describes the Designated House Counsel's

9   current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to

10  determine if House Counsel is involved, or may become involved, in any competitive decision-making.[8]

11      (a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a

12  Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been

13  designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY

14  CONFIDENTIAL – SOURCE CODE"] pursuant to paragraph 7.3(c) first must make a written request to

15  the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL –

16  ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"]

17  information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name

18  of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's

19  current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from

20  whom the Expert has received compensation or funding for work in his or her areas of expertise or to

21  whom the expert has provided professional services, including in connection with a litigation, at any time

22

23  _____

24  [6] *Alternative*: The parties may exchange names of a certain number of Designated House Counsel instead of following this procedure.

25  [7] *Alternative:* "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information or
26  items may be disclosed to an Expert without disclosure of the identity of the Expert as long as the Expert is not a current officer, director, or employee of a competitor of a Party or anticipated to become one.

27  [8] It may be appropriate in certain circumstances to require any Designated House Counsel who receives "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information pursuant to this Order to disclose any relevant
28  changes in job duties or responsibilities prior to final disposition of the litigation to allow the Designating Party to evaluate any later-arising competitive decision-making responsibilities.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  during the preceding five years,[9] and (6) identifies (by name and number of the case, filing date, and

2  location of court) any litigation in connection with which the Expert has offered expert testimony,

3  including through a declaration, report, or testimony at a deposition or trial, during the preceding five

4  years.[10]

5      (b) A Party that makes a request and provides the information specified in the preceding respective

6  paragraphs may disclose the subject Protected Material to the identified Designated House Counsel or

7  Expert unless, within 14 days of delivering the request, the Party receives a written objection from the

8  Designating Party. Any such objection must set forth in detail the grounds on which it is based.

9      (c) A Party that receives a timely written objection must meet and confer with the Designating

10  Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days

11  of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated

12  House Counsel or the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with

13  Civil Local Rule 79-5, if applicable) seeking permission from the court to do so. Any such motion must

14  describe the circumstances with specificity, set forth in detail the reasons why the disclosure to Designated

15  House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would

16  entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion

17  must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by

18  agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons

19  advanced by the Designating Party for its refusal to approve the disclosure.

20      In any such proceeding, the Party opposing disclosure to Designated House Counsel or the Expert

21  shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards

22  proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House

23  Counsel or Expert.

24  _____

25  [9] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the

26  Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

27  [10] It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to

28  the termination of the litigation that could foreseeably result in an improper use of the Designating Party's "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information.

12

8.   <u>PROSECUTION BAR [*OPTIONAL*]</u>

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] information shall not be involved in the prosecution of patents or patent applications relating to [insert subject matter of the invention and of highly confidential technical information to be produced], including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").[11] For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.[12] To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination). This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] information is first received by the affected individual and shall end two (2) years after final termination of this action.[13]

9.   <u>SOURCE CODE [*OPTIONAL*]</u>

(a)   To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b)   Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be

---

[11] It may be appropriate under certain circumstances to require Outside and House Counsel who receive access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information to implement an "Ethical Wall."

[12] Prosecution includes, for example, original prosecution, reissue and reexamination proceedings.

[13] *Alternative:* It may be appropriate for the Prosecution Bar to apply only to individuals who receive access to another party's "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" technical or source code information pursuant to this Order, such as under circumstances where one or more parties is not expected to produce "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that is technical in nature or "HIGHLY CONFIDENTIAL – SOURCE CODE" information,

13

subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information [*Optional*: including the Prosecution Bar set forth in Paragraph 8], and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 7.3 and 7.4, with the exception of Designated House Counsel.[14]

(c)     Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location.[15] The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.[16]

(d)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. The Producing Party shall provide all such source code in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the

---

[14] It may be appropriate under certain circumstances to allow House Counsel access to derivative materials including "HIGHLY CONFIDENTIAL - SOURCE CODE" information, such as exhibits to motions or expert reports,

[15] *Alternative*: Any source code produced in discovery shall be made available for inspection in a format through which it could be reasonably reviewed and searched during normal business hours or other mutually agreeable times at a location that is reasonably convenient for the Receiving Party and any experts to whom the source code may be disclosed. This alternative may be appropriate if the Producing Party and/or its counsel are located in a different jurisdiction than counsel and/or experts for the Receiving Party.

[16] It may be appropriate under certain circumstances to require the Receiving Party to keep a paper log indicating the names of any individuals inspecting the source code and dates and times of inspection, and the names of any individuals to whom paper copies of portions of source code are provided.

United States District Court
Northern District of California

Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute resolution.

(e)      The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.[17]

10.      <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the

---

[17] The nature of the source code at issue in a particular case may warrant additional protections or restrictions, For example, it may be appropriate under certain circumstances to require the Receiving Party to provide notice to the Producing Party before including "HIGHLY CONFIDENTIAL – SOURCE CODE" information in a court filing, pleading, or expert report.

United States District Court
Northern District of California

1  Designating Party whose Protected Material may be affected.[18]

2  　　　If the Designating Party timely seeks a protective order, the Party served with the subpoena

3  or court order shall not produce any information designated in this action as "CONFIDENTIAL"

4  or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY

5  CONFIDENTIAL – SOURCE CODE"] before a determination by the court from which the

6  subpoena or order issued, unless the Party has obtained the Designating Party's permission. The

7  Designating Party shall bear the burden and expense of seeking protection in that court of its

8  confidential material – and nothing in these provisions should be construed as authorizing or

9  encouraging a Receiving Party in this action to disobey a lawful directive from another court.

10  11.　　A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS
　　　　LITIGATION

11

12  　　　(a)　　The terms of this Order are applicable to information produced by a Non-Party in

13  this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

14  ATTORNEYS' EYES ONLY" [*Optional:* or "HIGHLY CONFIDENTIAL – SOURCE CODE"].

15  Such information produced by Non-Parties in connection with this litigation is protected by the

16  remedies and relief provided by this Order. Nothing in these provisions should be construed as

17  prohibiting a Non-Party from seeking additional protections.

18  　　　(b)　　In the event that a Party is required, by a valid discovery request, to produce a Non-

19  Party's confidential information in its possession, and the Party is subject to an agreement with the

20  Non-Party not to produce the Non-Party's confidential information, then the Party shall:

21  　　　　　1.　　promptly notify in writing the Requesting Party and the Non-Party that some or all

22  of the information requested is subject to a confidentiality agreement with a Non-Party;

23  　　　　　2.　　promptly provide the Non-Party with a copy of the Stipulated Protective Order in

24  this litigation, the relevant discovery request(s), and a reasonably specific description of the information

25  requested; and

26

27  _____

28  [18] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

16

3.      make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[19] Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

12.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).[20] This

---

[19] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

[20] *Alternative*: The parties may agree that the recipient of an inadvertent production may not "sequester" or in any way use the document(s) pending resolution of a challenge to the claim of privilege or other protection to the extent it would be otherwise allowed by Federal Rule of Civil Procedure 26(b)(5)(B) as amended in 2006. This could include a restriction against "presenting" the document(s) to the court to challenge the privilege claim as may otherwise be allowed under Rule 26(b)(5)(B) subject to ethical obligations.

An alternate provision could state: "If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return or destroy the specified information and any copies it has and may not sequester, use or disclose the information until the claim is resolved. This includes a

17

provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

14.   MISCELLANEOUS

14.1   Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

14.2   Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

14.3   [Optional: Export Control. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.]

14.4   Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the

restriction against presenting the information to the court for a determination of the claim."

1    court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local

2    Rule 79-5 unless otherwise instructed by the court.

3    15.     FINAL DISPOSITION

4            Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving

5    Party must return all Protected Material to the Producing Party or destroy such material. As used in this

6    subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other

7    format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned

8    or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the

9    same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category,

10   where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the

11   Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format

12   reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are

13   entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

14   legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and

15   consultant and expert work product, even if such materials contain Protected Material. Any such archival

16   copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in

17   Section 4 (DURATION).

18           IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

19

20   DATED: _____ _____
                                                     Attorneys for Plaintiff

21   DATED: _____ _____
22                                                   Attorneys for Defendant

23   PURSUANT TO STIPULATION, IT IS SO ORDERED.

24

25   DATED: _____ _____
                                                     [Name of Judge]
26                                                   United States District/Magistrate Judge

27

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of _____

[print or type full address], declare under penalty of perjury that I have read in its entirety and understand

the Stipulated Protective Order that was issued by the United States District Court for the Northern District

of California on [date] in the case of _____ **[insert formal name of the case and the number and**

**initials assigned to it by the court]**. I agree to comply with and to be bound by all the terms of this

Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to

sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any

manner any information or item that is subject to this Stipulated Protective Order to any person or entity

except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and telephone number] as my

California agent for service of process in connection with this action or any proceedings related to

enforcement of this Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____

Printed name: _____
              [printed name]

Signature: _____
              [signature]

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

PARITY NETWORKS, LLC,

Plaintiff,

v.

NETGEAR, INC.,

Defendant.

C.A. No. 22-cv-1521-MN

## [PROPOSED] PROTECTIVE ORDER

WHEREAS, Plaintiff Parity Networks LLC ("Plaintiff" or "Parity Networks") and Defendant NETGEAR, Inc. ("Defendant" or "NETGEAR") in the above-captioned case, hereafter referred to as "the Parties," believe that disclosure and discovery activity in the above-captioned case may involve the production or disclosure of confidential, proprietary, or private information, including trade secrets and confidential business information, for which special protection from public disclosure and from use for any purpose other than litigating the above-captioned cases may be warranted;

WHEREAS, the Parties hereby stipulate to and petition the court to enter the following Protective Order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, pursuant to stipulation, it is so **ORDERED** that:

## <u>GENERAL</u>

1.    Subject to the provisions herein and unless otherwise stated, each Party may designate as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY", or

"HIGHLY CONFIDENTIAL – SOURCE CODE" ("Protected Material")[1] any items or information, regardless of the medium or manner in which it is generated, stored or maintained, that are produced, or generated in disclosures or responses to discovery requests for protection under this Order, in whole or in part, that constitutes or includes confidential, proprietary, or private information (including trade secrets) of the Party or a person who is not a party to this Action ("Third Party") to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such item or information, including without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.

2.   Any items or information disclosed or produced before issuance of this Order with the designation "CONFIDENTIAL," "CONFIDENTIAL—SUBJECT TO CONFIDENTIALITY UNDER D. DEL. L.R. 26.2," or "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" shall receive the same treatment as if designated "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

3.   The protections conferred by this Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, duplicates, abstracts, indexes, extracts, excerpts, descriptions, summaries, or

---

[1]   The term Protected Material is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE," both individually and collectively.

compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

4.  Within thirty (30) days of final termination of this Action, including any appeals, all Protected Material, including all copies, duplicates, abstracts, indexes, summaries, descriptions, compilations, and excerpts or extracts thereof, shall at the producing Party's election either be returned to the producing Party or be destroyed. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request. For purposes of this Order, final termination of this Action occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals. Notwithstanding this provision, counsel of the Parties are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.

## DESIGNATING PROTECTED MATERIAL

5.  Designation in conformity with this Order requires the following:

    a.  For information in documentary form, (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), the producing Party shall affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains protected material.

b.    For transcripts of testimony given in deposition or in pretrial or trial proceedings, Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.  Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL.  Each party receiving a copy of the transcript shall affix the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE."

c.    For information produced in some form other than documentary and for any other tangible items, the producing Party shall affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend.

6.    Parties may designate any items or information as Protected Material at any time. Inadvertent or unintentional failure to designate any items or information qualifying for protection under this Order (a) shall not waive a party's right to secure protection under this Order for such material, and (b) shall not preclude the filing of a motion at a later date

4

seeking to impose such designations. Any party that inadvertently or unintentionally produces Protected Material without designating it as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Material and any documents, information or material derived from or based thereon.

7.     A Party may designate any items or information as "CONFIDENTIAL" upon a good faith belief that the documents, information or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

8.     To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is extremely sensitive, the disclosure of which to another Party or Third Party would create a substantial risk of harm to the disclosing Party or Third Party that could not be avoided by less restrictive means, the producing Party may designate such Protected Material "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY."

9.     To the extent such Protected Material includes CONFIDENTIAL non-public information representing computer code and/or associated comments, revision histories, formulas, schematics, specifications, or other documentations that define or otherwise describe in

detail the algorithms or structure of computer programs or software designs ("SOURCE CODE"), the producing Party may designate such Protected Material as "HIGHLY CONFIDENTIAL – SOURCE CODE." SOURCE CODE includes, without limitation: (a) human-readable programming language text that defines a computer program, software, algorithm, firmware, or electronic hardware; (b) internal specifications or documentations describing or explaining a computer program, software, algorithm, firmware, or electronic hardware; (c) text files containing computer code including but not limited to files containing code written in scripting languages, "C," "C++," C#, assembly language, hardware description language ("HDL"), VHDL, Verilog, and digital signal processor ("DSP") programming languages; and (d) ".include files," "make" files, link files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, micro-controller, or DSP. SOURCE CODE does not include binary executable files and object code files, nor does it include tools such as compilers or linkers. Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" information.

## CHALLENGING DESIGNATIONS

10. A Party may request in writing to the other Party that the designation given to any Protected Material be modified or withdrawn. If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may seek relief from the Court under the Court's procedures for resolving discovery disputes. Upon any such application to the Court, the burden shall be on the designating Party to show why the designating Party's classification is proper. Such application shall be treated procedurally

as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

11. The failure to object to a designation at a given time shall not preclude the filing of a motion at a later date challenging the propriety of such designations. The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

## ACCESS TO AND USE OF PROTECTED MATERIAL

12. Protected Material or the contents thereof may be used by the receiving Party solely for purposes of the prosecution or defense of this litigation, including all appeals, and shall not be used by the receiving Party for any other business, commercial, competitive, personal, regulatory, patent prosecution, or any other proceeding (e.g., *inter partes* review), or other purpose, whether domestic or foreign. Nothing in this Protective Order precludes a producing Party from using or disseminating its own discovery material.

13. Any person or entity who obtains access to Protected Material or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, reproductions, digests, compilations, summaries or descriptions of such Protected Material or any portion thereof except as may be reasonably necessary in the litigation of this Action.

14. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving Party may only disclose any items or information designated

"CONFIDENTIAL" to:

a.   a receiving Party's outside counsel of record in this Action;

b.   employees and staff of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

c.   up to and including two (2) in-house counsel and/or designated representatives for each Party who either have responsibility for making decisions dealing directly with the litigation of these actions, or who are assisting outside counsel in the litigation of this Action, as well as their immediate paralegals and staff to whom disclosure is reasonably necessary for purposes of this litigation provided that each such person has completed and signed the "Undertaking of Experts or Consultants Regarding Protective Order" that is attached as Exhibit A hereto. In the event any party in good faith request the opposing party's consent to designate one or more additional representatives, the opposing party shall not unreasonably withhold such consent, and the requesting party may seek leave of Court to designate such additional representative(s) if the requesting party believes the opposing party has unreasonably withheld such consent;

d.   outside consultants or experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and staff of such consultant or expert assigned to and reasonably necessary to assist such consultant or expert in the litigation of this Action, provided that: (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) the consultant or expert has completed and signed the "Undertaking of Experts or Consultants Regarding Protective Order" that is attached as Exhibit

A hereto; and (3) the receiving party has served upon the producing Party a Notice of Disclosure at least five (5) business days before access to the Protected Material is to be given to that consultant or expert. The Notice of Disclosure shall include (1) a copy of the completed and signed Undertaking by the consultant or expert, (2) the consultant's or expert's current curriculum vitae, and (3) a list of the consultant's or expert's testifying experience within the last four (4) years. The producing Party may object to disclosure of Protected Material to the consultant or expert by serving an objection and a detailed statement of the basis for the objection in writing on the receiving Party within five (5) business days of receiving the Notice of Disclosure ("Objection"). Any failure to object within the seven-(7)-calendar-day period by the producing Party waives the objection to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any Objection within three (3) business days of service of the Objection. If the Parties are unable to resolve the Objection, the objecting Party may seek the Court's assistance under the Court's procedures for resolving discovery disputes within five (5) business days of service of the Objection, seeking a protective order with respect to the proposed disclosure. If relief from the Court is not sought under the Court's procedures for resolving discovery disputes during that time, the Objection shall be deemed withdrawn. The objecting Party shall have the burden of proving the need for a protective order. If relief is timely sought, no disclosure shall occur until the Objection is resolved by agreement or Court order;

e.  independent litigation support services (including persons working for or as court reporters, graphics or design services, jury or trial consulting services) and

photocopy, document imaging, and database services retained by counsel and

reasonably necessary to assist counsel with the litigation of this Action; and

f.      the Court and its personnel.

