IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUTONOMOUS DEVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1466-MN |
| | ) | |
| TESLA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE LAURA D. HATCHER**
**REGARDING DISCOVERY DISPUTES (D.I. 66)**

OF COUNSEL:
Blair Jacobs
Christina A. Ondrick
John S. Holley
Elizabeth Bernard
MCKOOL SMITH, P.C.
1999 K Street, NW Suite 600
Washington, D.C. 20006
(202) 370-8300

George T. Fishback, Jr.
MCKOOL SMITH, P.C.
303 Colorado Street, Suite 2100
Austin, TX 78701
(512) 692-8756

Dated: August 21, 2023

Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Autonomous Devices, LLC*

Dear Judge Hatcher,

  Autonomous Devices ("AD") and Tesla, Inc. ("Tesla") have reached several impasses regarding necessary discovery in this case. AD served discovery requests on April 7, 2023. Exs. 1, 2. More than four months later, Tesla's discovery responses remain incomplete and in many cases, nonexistent. Tesla has repeatedly failed to supplement its discovery responses, failed to produce responsive discovery, failed to substantiate its objections to relevant discovery, and has imposed unilateral restrictions on its discovery production, all of which are in violation of Federal Rule 26. Tesla's course of conduct is not sustainable given discovery cut-offs, and AD remains without key discovery it needs to move forward in developing its case. Tesla's failure to participate in discovery in accordance with the Rules and its obstructionist tactics are discussed below. AD respectfully requests the Court order Tesla to provide the requested discovery within ten (10) days.

**I. Discovery Regarding Predecessor Supercomputers**

  In accordance with the Scheduling Order (D.I. 25), AD served its Paragraph 6(a) disclosures on May 19, 2023. Ex. 3. AD identified the accused products, including "Tesla's neural network and AI training computers, for example, the Dojo and ***predecessor supercomputers***." *Id.*, 2 (emphasis added). During a meet and confer on July 24, AD requested Tesla confirm that it would provide discovery for all products identified in AD's Paragraph 6(a) disclosures as "Accused Instrumentalities." Tesla agreed to get back to AD on July 26, but did not respond until August 2, stating only that "[s]ubject to Tesla's objections to AD's discovery requests, Tesla intends to provide discovery regarding the supercomputer powered by NVIDIA GPUs." Ex. 4. But, without supplemental responses to AD's discovery requests, it is unclear whether Tesla is agreeing to provide complete discovery on predecessor supercomputers or the scope of its objections to this discovery.[1] AD requested Tesla supplement its discovery responses to make its agreement clear and to moot this issue. Ex. 5. Tesla has refused to supplement any of its discovery.

  Tesla cannot dispute that the requested discovery is relevant as predecessor supercomputers are identified in AD's Paragraph 6(a) disclosures and are therefore "Accused Instrumentalities." *See Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 374 (D. Del. 2016). The Court should order Tesla to supplement its discovery responses to include predecessor supercomputers as "Accused Instrumentalities."

**II. Internal Wikis and Training Materials to Assist in Source Code Review**

  Request for Production ("RFP") No. 35 seeks "[a]ll training materials (including videos and wikis) provided to new employees of the software development team regarding the source code, architecture, technology stack, history, and FAQs concerning the Accused Instrumentalities." AD requests these training materials to assist in its review and understanding of Tesla's source code and software-related technical documents. Tesla's source code is central to this case, as it is necessary to determine how the accused products work. *See* D.I. 61, Ex. F. Reviewing Tesla's code has been challenging, due in part to Tesla's obstructive actions to frustrate the review, but also due to its sheer complexity and size. *See id.* Because of the importance of the

---

[1] Interrogatory No. 1, for example, requests Tesla identify each Accused Instrumentality made, used, offered to sell, sold, and/or imported, within the United States since October 16, 2018. Tesla has taken the untenable position that predecessor supercomputers are not within the scope of this interrogatory, even though Dojo, a supercomputer, is expressly included in the definition of "Accused Instrumentalities," as is any product added to this case. *See* Ex. 2, 2.

code, and the greater burden on the plaintiff to determine how the software works, courts frequently find that a defendant must do more than simply provide access to the code and must provide additional discovery to help assist in understanding the code. *See, e.g., Facedouble, Inc. v. Face.com, Inc*., No. 12-cv-1584, 2014 WL 585868, at *2 (S.D. Cal. Feb. 13, 2014) (ordering the defendant "to provide a guide or road map to its source code to Plaintiff"); *Personal Audio, LLC v. Apple, Inc*., No. 9:09-cv-111, 2010 WL 9499679, at *3 (E.D. Tex. June 1, 2010) (requiring the defendant to respond to interrogatories about how its products work because the production of the source code alone was insufficient).

While Tesla may be familiar with its own source code, AD and its experts are not. Internal wikis, such as from Confluence, and other training materials will assist in AD's review of the source code. Tesla has provided nothing more than insufficient boilerplate objections in response to this request. Ex. 6, 35. The Court should order Tesla to produce all responsive training materials.

### III.  Documents Related to Safety of the Accused Technology

RFP Nos. 85, 87, 88 and 89 seek documents concerning the safety of the accused technology and certain statements made by Tesla's CEO concerning the value of the fleet technology. This information is highly relevant to the damages in this case, as Tesla's touts the safety and value of its use of the patented technology in improving autonomous driving over previously known inferior predecessor technologies.