15.     Each outside consultant or expert to whom Protected Material is disclosed in accordance

with the terms of this Order shall be advised by counsel of the terms of this Order, shall be

informed that he or she is subject to the terms and conditions of this Order, shall sign an

the "Undertaking of Experts or Consultants Regarding Protective Order" that is attached

as Exhibit A hereto acknowledging that he or she has received a copy of, has read, has

agreed to be bound by this Order, is obligated on behalf of his or her staff to abide by the

terms and conditions of the Order, and will appropriately disclose the terms and conditions

of this Order to all staff who will have access to information pursuant to the Order.

16.     For Protected Material designated HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL

ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals

listed in paragraphs 14(a-b) and (e-f) subject to the Prosecution Bar as defined in paragraph

20.

17.     Protected Material designated HIGHLY CONFIDENTIAL – SOURCE CODE shall be

subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – OUTSIDE

COUNSEL ONLY" information, including the Prosecution Bar set forth in Paragraph 19,

and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL –

OUTSIDE COUNSEL ONLY" information may be disclosed, as set forth in paragraph 15.

For Protected Material designated HIGHLY CONFIDENTIAL – SOURCE CODE, the

following additional restrictions apply:

a.      Any SOURCE CODE produced in discovery shall be made available for inspection,

in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the producing Party's counsel or another mutually agreed upon location. "Normal business hours" for purposes of this paragraph shall be 9:00 a.m. through 5:00 p.m. in the time zone where the access is to occur, or at other mutually agreeable times. SOURCE CODE shall be made available for inspection on a secured stand-alone computer in a secured room without Internet access or network access to other computers, and the receiving Party shall not copy, remove, or otherwise transfer any portion of the SOURCE CODE onto any recordable media or recordable device. During SOURCE CODE review, the receiving Party may only bring non-electronic writing utensils (i.e., pen or pencil only) and paper to the secured room. The producing Party may visually monitor the activities of the receiving Party's representatives during any SOURCE CODE review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

b.    The receiving Party may request paper copies of limited portions of SOURCE CODE that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, up to a total amount of five hundred (500) pages.  The receiving Party shall not request paper copies for the purposes of reviewing SOURCE CODE other than electronically as set forth in paragraph (a) in the first instance. The producing Party shall provide all such SOURCE CODE in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE."

c.    The receiving Party shall maintain a record ("Source Code Inspection Record") of

any individual who has inspected any portion of the SOURCE CODE in electronic or paper form. The receiving Party shall maintain all paper copies of any printed portions of the SOURCE CODE in a secured, locked area. The receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The receiving Party shall make additional paper copies only if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. All additional copies must be logged by the receiving Party in the Source Code Inspection Record, as well as individuals who have inspected those additional copies. Each additional copy must be uniquely identified with the following label: "Copy #___." Any paper copies used during a deposition shall be retrieved by the producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual. The requesting Party shall provide a copy of the Source Code Inspection Record to the producing Party within one calendar day of the producing Party's written request.

d.   The producing Party or Non-Party, at its sole discretion, may choose to waive any or all of the default requirements in paragraph 17 for its own convenience.

e.   To the extent a Party makes Source Code Material available for inspection, at least fourteen (14) calendar days before the producing Party makes said Source Code Material available for inspection, the producing Party shall provide the receiving Party in writing, an identification of the Product(s) from which the Source Code

Material originated and the Source Code Material languages present in the production (e.g., Java, Python, etc.). The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s). The producing Party will produce Source Code Material in computer searchable format on the secure computer(s) as described above. The secure computer shall include software utilities which will allow counsel and experts to view, search, and analyze the source code. At a minimum, these utilities must provide the ability to (a) view, search, and line-number any source file, (b) search for a given pattern of text through a number of files, (c) compare two files and display their differences, and (d) compute the MD5 checksum of a file.

f.   This provision shall not obligate any Party to produce Source Code Material and does not constitute a waiver of a Party's right to object to the production or inspection of Source Code Material.

18.   There shall be no disclosure of any Protected Material by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities.

19.   Nothing contained herein shall be construed to prejudice any Party's right to use any Protected Material in taking testimony at any deposition or hearing provided that the Protected Material is only disclosed to a person(s) who is: (i) eligible to have access to the Protected Material by virtue of his or her employment with the producing Party, (ii)

identified in the Protected Material as an author, addressee, or copy recipient of such information, (iii) although not identified as an author, addressee, or copy recipient of such Protected Material, has, in the ordinary course of business, seen such Protected Material, (iv) a current or former officer, director or employee of the producing Party or a current or former officer, director or employee of a company affiliated with the producing Party; (v) counsel for a Party, including outside counsel and in-house counsel (subject to paragraphs 14, 16 and 17 of this Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to Protected Material. Protected Material shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

## **PATENT PROSECUTION BAR**

20. Absent the written consent of the producing Party, any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and who receives one or more items designated "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" ("HIGHLY SENSITIVE MATERIAL") by a Party shall not be involved, directly or indirectly, in advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications relating to the routing or scheduling of data packets in a network router on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action, including any appeals, before any foreign or domestic agency, including the United States Patent and Trademark Office. For sake of clarity, any attorney representing a Party, whether in-house or outside counsel, and any person

associated with a Party and permitted to receive another Party's HIGHLY SENSITIVE
MATERIAL, may participate, supervise and assist in any and all proceedings before the
U.S. Patent and Trademark Office related to the patents-in-suit, including without
limitation reexamination, *Inter Partes* Review (IPR), covered business method review
proceedings, even if they have received the other Party's HIGHLY SENSITIVE
MATERIAL, provided that they do not participate or assist in any claim preparation,
drafting, editing, or amendment of claims in such proceedings.

## FILING PROTECTED MATERIAL WITH THE COURT

21.    Any Protected Material that is filed with the Court shall be filed under seal and in
accordance with the Court's policies and procedures regarding filing documents under seal.

## THIRD PARTIES

22.    To the extent that any discovery is taken of Third Parties and in the event that such Third
Parties contend the discovery sought involves trade secrets, confidential business
information, or other proprietary information, then such Third Parties may agree to be
bound by this Order.

23.    To the extent that discovery or testimony is taken of Third Parties, the Third Parties may
designate as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL
ONLY" any documents, information or other material, in whole or in part, produced or
give by such Third Parties. The Third Parties shall have ten (10) days after production of
such documents, information or other materials to make such a designation. Until that time
period lapses or until such a designation has been made, whichever occurs sooner, all
documents, information or other material so produced or given shall be treated as
"HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY" in accordance with this

Order.

## **MISCELLANEOUS**

24.    Any Party knowing or believing that any other party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may seek relief from the Court under the Court's procedures for resolving discovery disputes as may be appropriate in the circumstances.

25.    Production of Protected Material by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

26.    Items or information, regardless of the medium or manner in which it is generated, stored or maintained, produced, or generated in disclosures or responses to discovery in this matter, including but not limited to Protected Material, shall be used by the Parties only in the litigation of this Action, including all appeals, and shall not be used for any other purpose.

27.    Nothing in this Order shall require production of documents, information or other material that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any Party that inadvertently or unintentionally

produces documents, information or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return of such documents, information or other material by promptly notifying the receiving Party in writing of the inadvertent or unintentional production and the basis for the claimed protection. Within ten (10) days upon receiving such notice, the receiving Party shall return to the producing Party or destroy all copies of such documents, information or other material, including any copies possessed by any person to whom the receiving Parity has provided such documents, information or other material, and certified as such to the producing Party. No reference to the privileged document shall be made in discovery, at trial, or any other manner. The Party returning such material may then move the Court for an order compelling production of the material, but that party shall not assert as a ground for entering such an order the fact or circumstances of the inadvertent or unintentional production. The Party returning the material may not further use or disclose the information until the claim of privilege is resolved and must take reasonable steps to: (a) notify any person to whom the returning party has provided the information of the claim of privilege, and (b) request that such person destroy all paper and electronic copies of such documents, information or material and not further use or disclose the information until the claim of privilege is resolved.

28. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any Protected Material into evidence at the trial of this Action, or from using any information contained in Protected Material at the trial of this Action, subject to any pretrial order issued by this Court.

29. Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any

kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

30. Other Proceedings. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE" pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed. If any documents, tangible things, or information received under this Protective Order and in the possession, custody, or control of any receiving Party is sought by subpoena, request for production of documents, interrogatories, or any other form of discovery request or compulsory process, including any form of discovery request, the receiving Party to whom the process or discovery request is directed shall, unless otherwise precluded from doing so by law or court order, (i) within ten (10) business days after receipt thereof, give written notice by hand, e-mail, or facsimile of such process or discovery request together with a copy thereof, to counsel for the producing Party; (ii) cooperate to the extent necessary to permit the producing Party to seek to quash such process or discovery request; and (iii) not produce or disclose the documents, things, or information until the producing Party consents in writing to production or the receiving Party is ordered by a court of competent jurisdiction to produce or disclose the documents, things, or information, so long as the order is not stayed prior to the date set for production or disclosure.

31. Each of the Parties shall also retain the right to file a motion with the Court (a) to modify

this Order to allow disclosure of Protected Material to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of Protected Material.

Dated:   April 3, 2023

Respectfully submitted,

FARNAN LLP

ASHBY & GEDDES

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, Delaware 19801
Telephone: (302) 777-0300
Facsimile:  (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

/s/ Steven J. Balick
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Andrew G. DiNovo (admitted *Pro Hac Vice*)
Texas State Bar No. 00790594
Adam G. Price (admitted *Pro Hac Vice*)
Texas State Bar No. 24027750
Michael D. French (admitted *Pro Hac Vice*)
Texas State Bar No. 24116392
DINOVO PRICE LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas  78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627
adinovo@dinovoprice.com
aprice@dinovoprice.com
mfrench@dinovoprice.com

Victoria Q. Smith
SQUIRE PATTON BOGGS (US) LLP
1801 Page Mill Road, Suite 110
Palo Alto, CA 94304
(650) 856-6500

Xiaomei Cai
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000

Alex E. Wolcott
Matthew A. Stanford
SQUIRE PATTON BOGGS (US) LLP
2550 M Street NW
Washington, D.C. 20037
(202) 457-6000

*Attorneys for Plaintiff*

*Attorneys for Defendant*

SO ORDERED this _____ day of April, 2023.

_____
The Honorable Maryellen Noreika

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PARITY NETWORKS, LLC, | |
| Plaintiff, | |
| v. | C.A. No. 22-cv-1521-MN |
| NETGEAR, INC., | |
| Defendant. | |

**APPENDIX A**
**UNDERTAKING OF EXPERTS OR CONSULTANTS REGARDING**
**PROTECTIVE ORDER**

I, _____, declare that:

1.  My address is _____.

My current employer is _____.

My current occupation is _____.

2.  I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.  I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY," "HIGHLY CONFIDENTIAL – SOURCE CODE," that is disclosed to me.

4.  Promptly upon termination of this Action, I will return all documents and things designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for

1

the party by whom I am employed.

5.      I acknowledge the obligation on behalf of all my staff to abide by the terms and conditions of the Order and will appropriately disclose the terms and conditions of the Protective Order to all staff who will have access to information pursuant to the Protective Order.

6.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

        I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ALMONDNET, INC., | CASE NO. 6:21-CV-00876-ADA |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| ROKU, INC., | |
| Defendant. | |

## PROTECTIVE ORDER

WHEREAS, Plaintiff AlmondNet, Inc. ("Plaintiff" or "AlmondNet") and Defendant Roku, Inc. ("Defendant" or "Roku"), hereafter referred to as the "Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.    Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information, or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information, or material ("Protected Material").   Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information, or material as follows: "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE

ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE." The label "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts, natively produced documents, and tangible things other than documents) for which such protection is sought. For deposition and hearing transcripts, the word(s) "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE." For natively produced Protected Material, the word(s) "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" shall be placed in the filename of each such natively produced document. For tangible things other than documents, the "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" nature of the item shall be prominently identified in a cover letter, a photograph of the object, or a label attached to the document. If two or more copies of the same document or thing are produced with or given inconsistent confidentiality designations, then the most restrictive designation shall apply to all such copies.

2.      Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like

shall receive the same treatment as if designated "CONFIDENTIAL" under this order; any such documents produced with the designation "Confidential - Outside Attorneys' Eyes Only" or the like shall receive the same treatment as if designated "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY" under this Order; and any such documents produced with the designation "Confidential – Source Code" or the like shall receive the same treatment as if designated "CONFIDENTIAL – SOURCE CODE" under this order; unless and until such document is re-designated to have a different classification under this Order.

3.     With respect to documents, information, or material designated "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing, and deposition testimony, or documents marked as exhibits or for identification in depositions or hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.[2]    All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to documents, information, or material designated as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE," individually and collectively.

[2] For the avoidance of doubt, where the accuracy of information is confirmed only through the review of DESIGNATED MATERIAL, the fact that such information is accurate is DESIGNATED MATERIAL.  For example, the accuracy of unsubstantiated media speculations or rumors that are later confirmed to be accurate through access to DESIGNATED MATERIAL is not public information.

treated as such under this Order.

4.  A designation of Protected Material (*i.e.*, "CONFIDENTIAL," "CONFIDENTIAL -
    OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") may
    be made at any time. Inadvertent or unintentional production of documents, information,
    or material that has not been designated as DESIGNATED MATERIAL shall not be
    deemed a waiver in whole or in part of a claim for confidential treatment. Any Party that
    inadvertently or unintentionally produces Protected Material without designating it as
    DESIGNATED MATERIAL may request destruction of that Protected Material by notifying
    the recipient(s) as soon as reasonably possible after the producing Party becomes aware of
    the inadvertent or unintentional disclosure, and providing replacement Protected Material
    that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently
    or unintentionally produced Protected Materials and any documents, information, or material
    derived from or based thereon.

5.  "CONFIDENTIAL" documents, information, and material may be disclosed only to the
    following persons, except upon receipt of the prior written consent of the designating Party,
    upon order of the Court, or as set forth in paragraph 15 herein:

    (a)  Outside counsel of record in this Action for the Parties.

    (b)  Employees of such counsel assigned to and reasonably necessary to assist such
         counsel in the litigation of this Action.

    (c)  Up to two (2) in-house counsel for the Parties who either have responsibility for
         making decisions dealing directly with the litigation of this Action, or who are
         assisting outside counsel in the litigation of this Action.

    (d)  Up to one (1) designated representative of each of the Parties, who either has
         responsibility for making decisions dealing directly with the litigation of this
         Action, or who is assisting outside counsel in the litigation of this Action, and who
         has completed the Undertaking attached as Exhibit A hereto, except that any Party
         may in good faith request the other Party's consent to designate one or more

4

additional representatives, the other Party shall not unreasonably withhold such consent, and the requesting Party may seek leave of Court to designate such additional representative(s) if the requesting Party believes the other Party has unreasonably withheld such consent.

(e)    Outside consultants or experts retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties or of an affiliate of a Party hereto for purposes other than this Action,[3] (2) is not a current employee or contractor of a Party's competitor; (3) at the time of retention, is not anticipated to become an employee or contractor of a Party, of an affiliate of a Party, or of a Party's competitor; and (4) at least ten (10) days before access to the Protected Material is to be given to that consultant or expert, the consultant or expert has completed the Undertaking attached as Appendix A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert, including (a) a list of other cases in which the individual has provided a report or testified (at trial or deposition) (identified by name and number of the case, filing date, and location of court) during the preceding four years, (b) a list of companies and/or persons that the individual has been employed by or from whom the consultant or expert has received compensation or funding for work in their area(s) of expertise or to whom the Expert has provided professional services, including in connection with a litigation, within the last four years and a brief description of the subject matter of the consultancy or employment, including the Party to the litigation for whom such work was done.[4] The producing Party may object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert within ten (10) days of receipt of the materials listed in 5(e)(4). The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

(f)    Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services (including mock jurors), and photocopy, document imaging, and database services retained

---

[3] For avoidance of doubt, an independent expert or consultant retained (as opposed to employed) by a Party would not be precluded based solely on Sections 5(e)(1), (2), or (3), but would remain subject to all remaining limitations and applicable objections set forth in this Protective Order.