Tesla has not argued the requested documents are irrelevant or not proportional to the needs of the case. Instead, Tesla indicated that it agreed to produce NHTSA documents (responsive to another request). Ex. 4. But, these requests are not limited to documents provided to NHTSA; they additionally encompass documents concerning the safety and value of the accused technology. The Court should order Tesla to produce documents responsive to these RFPs.

### IV.  Former Employees with Supervisory or Management Roles for Fleet Learning

It is axiomatic that AD can discover the identity and location of persons having knowledge *of any* discoverable matter, and interrogatories are the "most frequent means of obtaining this information." 8 Fed. Prac. & Proc. Civ. (Wright & Miller) § 2013 (3d ed.). AD's Interrogatory No. 10 requests Tesla identify each former employee who held a managerial or supervisory role at Tesla related to the accused technology. AD served this interrogatory to identify persons involved, *inter alia*, in the design and development of the accused technology, as public sources indicate several key players have left the employ of Tesla. AD subsequently agreed to narrow this interrogatory to identification of "former managers and supervisors involved in the fleet learning aspects of Tesla's Full Self Driving and Enhanced Autopilot technology." Ex. 7.

Despite AD's good-faith effort to narrow the scope, Tesla has steadfastly refused to provide *any* response to this interrogatory. *See* Ex. 10, 13. Tesla claims this interrogatory "remains unduly burdensome, irrelevant and not proportional to the needs of the case." Ex. 8. But, when asked the basis for its objection during the meet and confer, Tesla merely stated it would encompass "a lot" of people, and could not provide a ballpark number to support this claim.

This interrogatory properly seeks the identity of persons having knowledge of a discoverable matter, as fleet learning is at the heart of the infringement allegations in this case. Tesla cannot simply refuse to respond to an entire interrogatory based on illusory claims of undue burden or proportionality. Beyond generic attorney argument, Tesla offers no concrete, particularized evidence regarding any *undue* burden. Tesla can meet its discovery obligations by

2

identifying those individuals who are most knowledgeable about or primarily responsible for the management and development of the fleet learning technology. *Frontier Commc'ns Corp. v. Google Inc.*, C.A. No. 10-545-GMS, D.I. 75 at 5 (D. Del. Dec. 6, 2013) (ordering defendant to identify persons who worked with the technology). The Court should order Tesla to respond to Interrogatory No. 10.

V.  **License Agreements Related to the Accused Instrumentalities**

Interrogatory No. 8 and RFPs 60, 79, and 80 seek discovery of all patent license agreements for the Accused Instrumentalities and similar or comparable technologies to the asserted patents. AD requests these licenses because they are relevant to its claim for reasonable royalty damages. "A 'reasonable royalty' derives from a hypothetical negotiation between a patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868-69 (Fed. Cir. 2010). The measure of damages in a patent case may be established by looking to an infringer's licenses for comparable technology and form, *e.g.*, lump sum or running royalty. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325-26 (Fed. Cir. 2009).

AD's requests are designed to discover relevant information regarding comparable licenses and Tesla's licensing practices. Moreover, the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) (citation omitted). AD further seeks these agreements to analyze Tesla's profits and the contributions of non-patented components.

Tesla has improperly limited the scope of its responses to "patent licenses or settlements executed by Tesla relating to autonomous driving or training of a vehicle for autonomous driving." *E.g.,* Ex. 6, 74. But, Tesla has no authority for such an artificial limitation. Moreover, such a restriction is facially overly restrictive as it does not include agreements relating to neural networks or AI training for computers, and it is unclear whether Tesla intends to include licenses to the Accused Instrumentalities that include patents to multiple technologies. Tesla's proposal is likely to yield few, if any, license agreements,[2] and even if some agreements do exist, AD and its expert are permitted at this stage to review a broader scope of licenses to construct the hypothetical license. *See Am. Bottling Co. Inc. v. Vital Pharms., Inc.*, C.A. No. 20-1268-TMH, 2021 WL 9599683, at *1 (D. Del. Sept. 27. 2021) (relevancy is construed broadly for discovery); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 607–08 (D. Del. 1997) (comparability is construed broadly). Tesla provided only boilerplate objections and has not disclosed how many license agreements it would be required to produce to properly respond to AD's requests, much less presented any evidence showing why it would be burdensome to produce the agreements. *E.g.*, Ex. 6, 73-74. The Court should order Tesla to fully respond to these requests.

---

[2] Indeed, Tesla has not produced a single license agreement nor has it responded to Interrogatory No. 8 to identify any agreements that fall within its limited scope, even though it agreed to supplement this interrogatory by August 4 (Ex. 9; Ex. 10, 11-12). If left unmitigated by the Court, Tesla's unilateral limitation on the scope of license agreements will result in Tesla's continued failure to produce any licenses.

Respectfully submitted,

*/s/ Emily S. DiBenedetto*

Emily S. DiBenedetto (No. 6779)

cc: Clerk of the Court (by CM/ECF & Hand Delivery)
All Counsel of Record (by CM/ECF and Email)