[4] With regard to the information sought through part (b) of such a disclosure, if the expert or consultant believes any of this information is subject to a confidentiality obligation to a Third Party, then the expert or consultant should provide whatever information they believe can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the consultant or expert must be available to meet and confer with the designating Party regarding any such engagement.

by counsel and reasonably necessary to assist counsel with the litigation of this Action to whom disclosure is reasonably necessary for this litigation and who have signed a confidentiality agreement.

(g)     The Court and its personnel.

(h)     Any mediator who is assigned to this matter, and their staff, who have signed Appendix A.

6.      A Party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material, including material that qualifies for protection under Federal Rule of Civil Procedure 26(c) and material for which the disclosure may cause harm to a Party or a Third Party.

7.      Documents, information, or material produced in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose. However, to be clear, a party may use its own DESIGNATED MATERIAL (confidential material of that party) for any purpose.  Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries, or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action.   Any such copies, duplicates, extracts, summaries, or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.  The Parties shall use reasonable means to protect DESIGNATED MATERIAL, including by taking reasonable precautions to protect the information or materials from

unauthorized physical or electronic access or dissemination.

8.    To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, including confidential or proprietary information and technical information related to research for, the design and development of, and production of past and current products and related to technical, business, and research information regarding future products, highly sensitive investor information, competitively sensitive financial information, customer names and lists, sensitive personal information that would not normally be shared outside the company, and any other information the Designating Party in good faith believes falls within the scope of this provision, the producing Party may designate such Protected Material "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY." Additionally, and to the extent such Protected Material includes or substantially relates to computer Source Code[5] or live data (that is, data as it exists residing in a database or databases) ("Source Code Material"), the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE."

9.    For Protected Material designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a–b) and (e–h).

10.   For Protected Material designated CONFIDENTIAL - SOURCE CODE, the following additional restrictions apply:

(a)    Access to a Party's Source Code Material shall be provided only on a "stand-alone" computer (that is, the computer may not be linked to any network, including a local

---

[5] "Source Code" means computer code, associated comments, and/or revision histories for computer code, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs.

area network ("LAN"), an intranet or the Internet). The stand-alone computer may only be located within the continental United States of America, in a locked room, at the offices of the producing Party's outside counsel selected by the producing Party or another mutually agreed upon location. The stand-alone computer(s) shall have disk encryption and be password protected. Use or possession of any input/output device (e.g., USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing the stand-alone computer(s). All persons entering the locked room containing the stand-alone computer(s) must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the stand-alone computer(s), and shall sign a log that includes the names of persons who enter the room and the dates and times when they enter and depart. The producing Party may visually monitor, in a non-intrusive fashion and at reasonable intervals, through a glass wall or window, the activities of the receiving Party's representatives, but only to ensure that no unauthorized electronic records of the Source Code Material and no information concerning the Source Code Material are being created or transmitted in any way. The producing Party shall not monitor the review conducted by the receiving Party through analyzing the electronic access record on the stand-alone computer (e.g., command histories, recent file lists, file access dates, undo histories), except as required to address technical issues or security concerns, as agreed to by the receiving Party, or as ordered by the Court.

      (i)      To enable electronic note taking during Source Code reviews, the Producing Party of Source Code shall also provide an additional "note-taking" computer loaded with at least Microsoft One Note, Notepad++, and Microsoft Word software, unless otherwise agreed by the Producing Party and the Receiving Party. The note-taking computer shall either be a portable laptop or be located in close proximity to the Source Code Computer to facilitate electronic note taking, and shall not be linked to any network, including a local area network ("LAN"), an intranet or the Internet.

      (ii)      At the beginning of a Source Code review session, the Producing Party shall, when requested by the reviewer, upload to the note-taking computer an encrypted notes file (e.g., uploading an encrypted notes file from a USB memory stick provided by the reviewer to the note-taking computer).

      (iii)      The reviewer may then decrypt and open the notes file using the note-taking computer for the purpose of taking notes during the Source Code review session. During the source Code review session, the Producing Party may disable any input and/or output devices on the note-taking computer (e.g., disable any USB ports, Wi-Fi or Ethernet connectivity, and/or optical disc drives) except as necessary to enable the reviewer to take notes (e.g., enable mouse and keyboard). Use or possession of any input/output device (e.g., USB memory stick, mobile phone or tablet,

camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop/computer, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing the note-taking computer.

(iv)     At the end of a Source Code review session, the reviewer may save any notes in the same encrypted notes file. The Producing Party shall, when requested by the reviewer, download from the note-taking computer the encrypted notes file and provide an electronic copy to the reviewer (e.g., downloading the encrypted notes file from the note-taking computer to a USB memory stick provided by the reviewer).

(v)     Notwithstanding this stipulation, no reviewer may at any time copy or include in electronic notes any portions or sections of the Source Code. Reviewers using electronic note-taking will be directed by undersigned counsel not to copy or include in electronic notes any portions or sections of the Source Code.

(vi)     If requested by the Producing Party, a copy of the encrypted notes file shall remain on the note-taking computer, so long as it remains encrypted.

(vii)     If requested by the Producing Party, a representative for the Producing Party may oversee the transfer of the encrypted notes file from the secure data storage device to the notetaking computer, and vice-versa, without reviewing the substance of the electronic notes.

(viii)     The reviewer shall not take notes electronically on the "stand-alone" computer containing Source Code Material or any other computer or electronic device (besides the note-taking computer) while conducting a review.

(b)     The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer to normal business hours, which for purposes of this paragraph shall be 9:00 a.m. through 6:00 p.m.  However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer outside of normal business hours.   The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel or its vendors shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(c)     The producing Party shall provide basic instructions to the receiving Party regarding how to operate the stand-alone computer for purposes of accessing the produced Source Code Material as permitted in this Protective Order.

(d)     The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer as described above.  The producing Party shall install tools that are sufficient for viewing the Source Code Material produced for inspection on the stand-alone computer. The receiving Party's outside counsel and/or experts/consultants may request that commercially available software tools for viewing and searching Source Code Material be installed on the stand-alone computer, provided, however, that (a) the receiving Party possesses an appropriate license to such software tools; (b) the producing Party approves such software tools; (c) such software tools will not be capable of compiling or executing the code; and (d) such other software tools are reasonably necessary for the receiving Party to perform its review of the Source Code Material consistent with all of the protections herein. The producing Party shall approve reasonable requests for additional commercially available software tools. The receiving Party must provide the producing Party with the CD, DVD, file path, or Advanced Package Tool package containing such licensed software tool(s) at least six (6) business days in advance of the date upon which the receiving Party wishes to have the additional software tools available for use on the stand-alone computer.  The producing Party shall make reasonable attempts to install the requested software but will not be held responsible for the proper setup, functioning, or support of any software requested by the receiving Party.  By way of example, the producing Party will not compile or debug software for installation.

(e)     Access to Source Code Material shall be limited to outside counsel and up to three (3) outside consultants or experts[6] (*i.e.*, not existing employees or affiliates of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above, as well as those individuals in paragraph 5(f), 5(g), and 5(h) above, except that mock jurors shall not have access to Protected Material designated CONFIDENTIAL - SOURCE CODE.

(f)     To the extent portions of Source Code Material are quoted in an electronic copy or image of a document which, pursuant to the Court's rules, procedures, or orders, must be filed or served electronically ("Source Code Exhibit"), either (1) the entire Source Code Exhibit will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as CONFIDENTIAL - SOURCE CODE.  The receiving Party may create an electronic copy or image of limited excerpts of Source Code Material (where each such excerpt contains no more than 75 consecutive lines of code) from Source Code Printouts as defined below in paragraph (i), only to the extent necessary to create Source Code Exhibits or any drafts of these documents.[7]  The receiving Party shall only include such excerpts as are reasonably necessary for inclusion in such documents for filing with the

---

[6] For the purposes of this paragraph, an outside consultant or expert does not include the outside consultant's or expert's direct reports and other support personnel.

[7] Drafts shall only include those excerpts the receiving Party reasonably believes will be included in the final version.

Court. Images or copies of Source Code Material shall not be included in correspondence between the parties (references to production numbers, file names, and/or line numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein. The receiving Party may create an electronic image of a selected portion of the Source Code Material only when the electronic file containing such image has been encrypted using commercially reasonable encryption software including password protection, and any documents or drafts thereof that contain such Source Code Material must remain encrypted except as may be required for filing with the Court. The communication and/or disclosure of electronic files containing any portion of Source Code Material shall at all times be limited to individuals who are authorized to see Source Code Material under the provisions of this Protective Order. Additionally, all electronic copies must be labeled "CONFIDENTIAL – SOURCE CODE" and must only be exchanged via secure, encrypted file transfer. If Source Code Exhibits are filed with the Court, they must be filed under seal in accordance with the Court's rules, procedures and orders. Electronic images should not be maintained separate and apart from the filing for which they were created for.

(g)     Except as set forth in paragraph 10(f), no electronic copies or images of Source Code Material shall be made without prior written consent of the producing Party.

(h)     Except as set forth in paragraph 10(f) above and in this paragraph, no person shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated "CONFIDENTIAL – SOURCE CODE" material. The receiving Party may request up to three paper copies ("Source Code Printouts") of limited portions of Source Code Material, but only if and to the extent reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial. In no event may the receiving Party request (in this specific case) printouts of more than 40 consecutive pages, or an aggregate total of more than 750 pages, of source code during the duration of the case without prior written approval by the producing Party. The receiving Party shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph 10(a) in the first instance. Using the software available on the source code computer, the receiving Party shall create PDFs of the printed copies the receiving Party is requesting and save them in a folder on the desktop named "Print Requests" with a subfolder identifying the date of the request. The PDF printouts must include identifying information including the full file path and file name, page number, line numbers, and date. The request for printed Source Code Material shall be served via email request identifying the subfolders of the "Print Requests" folder that the receiving Party is requesting. Within 5 business days or such additional time as necessary due to volume requested, the producing Party will provide the requested material on watermarked or colored paper bearing Bates numbers and the legend "CONFIDENTIAL – SOURCE CODE" unless objected to as discussed below. Even if within the limits described, the producing Party may challenge the amount of source code requested in hard copy form or whether the source code requested in hard copy form is

reasonably necessary to any case preparation activity pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 19 whereby the producing Party is the "requesting Party" and the receiving Party is the "designating Party" for purposes of dispute resolution. Contested Source Code Printouts do not need to be produced to the receiving Party until the matter is resolved by the Court.

(i)   If the receiving Party's outside counsel, consultants, or experts obtain Source Code Material Printouts, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the Source Code Printouts under their control in a secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the Source Code Printouts at: (i) the Court for any proceedings(s) relating to the Source Code , for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the Source Code Printouts to a Court proceeding or deposition (*e.g*., a hotel prior to a Court proceeding or deposition) provided that the Source Code Printouts are kept in a secure manner that ensures access is limited to the persons authorized under this Order.

(j)   A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 10(e) above to another person authorized under paragraph 10(e) above on paper via hand carry, Federal Express, or other similarly reliable courier.   Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet except as is reasonably necessary for filing any Source Code Material with the Court or serving such Source Code Material on another Party.

(k)   The receiving Party's outside counsel or expert, or both, shall be entitled to take notes relating to the source code, including as set forth above under paragraphs 10(a)(i)-(viii), but may not copy any portion of the source code into the notes.  No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein.  Further, no other written or electronic record of the source code is permitted except as otherwise provided herein.  No notes shall be made or stored on the inspection computer, or left behind at the site where the inspection computer is made available, and any such notes shall be deleted or destroyed by the producing Party, without reviewing the substance of the notes, upon discovery. Notwithstanding the foregoing, any such notes shall be stamped and treated as "CONFIDENTIAL – SOURCE CODE."

(l)   A list of names of persons who will review Source Code Material on the stand-alone computer(s) will be provided to the producing Party in conjunction with any written (including email) notice requesting inspection.  Prior to the first inspection

of any Source Code Material on the stand-alone computer(s), the receiving Party shall provide five (5) business days' notice to schedule the initial inspection with the producing Party. The receiving Party shall provide four (4) business days' notice in advance of scheduling any additional inspections. Such notice shall include the names and titles for every individual from the receiving Party who will attend the inspection.

(m)     The receiving Party's outside counsel shall maintain a log of all copies of the Source Code Printouts (received from a producing Party) that are delivered by the receiving Party to any person and a log of each excerpt of source code created pursuant to section 10(f). The log shall include the names of the recipients and reviewers of copies and locations where the copies are stored. Upon request by the producing Party, the receiving Party shall provide reasonable assurances and/or descriptions of the security measures employed by the receiving Party and/or person that receives a copy of any portion of the source code.

(n)     All copies of any portion of the Source Code Printouts in whatever form shall be securely destroyed if they are no longer in use. Copies of Source Code Printouts that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. Any paper copies used during a deposition will be retrieved by the producing Party at the end of each day.

11.     Absent written consent from the designating Party, any attorney representing a Party and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order ("Barred Persons") shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the subject matter of the patents-in-suit as well as the subject matter of the HIGHLY SENSITIVE MATERIAL to which access is received, including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the

Patent Office").  This bar shall be in effect upon first receipt of HIGHLY SENSITIVE MATERIAL and ends two (2) years after the conclusion of this action, including any appeals.  Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE MATERIAL from participating in post-grant PTO proceedings—*e.g.*, IPR, PGR, *ex parte* reexamination—except that person shall not participate—directly or indirectly—in the amendment of any claim(s).  For purposes of this paragraph, "prosecute" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.  Prosecution includes, for example, original prosecution, reissue, and reexamination and other post-grant proceedings.  To avoid any doubt, "prosecution" as used in this paragraph does not include representing a Party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination, post grant review, or *inter partes* review).

12. Absent agreement, a Party's Designated Material must be stored and maintained by a receiving Party at a location in the United States of America and in a secure manner that ensures that access is limited to persons authorized under this Order.  Absent agreement, Designated Material may not be exported outside the United States of America or released to any foreign national (even if within the United States of America), unless the foreign national (1) is a Green Card holder, (2) working in the United States of America pursuant to an H-1B visa sponsored by the receiving Party's law firm, or (3) directly employed by the receiving Party's law firm to provide support or legal representation to the firm's clients and who are otherwise unaffiliated with the receiving Party.  Without limitation, this prohibition extends to Designated Material (including copies) in physical and electronic form.  The viewing of Designated Material through electronic means outside

the territorial limits of the United States of America is similarly prohibited. The restrictions contained within this paragraph may be amended through the express written consent of the producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations. Nothing in this paragraph is intended to remove any obligation that may otherwise exist to produce documents currently located in a foreign country.

13.    The Protected Material disclosed by the producing Party may contain technical data subject to export control laws and therefore the release of such technical data to foreign persons or nationals in the United States or elsewhere may be restricted. The receiving Party shall take measures necessary to ensure compliance with applicable export control laws, including confirming that no unauthorized foreign person has access to such technical data.

14.    The Parties agree that Federal Rule of Evidence 502 applies to the conduct of discovery in this case. To that end, the Parties respectfully request that the Court enter an order stating that Rule 502 applies in this case and in all proceedings in any other federal or state court in line with Fed. R. Evid. 502(d). Entry of this Protective Order shall constitute such a Rule 502(d) order. Nothing herein prevents the Parties from agreeing to additional stipulations relating to Rule 502(d), and from requesting the Court to enter an order containing such additional terms.

15.    There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information, and material to protect against disclosure to any unauthorized persons or entities. If a receiving

Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the receiving Party must immediately (a) notify in writing the designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute Appendix A.

16.    Nothing contained herein shall be construed to prejudice any Party's right to use any DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to have access to the DESIGNATED MATERIAL by virtue of his or her employment with the designating Party; (ii) identified in the DESIGNATED MATERIAL as an author, addressee, or copy recipient of such information; (iii) although not identified as an author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv) court reporters and videographers; (v) the Court; or (vi) other persons entitled hereunder to access to DESIGNATED MATERIAL.    DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

17.    Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" pursuant to this Order.    Access to the

deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY.

18. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing Party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on DESIGNATED MATERIAL, such confidential portions shall be redacted to the extent necessary and the redacted pleading or exhibit filed publicly with the Court.

19. The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

20. A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to re-designation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule

of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

21. Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that they are subject to the terms and conditions of this Order, and shall sign an acknowledgment that they have received a copy of, have read, and have agreed to be bound by this Order. A copy of the acknowledgment form is attached as Appendix A.

22. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

23. To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," and/or "CONFIDENTIAL - SOURCE CODE" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties (as well as any Party whose Protected Material is contained or referenced in such Third Party production) shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as "CONFIDENTIAL - OUTSIDE

ATTORNEYS' EYES ONLY" in accordance with this Order.

24.     In the event that a Party is required in this case, by a valid discovery request, to produce a Third Party's confidential information in the Party's possession, and the Party is subject to an agreement with the Third Party not to disclose the Third Party's information, then the Party shall: (i) promptly notify in writing the receiving Party and the Third Party that some or all of the information requested is subject to a confidentiality agreement with a Third Party and (ii) promptly provide the Third Party with a copy of this Protective Order, the relevant discovery request(s), and a reasonably specific description of the information requested. If the Third Party fails to object or seek a protective order from this court within a reasonable period of time after receiving the notice and accompanying information, including but not limited to any contractual notice period in an agreement between the producing Party and the Third Party covering the confidentiality or disclosure of the information requested, the producing Party may produce the Third Party's confidential information responsive to the discovery request. If the Third Party timely seeks a protective order, the producing Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Third Party before a determination by the Court.

25.     If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any DESIGNATED MATERIALS that Party must:

    (a)     promptly notify in writing the designating Party. Such notification shall include a copy of the subpoena or court order, other than a criminal Grand Jury Subpoena;

      (b)      promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

      (c)      cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose DESIGNATED MATERIAL may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any DESIGNATED MATERIAL before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court.  Any agreement by a designating Party that DESIGNATED MATERIAL may be produced in response to a subpoena does not in any way waive the protections this Protected Order provides against disclosure in any other litigation.

26.    Within sixty (60) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the Parties), shall at the producing Party's election either be returned to the producing Party or be destroyed.    The receiving Party shall verify the return or destruction in writing to the producing Party, upon the producing Party's request.

Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and Expert work product, even if such materials contain Protected Material, with the exception of paper copies of Source Code. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.

27.    The failure (inadvertent or otherwise) to designate documents, information, or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order or the production of documents, information, or material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

28.    An inadvertent failure to designate Protected Material does not waive the designating Party's right to secure protection under this Protective Order for such material. Upon correction of a designation, the receiving Party must make all reasonable efforts to assure that the material is treated in accordance with the provisions of this Protective Order, which may require a Party withdraw access to Protected Material that was given to a person who is not authorized to have access under the new designation. Within a reasonable time after the correction of a designation, a receiving Party must provide notice to the designating Party of all persons who received access to the Protected Material who are no longer authorized to have access under the new designation. In the event that a producing Party inadvertently fails to designate Protected Material, the producing Party shall give written notice of such inadvertent production (the "Inadvertent Production Notice") and shall

reproduce copies of the Protected Material that are labeled with the appropriate confidentiality designation. Upon receipt of an Inadvertent Production Notice and properly labeled Protected Material, the receiving Party shall promptly destroy the inadvertently produced Protected Material and all copies thereof or return such together with all copies of such Protected Material to counsel for the producing Party. Should the receiving Party choose to destroy such inadvertently produced Protected Material, the receiving Party shall notify the producing Party in writing of such destruction within 14 calendar days of receipt of written notice of the Inadvertent Production Notice and properly labeled Protected Material. This provision is not intended to apply to any inadvertent production of any document, material, or testimony protected by attorney-client or work product privileges.

29. Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and shall not undertake the further performance of any action alleged to constitute a violation of this Order.

30. Production of DESIGNATED MATERIAL by any Party shall not be deemed a publication of the documents, information, or material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

31. A designation of Protected Material as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE"

alone shall not be a reason to limit the admissibility of such Protected Material to the jury at trial.

32.     Nothing in this Order shall be construed to effect an abrogation, waiver, or limitation of any kind on the rights of each of the Parties to assert any applicable privilege.

33.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action; and (b) to apply for additional protection of DESIGNATED MATERIAL.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| ALMONDNET, INC., | § | |
| | § | |
| v. | § | Case No. 6:21-CV-00876-ADA |
| | § | |
| ROKU, INC. | § | |

## APPENDIX A
## UNDERTAKING REGARDING
## PROTECTIVE ORDER

I, _____, declare that:

1.    My address is _____.

      My current employer is _____.

      My current occupation is _____.

2.    I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3.    I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that is disclosed to me.

4.    Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel

for the Party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the

Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____

# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TORCHLIGHT TECHNOLOGIES LLC,

           Plaintiff,

v.

DAIMLER AG, MERCEDES-BENZ USA,
LLC, VOLKSWAGEN AG,
AUDI AG, AUDI OF AMERICA,
LLC, PORSCHE AG, AND PORSCHE
CARS NORTH AMERICA, INC.,

           Defendants.

Civil Action. No. 22-751-GBW


## [PROPOSED] PROTECTIVE ORDER
## REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiff Torchlight Technologies LLC ("Plaintiff") and Defendants Mercedes-Benz USA,
LLC, Audi of America, LLC, and Porsche Cars North America, Inc., (collectively, "Defendants")
anticipate that documents, testimony, or information containing or reflecting confidential,
proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed
or produced during the course of initial disclosures, supplemental disclosures, and other
discovery in this case and request that the Court enter this Order setting forth the conditions
for treating, obtaining, and using such information.[1]

---

[1] Defendants note that Plaintiff has additionally named Daimler AG, Volkswagen AG, and Porsche
AG in this action but has still not served them. To the extent any of those parties are served and
brought into this action, they may negotiate amendments and supplements to any of this Order's
terms.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

1. **<u>PURPOSES AND LIMITATIONS</u>**

(a)     Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case and shall not be used directly or indirectly for any other purpose whatsoever.

(b)     The Parties acknowledge this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a).  Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below.  If it comes to a Producing Party's attention that designated material does not qualify for protection, or for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

2. **<u>DEFINITIONS</u>**

(a)     "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things), that are produced, disclosed, or generated in connection with Rule 26(a) disclosures or other discovery in this case.

(b)     "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party and (ii) partners, counsel, associates, and staff of such outside counsel to whom it is reasonably necessary to disclose the information for this litigation.

(c)     "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel and their support staffs.

(d)     "Producing Party" means any Party or non-party that discloses or produces any Discovery Material in this case.

(e)     "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(f)     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE," as provided for in this Order.

(g)     "Source Code" shall mean source code, object code (*i.e.*, computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator), microcode, register transfer language ("RTL"), firmware, hardware description language ("HDL"), and any other human-readable representations of actually completed, implemented, and/or realized software, firmware, and integrated circuits, as well as any and all programmer notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, and debug files.

3.     **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rule of Civil Procedure 6.

4.     **SCOPE**

(a)     The protections conferred by this Order cover not only Discovery Material (as defined above), but also, without limitation, (1) any information copied or extracted from

3

Discovery Material, (2) all copies, excerpts, summaries, or compilations of Discovery Material, and (3) any testimony, conversations, or presentations by Parties or their counsel in court or in other settings that reflect Protected Material.

(b)   Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose.

(c)   Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing, provided the Court's procedures and orders for sealing such Protected Material are followed. The use of Protected Material at trial, however, shall be governed by a separate agreement or order.

(d)   This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.   **DURATION**

(a)    Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until and so long as the Parties comply with ¶ 19 or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

6.   **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)    Basic Principles. All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose, including without limitation any other

litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function. Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(b)     Patent Prosecution Bar. Absent written consent from the Producing Party, any individual who accesses "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials reflecting technical information shall not be involved in the Prosecution of patents or patent applications (including, without limitation, patents, utility models, continuations, continuations-in-part, divisionals, reissues, and any other similar rights) before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office") relating to 1) the invention claimed in any patent asserted in this action, including without limitation any patent or patent application claiming priority to or from or otherwise related to any patent asserted in this action, or 2) the functionality, operation, and design of any multi-light headlight systems (generally or as described in the patents-in-suit). For purposes of this paragraph, "Prosecution" includes directly or indirectly drafting and amending patent claims or patent application claims before the Patent Office or any foreign agency, discussing whether or how to amend patent claims, or rendering any related legal advice or counsel, or supervising any of the above-mentioned activities, whether during the course of prosecution or in reissues and reexamination proceedings, inter partes review proceedings, covered business method review, post-grant reviews, opposition proceedings, or other post-grant proceedings. This prosecution bar shall begin when the affected individual first accesses "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials reflecting

technical information and shall end one (1) year after final termination of this action (including appeals).

(c)     <u>Secure Storage, No Export</u>. Protected Material must be stored and maintained by a Receiving Party at a location in the United States and in a secure manner that ensures that access is limited to the persons authorized under this Order.

(d)     <u>Legal Advice Based on Protected Material</u>. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order and otherwise complies with this Order.

(e)     <u>Limitations</u>.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by the Receiving Party from a third party that has a right to disclose such material and is not under a duty of confidentiality or that is known to the Receiving Party independent of the Producing Party (in each case, as demonstrated by contemporaneous written evidence); (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the prior written consent of the Producing Party; or (v) pursuant to order of the Court.

7.     **DESIGNATING PROTECTED MATERIAL**

(a)     <u>Available Designations</u>.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such

designations as provided for herein: "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS'
EYES ONLY," or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."

      (b)     <u>Written Discovery and Documents and Tangible Things</u>.  Written discovery,
documents (which include "electronically stored information," as that phrase is used in Federal
Rule of Procedure 34), and tangible things and any other Discovery Materials that meet the
requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by
placing the appropriate designation on every page of the written material prior to production. For
digital files being produced, the Producing Party may mark each viewable page or image with the
appropriate designation, and mark the medium, container, and/or communication in which the
digital files were contained. In the event that original documents are produced for inspection, the
original documents shall be presumed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" during
the inspection and re-designated as appropriate during the copying process.

      (c)     Native Files.  Where electronic files and documents are produced in native
electronic format, such electronic files and documents shall be designated for protection under this
Order by appending to the file names or designators information indicating whether the file
contains "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or
"CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" material, or shall use any
other reasonable method for so designating Protected Materials produced in electronic format.
When electronic files or documents are printed for use at deposition, in a court proceeding, or for
provision in printed form to an expert or consultant pre-approved pursuant to Paragraph 11, the
party printing the electronic files or documents shall affix a legend to the printed document
corresponding to the designation of the Designating Party and including the production number
and designation associated with the native file.

(d)     <u>Depositions and Testimony</u>.  Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty (30) days of receipt of the transcript of the testimony.  If no indication on the record is made, all information disclosed during a deposition shall be deemed "CONFIDENTIAL – ATTORNEYS' EYES ONLY" until the time within which it may be appropriately designated as provided for herein has passed.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order in this matter or pursuant to written stipulation of the parties."  Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material.  Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8.      **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a)      A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b)      Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)      The Receiving Party's Outside Counsel, including such counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)      Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 11 below;

(iii)      Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)      The Court, jury, and court personnel;

(v)      Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vi)      Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(vii)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order;

(viii)   Expert witnesses of the Producing Party during a deposition who have signed the undertaking of Exhibit A;

(ix)    Fact witnesses employed by the Producing Party during a deposition; and

(x)     Any other person with the prior written consent of the Producing Party.

9.    **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

(a)     A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party.  Without limiting the generality of the foregoing, the Parties agree that the following information, if non-public, shall be presumed to merit the "CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation:  (a) trade secrets and (b) non-public pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, or other non-public information of similar competitive and business sensitivity.

(b)     Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" may be disclosed only to:

10

(i)     The Receiving Party's Outside Counsel, including such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(ii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 11 below;

(iii)   Court reporters, stenographers and videographers retained to record testimony taken in this action;

(iv)    The Court, jury, and court personnel;

(v)     Graphics, translation, design, and/or trial consulting personnel, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(vi)    Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(vii)   Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order;

(viii)  Expert witnesses of the Producing Party during a deposition who have signed the undertaking of Exhibit A;

(ix)    Fact witnesses employed by the Producing Party during a deposition; and

(x)     Any other person with the prior written consent of the Producing Party.

11

10. **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE"**

      (a)     To the extent production of source code becomes necessary in this case, a Producing Part may designate source code as "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE." However, nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action or to obligate any Party to produce any Source Code.

      (b)     Access to a Party's "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" material shall be provided only on a "stand-alone" computer(s) that is not linked to any network, including a local area network ("LAN"), an intranet, or the Internet with all ports, software and other avenues that could be used to copy or transfer data blocked ("Source Code Computer"). The Source Code Computer may be located in a secure room at the offices of the Producing Party's outside counsel or at another location the Parties mutually agree on. The Receiving Party shall not have the right to, and agrees not to, copy, transmit, or duplicate CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE material in any manner, including scanning or otherwise creating an electronic image of such material, except as expressly set forth herein. Each time a person accesses the Source Code Computer, the person shall sign a sign-in sheet prior to, and a sign-out sheet subsequent to, accessing the Source Code Computer including the name of the person accessing, the date in and out, and whether any handwritten notes or hard copies were made.  The Receiving Party shall not modify the files on the Source Code Computer, nor shall the Receiving Party load anything onto the Source Code Computer absent the prior written consent of the Producing Party.

(c)     The Producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the Source Code Computer(s) in order to access the produced Source Code Material on the Source Code Computer(s);

(d)     The Producing Party will produce Source Code Material in computer searchable format on the Source Code Computer(s) as described above;

(e)     The Receiving Party may request reasonable software tools on the Source Code Computer, which if agreed shall be installed by the Producing Party at the Receiving Party's expense. The Parties shall promptly meet and confer as to any objection the Producing Party may have to the installation of any such software tools. The Receiving Party must provide the Producing Party with the CD or DVD containing any such tool(s) – or appropriate online location where such tool(s) can be downloaded from – at least seven (7) days in advance of the date upon which the Receiving Party wishes to have the tool(s) available for use. An exemplary tool is Microsoft Visual Studio Express Edition (subject to certain functional aspects being disabled or not included if applicable, such as compiling, interpreting, or simulating functionality). The Receiving Party must obtain licensed copies of software tools to be installed on the Source Code Computer. The Producing Party will, upon any agreement, make a good-faith attempt to install them on the Source Code Computer. In no event shall the Receiving Party use any compilers, interpreters or simulators in connection with the Producing Party's source code. The Receiving Party is not allowed to install any software on the Source Code Computer.

(f)     No recording devices or recordable media will be permitted inside the source code review room, including without limitation: sound recorders; computers; personal digital assistants; cellular phones; peripheral equipment; cameras; CDs; DVDs; floppy drives, zip drives, thumb drives, or external drives of any kind; USB memory sticks; portable hard drives;

13

Ethernet or other cables that could be used to transfer data off of the Source Code Computer; Dictaphones; telephone jacks; or smartphones of any kind. Nor shall any non-electronic devices capable of similar functionality be permitted inside the source code review room. Unless otherwise agreed in advance by the parties in writing, following each inspection, the Receiving Party's Outside Counsel and/or Experts may remove all notes, documents, and all other materials from the room that may contain work product and/or attorney-client privileged information. The Producing Party is not responsible for any items left in the room following each inspection session.

(g)     The Receiving Party's Outside Counsel and/or expert shall be entitled to take handwritten notes relating to the source code. The Receiving Party's Outside Counsel and/or expert, however, may not copy portions of any source code (e.g., entire source code files or entire functions or methods where such functions or methods are longer than a few lines) into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer or other electronic device, including one that is connected to any network.

(h)     No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise expressly provided herein. No written or electronic record of the source code is permitted except as otherwise expressly provided herein. The Producing Party shall provide to the Receiving Party one (1) copy on Bates-numbered paper, labeled "CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE" within seven (7) business days of the Receiving Party's designation of the portions of the source code to be printed. The Receiving Party shall not designate source code to be printed in order to review blocks of source code in the first instance (i.e., as an alternative to reviewing that Source Code electronically on the source code Computer). The Receiving Party may only print those portions of the source code that are reasonably necessary to prepare court filings, pleadings, contentions, expert reports,

or other papers, and limit paper or PDF copies to no more than 50 continuous pages, up to a total of 100 pages in the aggregate, in the first instance. If the Receiving Party has a reasonable basis for requesting more than 50 continuous pages or 100 aggregate pages of source code to be printed, the Producing Party shall not unreasonably withhold permission. The Producing Party may object to any such request as not being reasonable. The Producing Party shall give the Receiving Party notice of such objection within three (3) business days. If after meeting and conferring the Producing Party and the Receiving Party cannot resolve the objection(s), the Receiving Party may move the Court for an Order compelling the requested source code within seven (7) days of the notice, or within such other time as the Parties may agree, with respect to the requested source code and the Producing Party has the burden of proof on the issue of sufficiency of the objection(s). Pending a ruling by the Court upon any such objection(s), the requested source code shall not be produced to the Receiving Party until the matter is resolved by the Court, but the Parties will stipulate to a reasonable expedited briefing schedule for the motion.

(i)     The Receiving Party's outside counsel shall not make electronic copies of the printed pages of source code, except as reasonably necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically, and only if such documents are clearly labeled "CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE." This does not prevent experts from embedding excerpts of source code into their reports so long as the reports are clearly labeled "CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE." The Receiving Party's outside counsel may only make such additional, duplicate paper copies for use by outside counsel or experts as is reasonably necessary for the foregoing. No more than ten total copies may be made. The duplicate copies to be stored by outside counsel under the conditions set forth in paragraph (j) below. Each of these additional

15

copies shall be designated and clearly labeled "CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE," and the Receiving Party shall maintain a log of all such copies, which it must produce to the Producing Party upon request. No other copies of source code shall be made unless otherwise allowed herein. The copies may be used under secure conditions in depositions and in sealed court filings and proceedings.

(j)     In addition to other reasonable steps to maintain the security and confidentiality of the Producing Party's source code, copies of the source code maintained by the Receiving Party must be kept secure when not in use under secure conditions that prevent access by anyone other than outside counsel and experts qualified for access. No electronic copies of the source code shall be provided by the Producing Party beyond the Source Code Computer. The Receiving Party may also temporarily keep the source code material at: (i) the Court for any proceedings(s) relating to the source code material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the source code material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or copies (e.g., a hotel prior to a Court proceeding or deposition), provided such printouts are stored in a secure manner such as a hotel safe when not in active use.

(k)     The Producing Party shall provide access to the Source Code Computer during normal business hours, which for purposes of this paragraph shall be 9:00 a.m. through 5:00 p.m. Monday through Friday, excluding Federal Holidays. However, upon reasonable notice from the Receiving Party, the Producing Party shall make reasonable efforts to accommodate the Receiving Party's request for access to the Source Code Computer outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the Producing Party's source code material at the offices of its outside counsel shall not unreasonably hinder the

Receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action.

(l)     The Receiving Party must give at least seven (7) days' notice to Counsel for the Producing Party that it will be sending individual(s) authorized to review the source code made available on the Source Code Computer for any initial reviews and seven (7) days' notice for additional reviews of the same, previously inspected code. If a review of the source code is taking place and the Receiving Party requests to continue the review on the next, subsequent business day, the Producing Party shall make the Source Code Computer available unless it is not possible to do so (e.g., a person to monitor the review is unavailable). When requesting inspection of the Source Code Computer, the Receiving Party shall identify all persons who will be present at the inspection, including members of a Receiving Party's Outside Counsel.

(m)     Access to Protected Material designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall be limited to outside counsel and up to two (2) Experts (as defined in this Order) of the Receiving Party retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 8(b)(ii) and 9(b)(ii) above. The Receiving Party must designate one (1) Expert (from the two Experts with access to Protected Material designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE") as the Expert responsible for accessing the Source Code Computer. Whenever copies or handwritten notes concerning Protected Material designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" are made, the Receiving Party shall keep a log including (i) the custodian of each copy of such Protected Materials; and (ii) the name of all persons accessing such materials. A Receiving Party may include excerpts of source code material in a pleading, court filing, exhibit, expert report, discovery document, deposition transcript, trial

17

and hearing presentation, or other Court document if it is reasonably and in good faith believed to be necessary by the Receiving Party, provided that those documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders.

(n)     To the extent portions of "CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE" are quoted in a document, either (1) the entire document will be stamped and treated as "CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE" or (2) those pages containing quoted source code material will be separately stamped and treated as "CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE."

(o)     Except as expressly provided in this order, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies of source code material from any paper copy of the source code for use in any manner. For example, images or copies of the source code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings, trial exhibits, and other papers wherever possible. The Parties are not, however, restricted from using portions of source code in any pleadings, trial exhibits, or other papers where it is reasonably necessary and where appropriate confidential treatment for the same is sought. For example, nothing in this Protective Order, including this Section, prohibits the Parties from using non-OCR images of source code in their confidential contentions and expert reports.

(p)     A Producing Party's source code material may only be transported or provided by the Receiving Party at the direction of a person authorized to review source code via

hand carry, Federal Express (or other similarly reliable courier), or secure electronic transmission. Source code may not be transported electronically over a network of any kind, including a LAN, an intranet, or the Internet.

(q)     In addition to the provisions in Paragraph 19, below, within four weeks after the issuance of a final, non-appealable decision resolving all issues in the case, the Receiving Party must, if requested (a) return to the Producing Party, or certify the destruction of, all copies of the Producing Party's source code (in whole or in part), and (b) certify destruction of any notes containing, showing, or quoting the source code. In addition, all persons to whom any copies of the source code were provided must certify in writing that all copies of the source code were returned to the counsel who provided them and that they will make no use of the source code in any future endeavor. Such certifications may be provided collectively, and any collective certification must specify the individuals on whose behalf it is being provided. The certification must then be communicated to the Producing Party within said four weeks. Access to and review of the source code is strictly for the purpose of advancing the claims and defenses at issue in this case. No person may review or analyze any source code for purposes unrelated to this case.

(r)     Access to and review of source code shall be strictly for the purpose of investigating the claims and defenses at issue in this case. No person shall review or analyze any source code for purposes unrelated to this case, nor may any person use any knowledge gained as a result of reviewing source code in this case or any other pending or future dispute, proceeding, patent prosecution, or litigation.

11.    **NOTICE OF DISCLOSURE**

(a)     Prior to the first disclosure of Protected Material to any person described in Paragraphs 8(b)(ii) **Error! Reference source not found.** or 9(b)(ii) (referenced below as

"Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes:

      (i)     the name of the Person;

      (ii)    an up-to-date curriculum vitae of the Person;

      (iii)   the present employer and title of the Person;

      (iv)   an identification of all of the Person's past and current employment and consulting relationships, including but not limited to any past and current employment and consulting relationships relating to lighting and/or automotive headlamp technology or design;

      (v)    a statement of the existence of all patents and pending patent applications on which the Person is named as an inventor; and

      (vi)   a list of the cases in which the Person has testified at deposition or trial within the last four (4) years.

Further, the Party seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant.

      (b)    Within ten (10) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the ten (10) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this ten (10) day period. If the Producing Party objects in writing to disclosure to the Person within such ten (10) day period, the Parties shall meet and confer via telephone or in person within five (5) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If

the dispute is not resolved, the Party objecting to the disclosure will have five (5) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is sought, Designated Materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

12.     **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)     A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)     Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection. Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)      The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute. The Producing Party shall have the burden of justifying the disputed designation;

(ii)     If the Producing Party does not agree to re-designation within ten (10) days of receipt of the written request, the Receiving Party may bring a motion to the Court for a ruling

that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation.;

       (iii)    Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

13.    **<u>SUBPOENAS OR COURT ORDERS</u>**

If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

14.    **<u>OTHER PROCEEDINGS</u>**

By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any party subject to this order who becomes subject to a motion to disclose another party's information designated "Confidential," "Confidential-Attorneys' Eyes Only," or "Confidential –Attorneys' Eyes Only – Source Code" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

15.  **DISCOVERY FROM THIRD PARTIES**

This Protective Order shall apply to discovery sought from persons or companies who are not parties to this lawsuit. Third parties may designate information produced under the "CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER," "HIGHLY CONFIDENTIAL — ATTORNEY'S EYES ONLY," or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" designations.

16.  **FILING PROTECTED MATERIAL**

(a)  Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file or disclose in the public record any Protected Material. Further, third parties and other persons or entities that did not participate in the preparation and filing of this Protective Order may seek supplemental protections or other modifications in respect of the same.

(b)  Any Party is authorized under the local rules of the United States District Court presiding over this case to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order. However, nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

17.  **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)  Nothing in this Order shall require production of documents, information, or other material that a party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege

23

and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)     Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party. Further, the Receiving Party shall not use, and shall immediately cease any prior use of, any such material, including to assess or challenge the assertion of privilege. If the Receiving Party discovers that the Producing Party may have inadvertently disclosed documents, information, or other material that may be subject to a claim of the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity, the Receiving Party must immediately notify Producing Party.

(c)     At the request of the Receiving Party, the  Producing Party shall prepare and provide a privilege log of the inadvertently produced discovery material within 7 days of the request.  The Receiving Party may move the Court for an Order compelling production of such information, but the motion shall not assert as a ground for production the fact or circumstances of the inadvertent or unintentional production.

## 18.     INADVERTENT FAILURE TO DESIGNATE PROPERLY

(a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall

reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall return or securely destroy, at the Producing Party's option, all Discovery Material that was not designated properly.

(b)     A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives such notice that such Discovery Material is protected under one of the categories of this Order, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received notification of the correct confidentiality designation for the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph  17(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Notwithstanding the above, a subsequent designation of "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(b), provided that they do not further review any such materials after the subsequent designation and provided that they cease all use of the same.

19.  **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)     In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible Disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)     Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected Material.

20.  **FINAL DISPOSITION**

(a)     Not later than sixty (60) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material, at the option of the Producing Party.  For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

(b)     All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed.  Notwithstanding the provisions for return of Discovery Material, outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes, but must return or destroy any pleadings, correspondence, and consultant work product that contain Source Code and certify the same.  Any

26

such archived copies that contain or constitute Protected Material remain subject to this Order and shall be maintained in confidence by outside counsel for the Party retaining the materials.

21.    **DISCOVERY FROM EXPERTS OR CONSULTANTS**

(a)    Testifying experts shall not be subject to discovery with respect to any draft of their report(s) in this case.  Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

(b)    Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case. No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying expert in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

(c)    No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

(d)    Materials, communications, and other information exempt from discovery under the foregoing Paragraphs 20(a)–(c) shall be treated as attorney-work product for the purposes of this litigation and Order.

(e)    Nothing in Protective Order, including Paragraphs 20(a)–(c), shall alter or change in any way the requirements in Paragraph 10 regarding Source Code, and Paragraph 10 shall control in the event of any conflict.

22. **MISCELLANEOUS**

(a)    Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.  By stipulating to this Order, the Parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

(b)    Termination of Matter and Retention of Jurisdiction.  The Parties agree that the terms of this Protective Order shall survive and remain in effect after the Final Determination of the above-captioned matter.  The Court shall retain jurisdiction after Final Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

(c)    Successors.  This Order shall be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control.

(d)    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.  This Order shall not constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e)    Burdens of Proof.  Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of

confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)     <u>Modification by Court</u>.  This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court presiding over this case is responsible for the interpretation and enforcement of this Order.  All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court presiding over this case.

(g)     <u>Discovery Rules Remain Unchanged</u>.  Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court presiding over this case, or the Court's own orders.  Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court presiding over this case, or the Court's own orders.

**SO ORDERED this _____ day of _____, 2023.**

_____
The Honorable Maryellen Noreika
U.S. District Court Judge

29

Dated: February 3, 2023

__/s/ Kenneth L. Dorsney_____
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
302.888.6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Of Counsel*:
John M. Halan
Thomas A. Lewry
Sangeeta G. Shah
Reza Roghani Esfahani
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, Michigan 48075
T: (248) 358-4400  /  F: (248) 358-3351
jhalan@brookskushman.com
tlewry@brookskushman.com
sshah@brookskushman.com
resfahani@brookskushman.com

*Counsel for Plaintiff*

__/s/ Adam Poff_____
Adam Poff (#3990)
Samantha Wilson (#5816)
Young Conaway Stargatt & Taylor LLP
Rodney Square
1000 North King St.
Wilmington, DE 19801
302-571-6600
apoff@ycst.com
swilson@ycst.com

*Of Counsel*:
Daniel E. Yonan
Michael D. Specht
Nicholas J. Nowak
Jason A. Fitzsimmons
Sterne, Kessler, Goldstein & Fox P.L.L.C
1100 New York Avenue NW, Suite 600
Washington, DC 20005
202-371-2600
dyonan@sternekessler.com
mspecht@sternekessler.com
nnowak@sternekessler.com
jfitzsimmons@sternekessler.com

*Counsel for Defendants Audi & Volkswagen*

  <u>/s/ Francis DiGiovanni</u>
Francis DiGiovanni (#3189)
FAEGRE DRINKER BIDDLE & REATH
LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com

<u>*Of Counsel*</u>:
Edgar H. Haug
Robert E. Colletti
Roman Khasidov
Nisha Gera
HAUG PARTNERS LLP
745 Fifth Avenue, 10th Floor
New York, NY 10151
(212) 588-0800
ehaug@haugpartners.com
rcolletti@haugpartners.com
rkhasidov@haugpartners.com
ngera@haugpartners.com

*Counsel for Defendant Porsche*

　/s/ Michael J. Flynn　　　　　
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899 (302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Of Counsel*:
Celine J. Cowson
Joseph J. Raffetto
Scott A. Hughes
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
celine.crowson@hoganlovells.com
joseph.raffetto@hoganlovells.com
scott.hughes@hoganlovells.com

Yi (Sally) Zhang
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 1500
San Francisco, CA 94111
(415) 374-2300
yi.zhang@hoganlovells.com

*Counsel for Defendants Daimler & Mercedes*

**EXHIBIT A**

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Torchlight Technologies LLC v. Daimler AG, Mercedes-Benz USA, LLC, Volkswagen AG, Audi AG, Audi of America, LLC, Porsche AG, and Porsche Cars North America, Inc.*, United States District Court, District of Delaware, Civil Action No. 22-751-GBW.  Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual: _____

Present occupation/job description: _____

_____

_____

Name of Company or Firm: _____

Address:_____

Dated: _____

_____
[Signature]

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1345-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SOURCE CODE ACCESS AGREEMENT

The parties jointly move for and stipulate to the entry of this Source Code Access Agreement, which will supplement the general Protective Order to be submitted by the parties.

1.      Unless otherwise agreed to in writing between the Producing Party and the Receiving Party, all relevant and properly requested source code shall only be provided on a secured stand-alone computer (a computer not connected to a network, Internet or a peripheral device, "Source Code Computer") residing in a locked room or other secure location at the offices of (a) the Producing Party, (b) the Producing Party's outside counsel, (c) any other location to which the parties jointly agree.  The election among the above locations for production rests with the Producing Party.

2.      Source code review shall be conducted during regular business hours (9:00 a.m. through 5:00 p.m. local time) or at other mutually agreeable times.  The parties agree to cooperate in good faith, such that maintaining the Producing Party's source code at the offices of the Producing Party or the Producing Party's Outside Counsel or any other facility will not unreasonably hinder the Receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this action.

3.      The Receiving Party must give notice to the Producing Party at least five (5) business days in advance of the requested inspection, each time the Receiving Party requests a review of source code on the Source Code Computer.  The Receiving Party is entitled to inspect on as many separate occasions as reasonably needed within the timing procedures identified above and the Court's fact discovery deadline

4.      The Receiving Party shall identify in writing all individuals it requests be given access to the source code at least ten (10) business days prior to the first inspection.  Proper identification includes the individual's full name, city and state of the individual's primary residence and current employer(s).  Each party can identify experts for source code review.  Access to the stand-alone computer shall be permitted, after notice to the Producing Party and an opportunity to object, to two (2) outside counsel representing the Receiving Party and no more than two (2) experts retained by the Receiving Party per patent at issue in the above-captioned cases, all of whom have been approved under the protective order in place.  The Producing Party shall not unreasonably deny access to any additional experts retained by the Receiving Party that the Producing Party has indicated would be replacing an original expert retained by the Receiving Party.  Absent a good faith request to proceed otherwise, no one from the provider shall have further access to the computer during the remainder of discovery.  The Producing Party may object to providing access to any persons so identified and, if so, must set forth in detail the grounds on which it is objecting.  The Producing Party may also deny access to any individual who fails to properly provide identification.  Objections and denials of access must be in writing, and disputes over such issues shall be presented to the Court for resolution unless resolved by agreement among the parties.

5.      The Source Code Computer shall have disk encryption and be password protected. The Producing Party shall provide a manifest of the contents of the Source Code Computer.  The manifest, which will be supplied in both printed and electronic form, will list the name, location (*e.g.*, file path) and MD5 checksum of every source and executable file escrowed on the computer. The manifest shall generally identify the programming languages that were used to author the code.

6.      The Parties shall take reasonable steps to produce all source code with any software required to allow review of the code in a manner reasonably equivalent to the review in the ordinary course of business by the Producing Party.  At minimum, this will include the same software utilities and related plug-ins that the Producing Party, itself, uses to review the source code in the ordinary course of business.  These software utilities and plugins shall provide the ability to (a) view, search, and line-number any source file, (b) search for a given pattern of text through a number of files and (c) compare two files and display their differences.  The Reviewing Party may provide a reasonable set of certain searchable PDFs of documents produced by the Producing Party—such as wikis or other documents relevant to the review or source code—to be included on the Source Code Computer, with reasonable advance notice to the Producing Party to allow for the saving of such files to the Source Code Computer.

7.      The Receiving Party may request that other commercially available software search tools for viewing and searching the source code be installed on the Source Code Computer, including plugins that may need to be downloaded from the internet through Visual Studio Code and other software.  If such a request is made before the Source Code Computer has been initially set up and its connectivity restricted, the Requesting Party shall provide the Producing Party with the physical media containing such software tools at least seven (7) days in advance of the date

3

upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer or direct the Producing Party to where the software tools or plugins may be obtained on the internet. The Producing Party shall not be required to install software or plugins that requires substantial, unreasonable modifications to the hardware or software of the computer(s) and may object to a software tool installation within four (4) days of the Receiving Party's request. Costs associated with the purchase or installation of such software tools, including any licenses, shall be borne by the party requesting its use.

8.     The Parties acknowledge that the Requesting Party may request the installation of additional software during the review of the source code, including plugins that may need to be downloaded from the internet through Visual Studio Code and other software after the Source Code Computer has been initially set up and its connectivity restricted. The Producing Party may object to any such request within four (4) days of the Receiving Party's request. In the event that a request is made with less than four-days' notice, the Producing Party must make reasonable, good-faith efforts to provide its objection, or indicate that it has none, in the time allotted.

9.     The Receiving Party shall be entitled to request printed copies of limited aspects of the source code. To designate the pages for printing, the Reviewing Party shall print the selected page to an electronic PDF and place the PDF files in a folder on the desktop of the Source Code Computer that shall be clearly labeled as a location for pages of source code to be printed. The Producing Party shall then print and produce the designated pages with the appropriate Bates stamp and Protective Order designations. The Producing Party shall preserve and maintain a copy of each electronic PDF placed in the desktop folder of the Source Code Computer. A party may only seek to obtain printed copies of a reasonable number of pages, narrowly tailored to the needs of this case. Unless agreed to in writing by the Producing Party, the Receiving Party may not request

printed copies of more than 15 consecutive pages, or an aggregate total of more than 150 pages, of the source code. If necessary, the Receiving Party may request printed copies of additional pages in excess of these limits, and such request, upon showing of good cause, shall not be unreasonably denied by the Producing Party. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the request to receive printed copies of additional pages, the Receiving Party shall be entitled to seek the Court's resolution.

10.     Printed copies of the source code shall be logged and maintained by the Receiving Party in a secured, locked area under the direct control of counsel or experts for whom disclosure has been cleared. In addition to copies provided to experts, the Receiving Party's counsel may make a single copy of any printed pages of source code, which shall be maintained in the same manner as the original printed pages. In no event shall the total number of copies made exceed one for each expert identified above in Section 4 and one for counsel. Copies cannot be made for any other person or purpose. Any printed pages of source code may not otherwise be copied, digitally imaged, or otherwise duplicated, except in limited excerpts necessary to attach as exhibits to depositions, expert reports, or court filings. The Receiving Party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the source code is used.

11.     The Receiving Party's outside counsel and/or expert shall be entitled to take notes relating to the source code but may not copy any portion of the source code into the notes. The Receiving Party's outside counsel and/or experts are permitted to (i) make and/or maintain electronic copies of their notes outside of the source code review room; and (ii) take such notes on the source code computer itself provided that such notes are not transmitted outside the source code review room and are deleted upon conclusion of the review. Any such notes shall be treated

as though designated as source code under the protective order and shall be afforded the same protections contained therein.  No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein.  Further, no other written or electronic record of the source code is permitted except as otherwise provided herein.

12.     Unless agreed to by the Producing Party, use or possession of any outside electronic devices (*e.g.*, USB memory sticks, mobile phones or tablets, cameras, laptops, floppy disks, CDs, zip drives, or any device that can access the Internet or any other network or external system, etc.) or any non-electronic devices capable of similar functionality is prohibited while accessing the Source Code Computer.  All persons entering the locked room containing the Source Code Computer must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the locked room.  The Producing Party shall make a separate room close in proximity to the review room available for the Receiving Party's outside counsel and expert to leave personal belongings, including phones and laptops, and in which such individuals may work and take notes and use their computers.

13.     The Producing Party shall keep a log that records the identity of individuals who enter the locked room to view the source code and when they start and end each review day.  The Receiving Party shall log the identity of individuals to whom a copy of the source code is provided, when the copy was provided to that person, and where the copy is stored.  The other Party is entitled to a copy of each log.

14.     Within sixty (60) days after the issuance of a final, non-appealable decision resolving all issues in the case, the Receiving Party shall serve upon the Producing Party the log and, at the Producing Party's option, either serve upon the Producing Party, or certify the destruction of, all paper copies of the Producing Party's source code.  In addition, all persons to

whom the paper copies of the source code were provided must certify in writing that all copies of the source code were returned to the counsel who provided them the information and that they will make no use of the source code or of any knowledge gained from the source code in any future endeavor.

/s/ David E. Moore
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 1901
Telephone: (302) 984-6000
dmoore@potteranderson.com
bpalapura@pottersanderson.com
abrown@potteranderson.com

OF COUNSEL:

Steven Yovits
Constantine Koutsoubas
Melvin Gaddy
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Telephone: (312) 857-7070
syovits@kelleydrye.com
ckoutsoubas@kelleydrye.com
mgaddy@kelleydrye.com

Clifford Katz
Jolie Brett Schenerman
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
ckatz@kelleydrye.com
jschenerman@kelleydrye.com

*Attorneys for Plaintiff*
*The Nielsen Company (US), LLC*

Dated: February 9, 2023

/s/ Andrew E. Russell
John W. Shaw (#3362)
Andrew E. Russell (#5382)
Nathan R. Hoeschen (#6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:

Ajay S. Krishnan
Julia L. Allen
Bailey W. Heaps
Reaghan E. Braun
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
akrishnan@keker.com
jallen@keker.com
bheaps@keker.com
rbraun@keker.com

*Attorneys for Defendant*
*TVision Insights, Inc.*

SO ORDERED this _____ day of February, 2023.

_____
Christopher J. Burke
United States Magistrate Judge

10595569/14944-00004

# EXHIBIT 9

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| TESLA, INC., a Delaware corporation, | Case No. 19-cv-01463-VC |
| *Plaintiff*, | **JOINT DISCOVERY LETTER OF PLAINTIFF TESLA, INC. AND DEFENDANT GUANGZHI CAO AND THIRD PARTY XMOTORS.AI INC. RE THIRD PARTY NEUTRAL REVIEW PROTOCOL** |
| v. | |
| GUANGZHI CAO, an individual, | |
| *Defendant*. | |

Counsel for Tesla and counsel for Defendant Guangzhi Cao have met and conferred telephonically prior to filing this joint letter, most recently on August 21, 2020. Undersigned counsel hereby attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter.

THE NORTON LAW FIRM PC

By:  /s/ Fred Norton
Fred Norton (SBN 224725)

*Attorneys for Plaintiff*
**TESLA, INC.**

CONRAD & METLITZKY LLP

By:  /s/ Mark Conrad
Mark Conrad (SBN 255667)

*Attorneys for Defendant*
**Guangzhi Cao**

RIMON, P.C.

By:  /s/ Scott Raber
Scott Raber (SBN194924)

*Attorneys for Third Party*
**XMotors.ai, Inc.**

Pursuant to Local Rule 5.1(i)(3), I attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: September 4, 2020

By:  /s/ Fred Norton
Fred Norton

**Tesla's Position**

Tesla drafted a detailed protocol for review of source code by the third-party neutral. Cao and XMotors object to two aspects of Tesla's proposal: (1) the parties' experts may submit requests and inquiries to the neutral until the end of the expert discovery period; and (2) XMotors must provide relevant information that the neutral requests to perform his or her role. The Court should approve the protocol as Tesla drafted it. *See* Attachment 1 (Tesla's form of the review protocol).

Tesla objected to having a neutral review source code in the first instance because (among other challenges) a neutral will not be familiar with the issues in the case, the discovery from the parties, or the specific applications of the technology at issue. The neutral thus cannot identify similar features in the code bases without extensive and time-consuming input from the parties and their experts. Even then, the neutral may fail to see similarities that would be evident to experts who know the technology and the larger context of the case. The Court nonetheless ordered that a neutral would review XMotors' source code and produce code that "appears similar" to Tesla's, Dkt. 80 at 2, and rejected Cao's and XMotors' efforts to limit the neutral to simply identifying identical files, Dkt. 84 at 2-3. The Court approved of Tesla's approach, in which "each party will provide the neutral with software, analytical tools, instructions, and criteria, which the neutral will use to identify files that appear similar," and the neutral effectively acts as a proxy for the parties' experts, "performing the same function that Plaintiff's experts would, *i.e.*, reviewing the source code and determining which code is similar." Dkt. 84 at 2-3.

Cao and XMotors once again object to Tesla's proposed review protocol. They insist the parties' experts must submit all inquiries, analyses, and queries to the neutral within an arbitrarily short period and then be done forever. Cao and XMotors initially demanded 21 days, then refused to make any specific proposal, and now Cao says 28 days. Tesla, in contrast, would allow the experts to submit such requests iteratively as long as they continue their work, *i.e.*, until the end of expert discovery. A shorter, arbitrary cutoff has no proper purpose but has a clear improper effect – it would prevent Tesla's experts from gaining an understanding of XMotors' source code to identify and obtain relevant code.

Tesla's timing is more appropriate to the needs of the case. As the Court held, the role of the neutral here is to perform "the same function" the parties' experts normally would, "reviewing the source code and determining which code is similar." Dkt. 84 at 3. Under normal circumstances, that

process is iterative and time-consuming. Direct comparison of source code to identify similarities often takes **months**. *See, e.g., Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, No. C-01-20813 RMW, 2007 WL 2429653, at *6 (N.D. Cal. Aug. 24, 2007) (in case alleging infringement of copyrights in computer code, court continued hearing on defendant's summary judgment motion "for more than nine months" to allow plaintiff's experts "additional time to complete the source code comparison"). The process here is even more cumbersome: Tesla and its experts cannot see the XMotors code, so they must blindly suggest potential areas of inquiry to the neutral, await results, then suggest further inquiries. Tesla does not even have XMotors' 30(b)(6) testimony on source code.  XMotors says the witness is unavailable until mid-October – which may well come after the arbitrary 28-day cutoff Cao proposes.

Dr. Jeffrey Miller, Tesla's source code expert, explained in his declaration that working with a neutral to identify relevant source code would take at least ten weeks **after** the neutral obtained the code, including a week to formulate initial questions, two weeks to identify the initial analyses, one week for the neutral to run those initial analyses, six weeks of "iterating with the neutral based on the results of the analyses" and two weeks to draft a report "based on the results of the iterative analysis." Dkt. 86-3, ¶ 8. Once Cao produces his own expert's report, Dr. Miller may have further inquiries and analyses to offer in response that require access to the source code. Cao asserts that this iterative process is unnecessary, but he has no expert declaration or any other authority for that claim. In fact, neither XMotors nor Cao has offered any expert declaration, or any principled justification, for making the period of expert analysis of source code shorter than the period of expert discovery.[1]

Cao's other arguments are also unavailing. He repeats the canard that Tesla had a copy of XMotors' source code a year ago but did not analyze it. This claim is false – Tesla's consulting experts **did** examine that code. It is also irrelevant – the Court already held that Tesla has a right to XMotors' **other** code – the code that Cao and XMotors have fought so desperately to withhold. Dkt. 75. Cao also argues that if it really took so much time to review source code, Tesla should have served its subpoena on XMotors earlier than January 2020. But Tesla served its subpoena after discussing with Cao's counsel that the discovery cutoffs would need to be extended, before the COVID-19 pandemic imposed

---

[1] Tesla filed a motion to extend the expert discovery cutoff to March 12, 2021, Dkt. 86; Judge Chhabria provisionally extended the due date for expert reports but has not issued an order with specific dates.

1   systemic delays, and before Tesla knew that the review process would be delayed by the use of a neutral.

2          XMotors objects that it is responsible for paying half of the neutral's fees, and it would rather not

3   pay for the neutral to keep searching for relevant, similar code. This is a non-issue. Tesla pays the other

4   half and has no interest in paying for fruitless searches, and the neutral would refuse to perform analyses

5   that are made in bad faith anyway. Dkt. 84 at 2.  If the neutral is still working, there is still work to do.

6   Anyway, any difficulty is of XMotors' making. XMotors wanted a neutral to examine the code;

7   XMotors got what it wanted. If cost is now the issue, XMotors can let Dr. Miller do the comparisons

8   himself. The real problem is that XMotors doesn't want a neutral, it wants a roadblock.

9          Next, XMotors suggested in meet and confer that it would answer questions from the neutral

10  about its source code. Tesla agreed, so long as XMotors is required to answer any question the neutral

11  thinks proper (subject to proper objections under the Rules of Civil Procedure) – not just provide

12  information that XMotors hopes will favor its employee, Cao. XMotors reversed its position and refuses

13  to answer questions at all. Again, XMotors demanded that there be a neutral. If the neutral needs

14  information from XMotors to perform the neutral's work, XMotors should be required to answer.

15  **Cao's Position**

16         Defendant Guangzhi Cao's singular point of contention regarding Tesla's proposed protocol is

17  that a reasonable time limit should be placed on Tesla's ability to rummage through XMotors' source

18  code.  Dr. Cao's proposed limitation is reflected in redline edits to Paragraph 6(i) of Attachment 2.

19         In January, Tesla subpoenaed third-party XMotors.ai, Inc. ("XMotors") seeking, among other

20  things, more copies of that company's source code repositories, beyond what had already been

21  voluntarily produced by XMotors earlier in the litigation.  In order to protect XMotors' sensitive and

22  proprietary code from unnecessary disclosure, this Court set out a specific protocol by which a third-

23  party neutral would compare Tesla and XMotors source code and produce code that appears similar, so

24  that the parties could use that material during expert discovery.  Now, Tesla insists that the protocol—

25  adopted by the Court for the limited purpose of furnishing material to experts for use in their expert

26  reports—should extend, without any limitation, throughout the entire expert discovery period.  At the

27  same time, Tesla has asked the presiding judge to extend the expert discovery deadline—which has

28  already been continued two times—by another 5 months or more.  By this motion, Tesla seeks to

circumvent the fact discovery deadline, which has already passed, and continue its ongoing pattern of delay and litigation churn, imposing mounting (and unnecessary) litigation costs on an individual defendant and a third party. In the interest of fairness and expediency, Tesla's request must be rejected.

**Background.** In June 2019, XMotors provided Tesla with a forensic image of the laptop computer that it had issued to Cao—which included a complete copy of XMotors' source code repositories to date. (ECF 44 at 4.) Tesla then allowed fourteen months to lapse without undertaking any source code comparison analysis. Indeed, Tesla only disclosed its source code comparison experts at the end of July, after twice seeking extensions of the case schedule—both times within weeks of the expert discovery deadline. On July 24, 2020, on the deadline for the close of fact discovery, Tesla requested a third extension of the case schedule. (ECF 86.) This time, Tesla asks to continue the fact discovery deadline to November and the expert discovery deadline to March 2021. At the hearing, Tesla indicated that it would actually need even more time than requested in its papers. Cao vigorously opposed the motion. (ECF 93.) The presiding judge has taken the matter under submission. (ECF 97.)

In the meantime, the parties have sought to finalize the details of the source code production protocol. Cao requested a time limitation on the protocol to ensure that Tesla does not drag the process out unnecessarily. Initially, Cao proposed a period of 21 days in which the parties could request code from the neutral, with the ability to extend that time upon a showing of good cause by the requesting party. Tesla countered that this proposed time limit was "arbitrary." Cao invited Tesla to propose a differently time period limitation, but Tesla refused to do so. Instead, Tesla argued that it should be allowed to extend the protocol to the close of expert discovery. Tesla's proposal should be rejected.

**The Source Code Production Protocol Is A Facet of Fact Discovery.** The source code production protocol is a means for XMotors to produce documents sought by Tesla's subpoena. That is a basic function of fact discovery. Indeed, this Court's prior order on the source code selection protocol made clear that the source code production protocol would *precede* expert discovery. It said: "this process is equivalent to if the parties were not being required to use a neutral; Plaintiff would have inspected the code on its own before producing expert reports identifying which code is similar and why." (ECF 84.) As with all plaintiffs, Tesla could always use more time to continue exploring possible avenues for evidence to substantiate its claims, but the fact discovery window is not unlimited.

***Cao's Request For a Time Limitation (with a Good Cause Exception) Is Reasonable.*** Cao originally proposed to give the parties 21 days—from the time the code has been submitted to the neutral—to complete the production protocol. This time limitation is reasonable. In the Declaration of Jeffrey Miller In Support of Tesla's Motion to Extend Case Deadlines (ECF 86-3), Tesla's own source code comparison expert estimated that it would take: 1 week for the parties to submit initial questions, including inquiring into the file structure, file types, number of files, etc.; 2 weeks for the parties to determine the analysis applications that will be necessary, configuring them, and sending them to the neutral; and 1 week for the neutral to run analysis using the analysis applications and produce results. (*Id.*) This amounts to 28 days. While Cao believes the process can be done in less time, he would be satisfied with a 28-day time limitation for the protocol, as specified by Tesla's own expert. Tesla would also like to give its expert an additional "6 weeks of iterating with the neutral" (*id.*), but there is no reason why it should be allowed this opportunity to seek further productions of code. Rather, Tesla should be allowed to frame its requests for code as broadly as it would like—after asking questions about file structure and evaluating analysis applications—and the neutral should produce code in response to Tesla's requests, provided the neutral deems those requests to be appropriate. Indeed, if XMotors were supplying the code itself, it would produce code according to a set of agreed-upon criteria, not according to an iterative process. There is simply no reason why requests submitted—after a 3-week period allotted for asking questions and assessing analyses—are not enough. In fact, if Tesla had actually needed more than 16 weeks to complete the code comparison, as it now says, it should not have waited to serve its subpoena for source code or to disclose its source code experts just weeks in advance of the then-scheduled deadlines for expert reports.

Tesla has taken a scorched earth approach to discovery in this case and insisted on litigating every single issue in discovery, at enormous cost to parties and non-parties alike. It now asks the Court to sign off on a protocol that would require a third-party to stay engaged in this case for another six months (or more) while Tesla continues its baseless sleuthing expeditions. If Tesla wanted months and months to complete a source code comparison, it should have begun that process in June 2019, when XMotors voluntarily produced its source code repositories. At this point, Tesla should be restricted to a finite time period to submit requests to the neutral and complete fact discovery.

**XMotors' Position**

Tesla and third-party XMotors once again find themselves before this Court because of Tesla's continued overreach with respect to its review of XMotors' source code. Over Tesla's objection, this Court ordered Tesla and XMotors to select a third-party neutral—not Tesla—to examine XMotors' source code "in the first instance" and produce any resulting code that looked "similar." (ECF 80.) After the parties were unable to reach agreement on certain aspects of the neutral's anticipated review protocol, the Court on July 24, 2020 ordered, in part, that Tesla could still submit its search tools and requests confidentially to the neutral, and that the neutral could refuse Tesla's search requests if she believed they were not made in good faith.

However, XMotors' earlier stated concerns have come to fruition during the parties' most recent discussions to finalize other aspects of the review protocol: specifically, XMotors objected that allowing Tesla's submitted search tools and requests to be treated as confidential work product would undermine the neutral's gatekeeping function. (ECF 81) As XMotors predicted and anticipated, before the parties have even settled on a mutually agreeable neutral, Tesla now demands that it have unlimited opportunities to issue requests to the neutral, without any time limits other than the expiration of expert discovery, in an unbridled effort to determine whether there is any overlap between the parties' source code.

Tesla readily acknowledges that much of this process will necessarily involve the neutral's use of automated tools, which are intended to review vast quantities of code to determine whether any overlapping material exists. Tesla nonetheless argues it should have open-ended recourse to test what may or may not be "similar" because it deems this to be an "iterative" process. Tesla wishes to reserve the opportunity to learn more about the structure, content, and purposes of XMotors' code as it moves forward. To be clear, Tesla presently has no evidence that XMotors ever received Tesla source code, yet through this process wishes to guarantee that it can spend unlimited time and effort over a period of *several months* submitting successive requests to the neutral—all in confidence and unfettered—to understand XMotors' source code and what *might* be "similar" to Tesla's code. Thus, this becomes not an exercise to determine if there is any "similar" code but rather Tesla's uncircumscribed inquiry into XMotors' most valuable intellectual property for an indefinite period.

XMotors, a non-party, opposes Tesla's demand for unlimited time for two principal reasons. *First*, Tesla's desire to review source code through the neutral, without any reasonable time limitations, will result in unnecessary and unwarranted expense for XMotors irrespective of any proportionality or probability that relevant information even exists. This is unreasonable and overreaching. Rule 45 protects a person who is "neither a party nor a party's officer from significant expense resulting from compliance" Fed. R. Civ. P. 45(d)(2)(B)(ii). *See also United States v. McGraw-Hill*, 302 F.R.D. 532, 536 (C.D. Cal. 2014). XMotors has agreed to bear half the cost of the forensic neutral, but that agreement assumed the parties would proceed efficiently with the neutral. XMotors should not be made to pay for unlimited requests by Tesla to the neutral, the contents of which XMotors will not even know, let alone be able to object to.

XMotors proposed that the parties, in conjunction with the agreed-upon neutral, set a reasonable period of time (*i.e.*, one month) from the neutral's receipt of source code to perform the initial comparison, with the ability to extend that time, upon a showing of good cause. Tesla rejected that approach without elaboration, claiming that having a time limit is presumptively unworkable and "unacceptable." Yet, Tesla has neither offered a plausible justification for *why* it should have no temporal restrictions nor engaged in any discussion of a reasonable period of time for it (and the neutral) to conduct that review and analysis. XMotors did not sign up for cost sharing of such an unlimited endeavor.

*Second*, Tesla's position, in fact, vitiates the role of the neutral as a gatekeeper because so long as Tesla can—in secret, under the cloak of work product protection—articulate *any* rational, "good faith" basis for requesting that the neutral undertake a particular search, the neutral will be obligated to carry out that search. However, the neutral will have no (or limited) prior knowledge of the underlying case or familiarity with XMotors' or Tesla's code, which will necessarily hinder the neutral in determining whether a request is made in good faith, or to the contrary, simply to learn more about XMotors' code. Absent reasonable constraints that require Tesla to proceed efficiently, as opposed to fishing around and "learning as it goes," such a procedure effectively undermines the neutral's gatekeeping role and judgment as to what is genuinely necessary to find "similar" code. Tesla's position is unreasonable.

Finally, Tesla also seeks to turn this process into an informal mini-deposition by *requiring* that XMotors answer any potential questions the neutral may have, as though such questions comprised discovery under the federal rules. Tesla initially wanted XMotors to have absolutely *no communication* with the neutral other than for purely "administrative" purposes. After XMotors suggested that the protocol include flexibility for XMotors to answer potential questions from the neutral which are not clearly "administrative" (such as minor clarifications of a code's purpose), Tesla reversed course and decided that XMotors *should* answer *all* questions the neutral might have, even though XMotors will have been completely blind to, and excluded from the underlying process and events precipitating such questions. Tesla's desire to *require* XMotors to answer potential questions is improper for multiple reasons: it exceeds the scope of the subpoena's requests; it asks this court to adjudicate *potential* questions from the neutral not yet before it, that have yet to arise and are not ripe for decision; and Tesla will be able to seek related information through its anticipated Rule 30(b)(6) deposition of XMotors. XMotors thus requests that the protocol be treated as originally proposed by Tesla—XMotors will not have, and will not be required to have communication with the neutral regarding any substantive issues.

ATTACHMENT 1

**Third-Party Source Code Neutral Protocol Between
Plaintiff Tesla, Inc., Defendant Guangzhi Cao,
And Third-Party XMotors.ai, Inc.**

[ADD WHEREAS CLAUSES]

Tesla, Inc. (Tesla), Guangzhi Cao (Cao), XMotors.ai, Inc. (XMotors), and [NEUTRAL] (the Neutral) hereby agree as follows:

1. **Production of documents and data pursuant to subpoena.**  By no later than [DATE], XMotors shall provide the Neutral with all autonomous driving source code, source code logs, and other data that XMotors is required to produce pursuant to Tesla's subpoena of January 1, 2017 and the Orders of the Court at Docket Numbers 75, 80, 84, and 85.

2. **XMotors source code from source code repository.**  XMotors shall provide the Neutral with complete versions of its source code from its source code repository for the entire time period covered by the subpoena, including but not limited to such code that exists in a human readable format that is consistent with the format XMotors engineers use to review and revise source code in the ordinary course of business. The source code shall include any metadata to the extent that such information is available to XMotors.

3. **XMotors source code logs.**  XMotors will also provide the Neutral with true and correct copies of complete source code logs and all other documents that are subject to Request No. 16 of Tesla's subpoena to XMotors.  Such logs correspond to the source code being provided.  To the extent that documents responsive to Request number 16 do not contain actual source code, XMotors shall produce those documents directly to Tesla and to Cao.

4. **XMotors source code on laptop images.**  XMotors shall provide Tesla Cao, and the Neutral a copy of all source code files that XMotors removed from the laptop images that XMotors is required to produce pursuant to Tesla's subpoena of January 17, 2020 and the Orders of the Court at Docket Numbers 75, 80, and 85.  The log should include custodian, file name, file size, file path, date last modified, person who last modified, and MD5 hash value of each source code file, to the extent that such information is available to XMotors.

5. **Tesla source code**.  By no later than [DATE], Tesla shall provide the Neutral with all source code that Tesla contends that Cao improperly copied, downloaded, retained, or misappropriated, along with the MD5 hash value and file path of each such file. Tesla has confirmed that it will be producing to the Neutral only the files it described in its response to Interrogatory No. 1 as of the date the Neutral is retained or as subsequently amended.

6. **Communications with the Neutral.**

   a. In order to allow Tesla and Cao to specify Instructions (as defined below) and to provide context for expert analyses of the XMotors source code, the Neutral shall be allowed to freely communicate with counsel for and retained experts of Tesla and Cao and provide information concerning the characteristics and attributes of XMotors source code, on the terms and conditions set forth below. All information that the Neutral discloses to Tesla and Cao pursuant to this Protocol shall be subject to the Protective Order (as amended) as CONFIDENTIAL information unless it constitutes source code, in which case the information shall be treated as HIGHLY CONFIDENTIAL-SOURCE CODE.

   b. **Common Access to Information Exchanged with the Neutral.** Both Tesla and Cao will have equal, simultaneous access to all communications that either party has with the Neutral and all disclosures by the Neutral, and neither shall engage in ex parte communications with the Neutral except as expressly permitted below. Tesla and Cao may freely communicate with the Neutral at any time so long as both Tesla and Cao are present for oral communications or copied on written communications.

   c. **Planned meetings.** The Neutral shall make him/herself available twice each week on Monday and Thursday from 2:00 P.M. to 3:30 P.M. Pacific Time (or such other times as the Neutral, Tesla , and Cao mutually agree) for Tesla and Cao to freely communicate with the Neutral, until such time as Tesla and Cao mutually agree that such meetings are no longer necessary. Tesla and Cao each agree to make a representative available for each of these meetings. Neither Tesla nor Cao may stop the other from freely communicating with the Neutral during these planned meetings by not attending, except that if either Tesla or Cao experiences an emergency that prevents their respective representatives from attending, then that party must promptly notify the other party and the Neutral of the emergency and the planned meeting will be rescheduled or canceled. Otherwise, if Tesla or Cao fail to attend a planned meeting, they agree that the sole attendee may have ex parte communications with the Neutral at the planned meeting. Only Tesla counsel, Cao counsel, and retained experts who are authorized to see information designated as HIGHLY CONFIDENTIAL-SOURCE CODE under the Protective Order (as amended) may attend the planned meetings.

   d. **Source code logs.** To the extent that the Neutral determines that documents or information that XMotors produced as "source code logs" in response to Request No. 16 of Tesla's subpoena to XMotors do not contain actual source code, the Neutral shall produce those documents or information directly to Tesla and to Cao.

2

[Plaintiff Tesla, Inc.'s Proposed Protocol]

e.  **Instructions to the Neutral.**  Tesla or Cao may at any time separately instruct the Neutral to perform analyses on XMotors' source code, including comparisons to Tesla's source code.  Tesla or Cao may also separately instruct the Neutral to install and use specific software to perform those analyses.  "Instructions" shall mean (a) the analyses, comparisons, and descriptions that Tesla or Cao requests the Neutral to perform, (b) the criteria that the requesting party provides to identify an XMotors source code file or group of files that appears similar to a Tesla source code file or group of files, and (c) requests concerning the characteristics or attributes of XMotors source code files or groups of files.  Tesla or Cao's separate Instructions are to be kept by the Neutral in confidence from the other as confidential attorney work-product.

f.  **Execution of Instructions and Delivery of Results to Tesla and Cao.**  After executing Tesla or Cao's separate Instructions provided pursuant to section 4.d., the Neutral will deliver the Results simultaneously to Tesla, Cao, and XMotors without revealing the Instructions (subject to section 4.f., below).  "Results" shall mean the XMotors source code that the Neutral provides in response to Instructions, the characteristics or attributes of XMotors source code files or groups of files that Tesla or Cao requested, and any information that the Neutral provides concerning XMotors' source code in any planned meetings or written communications with Tesla and Cao. To avoid any doubt, under no circumstances shall the Neutral grant XMotors access to any part of Tesla's source code, or provide any information to XMotors about characteristics or attributes of Tesla's source code, and the fact that the neutral disclosed specific XMotors source code to the parties shall be deemed CONFIDENTIAL under the Protective Order (as amended).

g.  **Overbroad Instructions.**  If Tesla or Cao issues an Instruction pursuant to section 4.d.  that the Neutral concludes was issued in bad faith (*e.g.*, an overbroad Instruction intended to cause the Neutral to return entire source code repositories even if they do not appear similar), the Neutral shall decline to provide the Results of that specific Instruction.  If the requesting party disagrees with the Neutral, that party shall disclose the Instruction to the other two parties (i.e., XMotors and Tesla or Cao, as appropriate) and the Neutral shall provide the Neutral's basis for concluding that the Instruction is given in bad faith, and within five days the parties shall submit a letter brief to Magistrate Judge Westmore under her standing order for discovery letter briefs.

h.  **No communications with XMotors.**  XMotors (including without limitation its representatives) may not communicate with the Neutral except for (a) administrative purposes (*e.g.*, to discuss payment of the Neutral's fees or to make arrangements for the delivery of the materials described in paragraphs 1

3

[Plaintiff Tesla, Inc.'s Proposed Protocol]

and 2); (b) the receipt of XMotors code that the Neutral simultaneously produces to Tesla and Cao; or (c) to respond to questions from the Neutral concerning the source code and source code logs that XMotors has produced to the Neutral. To the extent that the Neutral poses questions to XMotors, XMotors shall provide complete and accurate answers just as if the questions had been promulgated pursuant to a subpoena, subject to XMotors' right to object on grounds available to any person under Federal Rules of Civil Procedure 33, 34, and 45. If XMotors communicates with the Neutral for any purpose, it must copy or include Tesla and Cao on all such communications.

7. **No waiver.** Tesla, Cao, and XMotors agree that the procedures and protocols described here shall not constitute a waiver of any claim of attorney-client privilege, work product protection, or any other protection against disclosure of the parties' Instructions to the Neutral or the parties' other privileged information. All parties reserve the right to claw back attorney-client privilege or work product materials. Any material that is clawed back must be identified at a privilege log level of detail (*i.e.*, sufficient for an opposing party to challenge the claim) at the time the claw back is made.

8. **Security of source code.** The Neutral shall at all times comply with and be subject to the Protective Order's terms (as amended) for the treatment and handling of SOURCE CODE with respect to all Tesla source code and XMotors source code, and the Protective Order's terms (as amended) for the treatment and handling of CONFIDENTIAL material with respect to Instructions and Results, except as expressly consented to by this Protocol. The Neutral shall at all times maintain source code, Instructions, and Results only on computers and storage devices that are subject to access restrictions and security protocols that satisfy the reasonable requirements of Tesla and XMotors.

9. **Inadmissibility of Neutral's Actions.** Neither the fact that the Neutral disclosed XMotors' source code or specific files on the grounds that they appear similar to Tesla source code, nor the fact that the Neutral did not produce XMotors source code or specific files, shall be admissible at trial or at summary judgment to prove Cao's liability to Tesla or the absence of such liability. Nothing in this paragraph is intended to prevent either Tesla or Cao from offering Results themselves, or their own experts' analyses and conclusions based on or derived from the Results, or other information about XMotors' source code that the Neutral provided to the parties, for any purpose permitted by the Federal Rules of Evidence.

10. **Authenticity of Results**. Cao and Tesla agree that any logs (as described in Paragraph 2) and any Results produced by the Neutral shall be deemed authentic as if directly produced by XMotors.

[Plaintiff Tesla, Inc.'s Proposed Protocol]

11. **Destruction of source code and Instructions.** At the conclusion of the *Tesla, Inc. v. Cao* litigation (*i.e.*, when a final judgment or dismissal has been entered that is no longer appealable), or when otherwise directed to do so jointly by Tesla, Cao, and XMotors, the Neutral shall destroy or return the source code and shall destroy all Instructions provided to him/her by Tesla or Cao, as well as any Results.

12. **Neutral's Fees and Costs.** The Neutral shall bill for work actually performed at an hourly rate of $[___] and shall bill any expenses at cost, without markup. The invoices shall be sent to undersigned counsel and shall be paid within 60 days, with Tesla responsible for 50% of the invoice and Cao/XMotors responsible for 50%; provided, however, that if the Neutral incurs license fees or similar costs to obtain software or tools required to execute the instructions of just one party, that party shall be billed separately for the cost of such software or tools and will be solely responsible for that cost.

13. **Authorization to enter this agreement.** The undersigned are fully authorized to enter into this agreement by and on behalf of the party each represents.

**THE NORTON LAW FIRM PC**

_____
Fred Norton
*Counsel for Plaintiff Tesla, Inc.*

**RIMON PC**

_____
Scott Raber
*Counsel for Non-Party XMotors.ai, Inc.*

**CONRAD & METLITZKY LLP**

_____
Mark Conrad
*Counsel for Defendant Guangzhi Cao*

**NEUTRAL**

_____
[NAME]
*Third-Party Source Code Neutral*

5

ATTACHMENT 2

[Defendant Cao and Third-Party XMotors' Proposed Edits to Tesla's Proposed Protocol in Redline]

**Third-Party Source Code Neutral Protocol Between
Plaintiff Tesla, Inc., Defendant Guangzhi Cao,
And Third-Party XMotors.ai, Inc.**

[ADD WHEREAS CLAUSES]

Tesla, Inc. (Tesla), Guangzhi Cao (Cao), XMotors.ai, Inc. (XMotors), and [NEUTRAL] (the Neutral) hereby agree as follows:

1. **Production of documents and data pursuant to subpoena.** By no later than [DATE], XMotors shall provide the Neutral with all autonomous driving source code, source code logs, and other data that XMotors is required to produce pursuant to Tesla's subpoena of January 1, 2017 and the Orders of the Court at Docket Numbers 75, 80, 84, and 85.

2. **XMotors source code from source code repository.** XMotors shall provide the Neutral with complete versions of its source code from its source code repository for the entire time period covered by the subpoena, including but not limited to such code that exists in a human readable format that is consistent with the format XMotors engineers use to review and revise source code in the ordinary course of business. The source code shall include any metadata to the extent that such information is available to XMotors.

3. **XMotors source code logs.** XMotors will also provide the Neutral with true and correct copies of complete source code logs and all other documents that are subject to Request No. 16 of Tesla's subpoena to XMotors. Such logs correspond to the source code being provided. To the extent that documents responsive to Request number 16 do not contain actual source code, XMotors shall produce those documents directly to Tesla and to Cao.

4. **XMotors source code on laptop images.** XMotors shall provide Tesla Cao, and the Neutral a copy of all source code files that XMotors removed from the laptop images that XMotors is required to produce pursuant to Tesla's subpoena of January 17, 2020 and the Orders of the Court at Docket Numbers 75, 80, and 85. The log should include custodian, file name, file size, file path, date last modified, person who last modified, and MD5 hash value of each source code file, to the extent that such information is available to XMotors.

5. **Tesla source code**. By no later than [DATE], Tesla shall provide the Neutral with all source code that Tesla contends that Cao improperly copied, downloaded, retained, or misappropriated, along with the MD5 hash value and file path of each such file. Tesla has confirmed that it will be producing to the Neutral only the files it described in its response to Interrogatory No. 1 as of the date the Neutral is retained or as subsequently amended.

6. **Communications with the Neutral.**

    a. In order to allow Tesla and Cao to specify Instructions (as defined below) and to provide context for expert analyses of the XMotors source code, the Neutral shall be allowed to freely communicate with counsel for and retained experts of Tesla and Cao and provide information concerning the characteristics and attributes of XMotors source code, on the terms and conditions set forth below. All information that the Neutral discloses to Tesla and Cao pursuant to this Protocol shall be subject to the Protective Order (as amended) as CONFIDENTIAL information unless it constitutes source code, in which case the information shall be treated as HIGHLY CONFIDENTIAL-SOURCE CODE.

    b. **Common Access to Information Exchanged with the Neutral.** Both Tesla and Cao will have equal, simultaneous access to all communications that either party has with the Neutral and all disclosures by the Neutral, and neither shall engage in ex parte communications with the Neutral except as expressly permitted below. Tesla and Cao may freely communicate with the Neutral at any time so long as both Tesla and Cao are present for oral communications or copied on written communications.

    c. **Planned meetings.** The Neutral shall make him/herself available twice each week on Monday and Thursday from 2:00 P.M. to 3:30 P.M. Pacific Time (or such other times as the Neutral, Tesla , and Cao mutually agree) for Tesla and Cao to freely communicate with the Neutral, until such time as Tesla and Cao mutually agree that such meetings are no longer necessary. Tesla and Cao each agree to make a representative available for each of these meetings. Neither Tesla nor Cao may stop the other from freely communicating with the Neutral during these planned meetings by not attending, except that if either Tesla or Cao experiences an emergency that prevents their respective representatives from attending, then that party must promptly notify the other party and the Neutral of the emergency and the planned meeting will be rescheduled or canceled. Otherwise, if Tesla or Cao fail to attend a planned meeting, they agree that the sole attendee may have ex parte communications with the Neutral at the planned meeting. Only Tesla counsel, Cao counsel, and retained experts who are authorized to see information designated as HIGHLY CONFIDENTIAL-SOURCE CODE under the Protective Order (as amended) may attend the planned meetings.

    d. **Source code logs.** To the extent that the Neutral determines that documents or information that XMotors produced as "source code logs" in response to Request No. 16 of Tesla's subpoena to XMotors do not contain actual source code, the Neutral shall produce those documents or information directly to Tesla and to Cao.

[Defendant Cao and Third-Party XMotors' Proposed Edits to Tesla's Proposed Protocol in Redline]

    e.  **Instructions to the Neutral.**  Tesla or Cao may at any time separately instruct the Neutral to perform analyses on XMotors' source code, including comparisons to Tesla's source code.  Tesla or Cao may also separately instruct the Neutral to install and use specific software to perform those analyses. "Instructions" shall mean (a) the analyses, comparisons, and descriptions that Tesla or Cao requests the Neutral to perform, (b) the criteria that the requesting party provides to identify an XMotors source code file or group of files that appears similar to a Tesla source code file or group of files, and (c) requests concerning the characteristics or attributes of XMotors source code files or groups of files.  Tesla or Cao's separate Instructions are to be kept by the Neutral in confidence from the other as confidential attorney work-product.

    f.  **Execution of Instructions and Delivery of Results to Tesla and Cao.**  After executing Tesla or Cao's separate Instructions provided pursuant to section 4.d., the Neutral will deliver the Results simultaneously to Tesla, Cao, and XMotors without revealing the Instructions (subject to section 4.f., below). "Results" shall mean the XMotors source code that the Neutral provides in response to Instructions, the characteristics or attributes of XMotors source code files or groups of files that Tesla or Cao requested, and any information that the Neutral provides concerning XMotors' source code in any planned meetings or written communications with Tesla and Cao. To avoid any doubt, under no circumstances shall the Neutral grant XMotors access to any part of Tesla's source code, or provide any information to XMotors about characteristics or attributes of Tesla's source code, and the fact that the neutral disclosed specific XMotors source code to the parties shall be deemed CONFIDENTIAL under the Protective Order (as amended).

    g.  **Overbroad Instructions.**  If Tesla or Cao issues an Instruction pursuant to section 4.d.  that the Neutral concludes was issued in bad faith (*e.g.*, an overbroad Instruction intended to cause the Neutral to return entire source code repositories even if they do not appear similar), the Neutral shall decline to provide the Results of that specific Instruction.  If the requesting party disagrees with the Neutral, that party shall disclose the Instruction to the other two parties (i.e., XMotors and Tesla or Cao, as appropriate) and the Neutral shall provide the Neutral's basis for concluding that the Instruction is given in bad faith, and within five days the parties shall submit a letter brief to Magistrate Judge Westmore under her standing order for discovery letter briefs.

    h.  **No communications with XMotors.**  XMotors (including without limitation its representatives) may not communicate with the Neutral except for (a) administrative purposes (*e.g.*, to discuss payment of the Neutral's fees or to make arrangements for the delivery of the materials described in paragraphs 1

[Defendant Cao and Third-Party XMotors' Proposed Edits to Tesla's Proposed Protocol in Redline]

and 2); or (b) the receipt of XMotors code that the Neutral simultaneously produces to Tesla and Cao; or (c) to respond to questions from the Neutral concerning the source code and source code logs that XMotors has produced to the Neutral. To the extent that the Neutral poses questions to XMotors, XMotors shall provide complete and accurate answers just as if the questions had been promulgated pursuant to a subpoena, subject to XMotors' right to object on grounds available to any person under Federal Rules of Civil Procedure 33, 34, and 45. If XMotors communicates with the Neutral for any purpose, it must copy or include Tesla and Cao on all such communications.

    i.   **Time Period.** Tesla and Cao shall have a limited period of [____] days to specify Instructions, receive Results, or otherwise communicate with the Neutral ("Time Period"). Upon the expiration of the Time Period, Tesla and Cao may not specify any further Instructions or otherwise communicate with the Neutral and the Neutral may not deliver any further Results. If either party believes it has good cause for submitting additional Instructions, further communicating with the Neutral, or receiving additional Results beyond the Time Period, that party must seek leave from the Court before engaging in any such activities.

7. **No waiver.** Tesla, Cao, and XMotors agree that the procedures and protocols described here shall not constitute a waiver of any claim of attorney-client privilege, work product protection, or any other protection against disclosure of the parties' Instructions to the Neutral or the parties' other privileged information. All parties reserve the right to claw back attorney-client privilege or work product materials. Any material that is clawed back must be identified at a privilege log level of detail (*i.e.*, sufficient for an opposing party to challenge the claim) at the time the claw back is made.

8. **Security of source code.** The Neutral shall at all times comply with and be subject to the Protective Order's terms (as amended) for the treatment and handling of SOURCE CODE with respect to all Tesla source code and XMotors source code, and the Protective Order's terms (as amended) for the treatment and handling of CONFIDENTIAL material with respect to Instructions and Results, except as expressly consented to by this Protocol. The Neutral shall at all times maintain source code, Instructions, and Results only on computers and storage devices that are subject to access restrictions and security protocols that satisfy the reasonable requirements of Tesla and XMotors.

9. **Inadmissibility of Neutral's Actions.** Neither the fact that the Neutral disclosed XMotors' source code or specific files on the grounds that they appear similar to Tesla source code, nor the fact that the Neutral did not produce XMotors source code or specific files, shall be admissible at trial or at summary judgment to prove Cao's liability to Tesla or the absence of such liability. Nothing in this paragraph is

intended to prevent either Tesla or Cao from offering Results themselves, or their own experts' analyses and conclusions based on or derived from the Results, or other information about XMotors' source code that the Neutral provided to the parties, for any purpose permitted by the Federal Rules of Evidence.

10. **Authenticity of Results**. Cao and Tesla agree that any logs (as described in Paragraph 2) and any Results produced by the Neutral shall be deemed authentic as if directly produced by XMotors.

11. **Destruction of source code and Instructions.** At the conclusion of the *Tesla, Inc. v. Cao* litigation (*i.e.*, when a final judgment or dismissal has been entered that is no longer appealable), or when otherwise directed to do so jointly by Tesla, Cao, and XMotors, the Neutral shall destroy or return the source code and shall destroy all Instructions provided to him/her by Tesla or Cao, as well as any Results.

12. **Neutral's Fees and Costs.** The Neutral shall bill for work actually performed at an hourly rate of $[___] and shall bill any expenses at cost, without markup. The invoices shall be sent to undersigned counsel and shall be paid within 60 days, with Tesla responsible for 50% of the invoice and Cao/XMotors responsible for 50%; provided, however, that if the Neutral incurs license fees or similar costs to obtain software or tools required to execute the instructions of just one party, that party shall be billed separately for the cost of such software or tools and will be solely responsible for that cost.

13. **Authorization to enter this agreement.** The undersigned are fully authorized to enter into this agreement by and on behalf of the party each represents.

**THE NORTON LAW FIRM PC**

_____
Fred Norton
*Counsel for Plaintiff Tesla, Inc.*

**RIMON PC**

_____
Scott Raber
*Counsel for Non-Party XMotors.ai, Inc.*

**CONRAD & METLITZKY LLP**

_____
Mark Conrad
*Counsel for Defendant Guangzhi Cao*

**NEUTRAL**

_____
[NAME]
*Third-Party Source Code Neutral*